IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


McGUIREWOODS LLP,

        Plaintiff,

v.                                            Civil Action No. 3:10cv354

GREAT NORTHERN INSURANCE COMPANY,

        Defendant.

**PLAINTIFF McGUIREWOODS LLP'S MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT OF LIABILITY ON THE PLEADINGS**


James W. Morris, III (VSB No. 05740)
Matthew D. Green (VSB No. 46913)
Melissa Y. York (VSB No. 77493)
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA  23218
(804) 344-8300 Telephone
(804) 344-8359 Facsimile

*Counsel for Plaintiff McGuireWoods LLP*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 1

    I.     The Underlying Policy ............................................................................................. 1

    II.    The Personal Injury Complaints and Denial of Coverage ....................................... 3

ARGUMENT ........................................................................................................................... 5

    I.     This Case Should Be Resolved on the Pleadings in Favor of McGuireWoods ........... 5

        A.    Standard of review for a Motion for Judgment on the Pleadings ................... 5

        B.    The law of Virginia applies to this matter ......................................................... 7

    II.    Great Northern Had a Duty to Defend McGuireWoods and Its Partners
        Against Spencer's Lawsuits ...................................................................................... 7

        A.    The "Eight Corners Rule" .................................................................................. 9

        B.    The "Legal or Professional Services" Exclusion ........................................... 10

            1.    The "Legal or Professional Services" exclusion in the Great
                Northern Policy is narrowly limited to legal services
                performed at the direction, and for the benefit, of a client of
                McGuireWoods ............................................................................... 10

            2.    The allegations in Spencer's Complaints do not fall within
                the "Legal or Professional Services" exclusion in the Great
                Northern Policy. ............................................................................. 16

        C.    The "Former Employee" Exclusion ............................................................... 17

        D.    The "Expected or Intended Injury" Exclusion ................................................ 24

        E.    The "Publications with Knowledge of Falsity" Exclusion ............................ 25

CONCLUSION ..................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

<u>Admiral Ins. Co. v. G4S Youth Servs.</u>,
    634 F. Supp. 2d 605 (E.D. Va. 2009) ............................................................................... 19-20

<u>Am. Online, Inc. v. St. Paul Mercury Ins. Co.</u>,
    207 F. Supp. 2d 459 (E.D. Va. 2002), <u>aff'd</u>, 347 F.3d 89 (4th Cir. 2003)............................. 9

<u>Am. Registry of Pathology v. Ohio Cas. Ins. Co.</u>, .
    461 F. Supp. 2d 61 (D.D.C. 2006) ................................................................................... 23

<u>Bohreer v. Erie Ins. Group</u>,
    475 F. Supp. 2d 578 (E.D. Va. 2007) ....................................................................... 10-11, 16

<u>Builders Mgmt. Ins. Co. v. R.G. Mgmt. Servs., Inc.</u>,
    No. 1:08cv383, 2008 WL 4546600 (E.D. Va. 2008)........................................................ 20

<u>Capitol Envtl. Servs., Inc., v. N. River Ins. Co.</u>,
    536 F. Supp. 2d 633 (E.D. Va. 2008) ................................................................7-9, 12, 18-19

<u>Cincinnati Ins. Co. v. E. Atl. Ins. Co.</u>,
    260 F.3d 742 (7th Cir. 2001)......................................................................................... 26-27

<u>Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.</u>,
    500 F.3d 640 (7th Cir. 2007).......................................................................................... 26-27

<u>Donnelly v. Transp. Ins. Co.</u>,
    589 F.2d 761 (4th Cir. 1978).............................................................................................. 8-9

<u>Fuisz v. Selective Ins. Co. of Am.</u>,
    61 F.3d 238 (4th Cir. 1995)............................................................... 7-8, 10, 24-25, 27

<u>Gasner v. County of Dinwiddie</u>,
    162 F.R.D. 280 (E.D. Va. 1995) ......................................................................................... 6

<u>Harad v. Aetna Cas. and Sur. Co.</u>,
    839 F.2d 979 (3rd Cir. 1988) ...................................................................................... 13-14

<u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>,
    313 U.S. 487 (1941) ........................................................................................................... 7

Labram v. Havel,
 43 F.3d 918 (4th Cir. 1995) ......................................................................... 6

Lee v. Aetna Cas. & Sur. Co.,
 178 F.2d 750 (2d Cir. 1950) ...................................................................... 22

Marietta Corp. v. Int'l Telecomms. Satellite Org.,
 991 F.2d 94 (4th Cir. 1992) ........................................................................ 6

Ooida Risk Retention Group, Inc. v. Williams,
 579 F.3d 469 (5th Cir. 2009) ...................................................................... 9

Premier Pet Prods., LLC v. Travelers Prop. Cas. Co. of Am.,
 678 F. Supp. 2d 409 (E.D. Va. 2010) ................................................ 9-10, 18-19

St. Paul Fire & Marine Ins. Co. v. Jacobson,
 826 F. Supp. 155 (E.D. Va. 1993) ............................................................ 11-13

Stern, Walter & Simmons, Inc. v. Seaboard Sur. Co.,
 208 F. Supp. 252 (N.D. Ill. 1970) .............................................................. 23

Thomas v. Standard Fire Ins. Co.,
 414 F. Supp. 2d 567 (E.D. Va. 2006) .......................................................... 6

Town Crier, Inc. v. Hume,
 721 F. Supp. 99 (E.D. Va. 1989) ................................................................ 9

Vogelsang v. Allstate Ins. Co.,
 46 F. Supp. 2d 1319 (S.D. Fla. 1999) ......................................................... 14

**STATE CASES**

Atl. Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.,
 982 S.W.2d 472 (Tex. Ct. App. 1998) ..................................................... 14-15, 17

Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,
 470 So. 2d 810 (Fla. Dist. Ct. App. 1985) .................................................... 21

Boggs v. Camden-Clark Mem'l Hosp. Corp.,
 693 S.E.2d 53 (W. Va. 2010) .................................................................... 14

Brenner v. Lawyers Title Ins. Co.,
 240 Va. 185, 397 S.E.2d 100 (1990) ........................................................ 7, 18

Brooklyn & Queens Allied Burner Serv. Co. v. Sec. Mut. Ins. Co.,
 27 Misc. 2d 401 (N.Y. Sup. Ct. 1960) ......................................................... 22

Buchanan v. Doe,
      246 Va. 67, 431 S.E.2d 289 (1993) ........................................................7

Cent. Sur. & Ins. Corp. v. Elder,
      204 Va. 192, 129 S.E.2d 651 (1993) ....................................................8

Fragman Const. Co. v. Preston Constr. Co.,
      274 N.E.2d 614 (Ill. App. Ct. 1971) ............................................. 22-23

Granite State Ins. Co. v. Bottoms,
      243 Va. 228, 415 S.E.2d 131 (1992) ..................................................12

Johnson v. Ins. Co. of N. Am.,
      232 Va. 340, 350 S.E.2d 616 (1996) ....................................................8

London Guar. Co. v. White & Bros., Inc.,
      188 Va. 195, 49 S.E.2d 254 (1948) ...............................................7, 18

Nat'l Grange Mut. v. Mallozzi,
      No. CV054011341S, 2006 WL 3859735 (Conn. Dec. 12, 2006) ..........................22

Norman v. Ins. Co. of N. Am.,
      218 Va. 718, 239 S.E.2d 902 (1978) ..................................................18

Reisen v. Aetna Life & Cas. Co.,
      225 Va. 327, 302 S.E.2d 529 (1983) ...............................................8, 18

Smith v. Allstate Ins. Co.,
      241 Va. 477, 403 S.E.2d 696 (1991) ....................................................7

State Farm Mut. Ins. Co. v. Gandy,
      238 Va. 258, 383 S.E.2d 717 (1989) ....................................................8

Travelers Indem. Co. v. Obenshain,
      219 Va. 44, 245 S.E.2d 247 (1978) ....................................................18

Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.,
      252 Va. 265, 475 S.E.2d 264 (1996) ..................................................20

## RULES/STATUTES

Fed. R. Civ. P. 12(b) ..............................................................................5-6

Fed. R. Civ. P. 12(c) ..............................................................................5-6

Fed. R. Civ. P. 12(d) ...............................................................................6

## INTRODUCTION

The Court should enter a judgment of liability on the pleadings in favor of Plaintiff McGuireWoods LLP ("McGuireWoods") because Defendant Great Northern Insurance Company ("Great Northern") breached its contractual obligations to McGuireWoods to provide it with a defense from the civil lawsuits Christopher Spencer, Esq., filed against McGuireWoods and its partners, alleging acts of defamation.  There is no question of material fact to support a claim that McGuireWoods breached the terms of its coverage under its policies with Great Northern.  On the other hand, it is clear that Great Northern has breached its reciprocal obligations by wrongfully asserting that Spencer's lawsuits did not trigger the duty to defend in the applicable policies it issued because the claims Spencer made in the lawsuits were subject to four policy exclusions: (1) an exclusion for legal or professional services; (2) an exclusion for acts of former employees of McGuireWoods; (3) an exclusion for expected or intended injury; and (4) an exclusion for publication with knowledge of falsity.  As outlined below, these positions are erroneous under Virginia law.  Therefore, Great Northern has breached its contractual obligation to defend McGuireWoods and its partners.

## FACTUAL BACKGROUND

### I.    The Underlying Policy.

Plaintiff McGuireWoods is now, and at all times relevant to this action was, a limited liability partnership duly organized and existing under the laws of the Commonwealth of Virginia, engaged in the practice of law, with its headquarters and principal place of business at 901 East Cary Street, Richmond, Virginia.  (Compl. ¶ 1; Answer ¶ 1.)  Defendant Great Northern is an insurance company with its principal place of business in New Jersey and is licensed to do

1

business, and regularly transacts and carries on business, in the Eastern District of Virginia.
(Compl. ¶ 2; Answer ¶ 2.)

In consideration for premiums, Great Northern sold Liability Insurance Policy No. 3581-46-28 HOU, providing comprehensive general liability insurance coverage to McGuireWoods during the period from August 1, 2007 to August 1, 2008.[1]  (Compl. ¶ 5; Answer ¶ 5.)  Great Northern also sold Liability Insurance Policy No. 3581-46-28 CLT, providing comprehensive general liability insurance coverage to McGuireWoods during the period from August 1, 2008 to August 1, 2009.[2]  (Compl. ¶ 6; Answer ¶ 6.)  These policies contain identical material terms and are henceforth collectively referred to as the "Great Northern Policy."

McGuireWoods paid full premiums to Great Northern for the Great Northern Policy. (Compl. ¶ 10; Answer ¶ 10.)  As such, McGuireWoods is entitled to all benefits of coverage provided in the Great Northern Policy.  (Compl. ¶ 12; Answer ¶ 12.)

The Great Northern Policy imposes on Great Northern, among other things, a duty to defend, indemnify, and pay in full the costs of any suit seeking damages for any claim arising out of alleged "personal injury."  (Great Northern Policy at 3-4.)  The Great Northern Policy defines "personal injury" as specifically including defamation.  (Id. at 30.)

Great Northern's denial of the duty to defend rests on four exclusions in the Great Northern Policy.  First, the Great Northern Policy has an Endorsement entitled "*Exclusions Insureds or Affiliates/Legal or Other Professional Services*," Form 80-02-2423, which contains two exclusions on which Great Northern relies in denying its duty to defend.  The first exclusion is a "Legal or Professional Services" exclusion.  (See Ex. A to Compl., at Form 80-02-2423, p.2,

---

[1] This policy was attached to the Complaint as Exhibit A.
[2] This policy was attached to the Complaint as Exhibit B.

attached as Ex. A (discussed <u>infra</u> Part II.B.).)  The same Endorsement also has a former

employee exclusion.  (<u>See</u> <u>id.</u> at Form 80-02-2423, p. 1 (discussed <u>infra</u> Part II.C.).)

The Great Northern Policy contains another exclusion for "Expected or Intended Injury."

(<u>See</u> <u>id</u>. at Form 80-02-2000, p. 14, attached as Ex. B (discussed <u>infra</u> Part II.D.).)  Finally, the

Great Northern Policy contains an exclusion for "Publications with Knowledge of Falsity."

(<u>See</u> <u>id.</u> at Form 80-02-2000, p. 15 (discussed <u>infra</u> Part II.E.).)

## II.    **The Personal Injury Complaints and Denial of Coverage.**

Christopher Spencer, ("Spencer") and McGuireWoods were separately retained to

represent Wintergreen Partners, Inc., in civil litigation titled <u>Grigg v. Wintergreen Partners, Inc.</u>,

originally tried in the Circuit Court of Albemarle County, Virginia in July 2004, and ultimately

subject to a Petition for Appeal filed in the Supreme Court of Virginia on December 29, 2004.

(Compl. ¶ 13; Answer ¶ 13.)  The appeal to the Supreme Court of Virginia was dismissed on

July 7, 2005, because the original trial transcript was not timely filed as required by the rules of

that court.  (Compl. ¶ 14; Answer ¶ 14.)

The dismissal of the <u>Grigg</u> appeal was the subject of an article in the Norfolk <u>Virginian-

Pilot</u> and an internet article in the <u>National Law Journal</u>.  Spencer ultimately alleged that E.

Duncan Getchell, Jr., John S. Barr, and Rosewell Page, three partners of McGuireWoods, and

William Allcott, an employee of McGuireWoods, (hereinafter referred to collectively as

"McGuireWoods and its partners"), defamed him through statements in the <u>Virginian-Pilot</u> and

<u>National Law Journal</u> articles, as well as other statements regarding the attorney responsible for

the failure to timely file the trial transcript in the <u>Grigg</u> matter.  (Compl. ¶ 16; Answer ¶ 16.)

Based on these alleged defamatory statements, Spencer filed suit against Getchell and

Allcott in the Circuit Court for the City of Richmond on November 14, 2007.  A true and correct

copy of that Complaint was attached as Exhibit C to the Complaint in this case.[3]  (Compl. ¶ 17;

Answer ¶ 17.)  Spencer subsequently filed an Amended Complaint against Getchell and Allcott

on or about October 27, 2008.   A true and correct copy of that Complaint was attached as

Exhibit D to the Complaint in this case.[4]  (Compl. ¶ 18; Answer ¶ 18.)

      Based on the alleged defamatory statements, Spencer also filed suit against

McGuireWoods, McGuireWoods Consulting LLC, and Barr in the Circuit Court of the City of

Richmond on September 10, 2008.   A true and correct copy of that Complaint was attached as

Exhibit E to the Complaint in this case.[5]  (Compl. ¶ 21; Answer ¶ 21.)

      In the three Complaints, Spencer outlined the specific acts of defamation the named

defendants allegedly committed.  As described in the Complaints, the defendants allegedly

committed these acts as part of a plan to have Getchell nominated to a seat on the Fourth Circuit

Court of Appeals and to protect McGuireWoods' reputation.  (1st Compl. ¶ 5.)  Further, the

Complaints alleged that the acts of defamation were committed <u>after</u> the underlying <u>Grigg</u> matter

was already over, and thus were not made as part of the professional services McGuireWoods

and its partners performed in that matter.  Finally, the allegations of the Complaints made it clear

that the alleged acts of defamation were made not to benefit a client of McGuireWoods and its

partners, but rather for the direct benefit of McGuireWoods and its partners.

      The First Complaint alleged that Getchell's goal was to, "minimize any further damage to

his nomination for a position on the Fourth Circuit Court of Appeals."  (<u>Id.</u> at ¶ 31.)

McGuireWoods' alleged goal was to, "minimize any further damage to [its] reputation."  (<u>Id.</u> at ¶

---

[3] The Complaint against Getchell and Allcott will hereinafter be referred to as the "First Complaint," and, for the convenience of the Court, is attached to this Memorandum as Exhibit C.

[4] The Amended Complaint against Getchell and Allcott will hereinafter be referred to as the "Amended First Complaint," and, for the convenience of the Court, is attached to this Memorandum as Exhibit D.

[5] The Complaint against Barr and McGuireWoods will hereinafter be referred to as the "Second Complaint," and, for the convenience of the Court, is attached to this Memorandum as Exhibit E.

32.)  The First Complaint alleged that in order to accomplish these goals, Getchell, Allcott, and McGuireWoods—through Getchell and Allcott— made various allegedly false statements.  (Id. at ¶¶ 34, 38.)  The First Complaint also contained a number of dates, and alleged that the professional representation Getchell and McGuireWoods performed in the underlying Grigg matter occurred in 2004 and 2005.  (Id. at ¶¶ 11-12, 14, 38.)  Indeed, the legal representation Getchell and McGuireWoods performed in the underlying Grigg matter ended on July 7, 2005, when that matter was dismissed by the Supreme Court of Virginia.  (Compl. ¶ 14.)   In contrast, the First Complaint asserted that the alleged acts of defamation occurred in 2007, well after Getchell and McGuireWoods had completed their professional representation in the Grigg matter.  (1st Compl. ¶¶ 29-30, 41, 44.)

The Amended First Complaint and the Second Complaint contained the same allegations made in the First Complaint.  The Amended First Complaint and Second Complaint alleged that John Barr, McGuireWoods, and McGuireWoods Consulting LLC, committed alleged acts of defamation in order to place Getchell on the bench of the Fourth Circuit and protect McGuireWoods' reputation.  (Am. 1st Compl. ¶ 9; 2d Compl. ¶ 8.)

McGuireWoods provided notice of Spencer's claims and suits and Great Northern denied a duty to defend McGuireWoods in those lawsuits.  (Compl. ¶¶ 26-27; Answer ¶¶ 26-27.)

## ARGUMENT

### I.     This Case Should Be Resolved on the Pleadings in Favor of McGuireWoods.

#### A.     Standard of review for a Motion for Judgment on the Pleadings.

Federal Rule of Civil Procedure 12(c) allows any party, after the closing of pleadings, to move for judgment thereon.  Fed. R. Civ. P. 12(c).  The Court must apply the same standard of review to a Rule 12(c) Motion for Judgment on the Pleadings as it would to a Motion to Dismiss

under Rule 12(b)(6).  <u>Thomas v. Standard Fire Ins. Co.</u>, 414 F. Supp. 2d 567, 570 (E.D. Va.

2006).  In ruling on a Motion to Dismiss under Rule 12(b)(6), the Court must presume all factual

allegations in the opposing pleading to be true and accord all reasonable inferences to the non-

moving party.  <u>Marietta Corp. v. Int'l Telecomms. Satellite Org.</u>, 991 F.2d 94, 97 (4th Cir. 1992).

Additionally, the Court should not accept as true allegations that are unsupported and

conclusory.  <u>See</u> <u>Labram v. Havel</u>, 43 F.3d 918, 921 (4th Cir. 1995).

A Motion to Dismiss under Rule 12(b)(6) does not allow the Court to look beyond the

Complaint and Answer.  <u>Gasner v. County of Dinwiddie</u>, 162 F.R.D. 280, 281 (E.D. Va. 1995).

If the Court does consider matters outside the complaint and answer, the Motion is transformed

into a Motion for Summary Judgment, giving the parties an opportunity to marshal material

relevant to such a motion.  <u>Id.</u> at 281-82.  In reviewing a 12(b)(6) Motion, a Court may consider

documents that are referenced in the pleadings, even if they are not attached to the Complaint or

Answer.  <u>Id.</u> at 282.  The Court may consider such documents without transforming the Motion

into a Motion for Summary Judgment when the defendant provides pertinent material that the

plaintiff failed to attach to his Complaint.  <u>Id.</u>

A Motion for Judgment on the Pleadings under Rule 12(c) is to be treated as a Motion for

Summary Judgment under Rule 56 only if "matters outside the pleadings are presented to and not

excluded by the court . . . [and] [a]ll parties must be given a reasonable opportunity to present all

the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Here, no matters outside the

pleadings have been presented by the parties, but only the pleadings themselves and documents

attached thereto.  Therefore, the Court should review McGuireWoods' Motion for Judgment on

the Pleadings as it would a Motion under Rule 12(b)(6).

### B.    The law of Virginia applies to this matter.

The law of the Commonwealth of Virginia applies to the interpretation of the Great

Northern Policy.  Under federal diversity jurisdiction, the forum state's choice-of-law rules

apply.  Capitol Envtl. Servs., Inc. v. N. River Ins. Co., 536 F. Supp. 2d 633, 639 (E.D. Va. 2008)

(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Under Virginia law, an

insurance contract is governed by the law of the place of delivery.  Buchanan v. Doe, 246 Va. 67,

70, 431 S.E.2d 289, 291 (1993).  Great Northern delivered the Great Northern Policy to

McGuireWoods in Virginia.  Therefore, Virginia law applies in this case.

### II.    Great Northern Had a Duty to Defend McGuireWoods and Its Partners Against Spencer's Lawsuits.

In Virginia, an insurer's duty to defend is broader than its obligation to indemnify an

insured.  Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238 (4th Cir. 1995).  "The obligation to

defend arises whenever the complaint against the insured alleges facts and circumstances, some

of which, if proved, would fall within the risk covered by the policy."  Brenner v. Lawyers Title

Ins. Co., 240 Va. 185, 189, 397 S.E.2d 100, 103 (1990).  "[I]f there is any ambiguity regarding

potential coverage, the insurer must provide a defense."  Fuisz, 61 F.3d at 242 (citing Smith v.

Allstate Ins. Co., 241 Va. 477, 480, 403 S.E.2d 696, 697-98 (1991)).  "[I]f it is doubtful whether

the case alleged is covered by the policy, the refusal of the insurer to defend is at its own risk."

Brenner, 240 Va. at 189, 397 S.E.2d at 102 (citing London Guar. Co. v. White & Bros., Inc., 188

Va. 195, 199-200, 49 S.E.2d 254, 256 (1948)).

> [I]t is will recognized that the duty to defend is broader than the duty to indemnify
> [sic] inasmuch as the duty to defend turns on a complaint's allegations whereas
> the duty to indemnify requires established or litigated facts.  A duty to defend
> limited to and coextensive with the duty to indemnify would be essentially
> meaningless; insureds pay a premium for what is partly litigation insurance
> designed to protect the insured from the expense of defending suits. . . . Thus,
> there may be some instances in which an insurer—based on a complaint's

allegations—has a duty to defend, but will ultimately turn out not to have a duty to indemnify.

Capital Envtl. Servs., Inc., 536 F. Supp. 2d at 640 (internal quotations and citations omitted).

If an insurance policy is "susceptible to two constructions," one of which would effectuate coverage and the other of which would not, "it is to be construed liberally in favor of the insured and strictly against the insurer." Cent. Sur. & Ins. Corp. v. Elder, 204 Va. 192, 198, 129 S.E.2d 651, 655 (1993) (internal citation omitted); see also Donnelly v. Transp. Ins. Co., 589 F.2d 761, 767 (4th Cir. 1978) ("If a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense"); Reisen v. Aetna Life & Cas. Co., 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983) ("The insurer is relieved of a duty to defend only when it clearly appears from the initial pleading the insurer would not be liable under the policy for any judgment based upon the allegations." (emphasis in original)).  The duty to defend in Virginia is very broad.  "[A]n insurer is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy." Fuisz, 61 F.3d at 242 (citing Reisen, 225 Va. at 331, 302 S.E.2d at 531).

In evaluating an insurer's claim that it has no duty to defend based on a policy exclusion, as Great Northern does in this matter, the Supreme Court of Virginia has held that such language is subject to particularly strict scrutiny and will be construed in such a way as to afford coverage unless clear and unambiguous. State Farm Mut. Ins. Co. v. Gandy, 238 Va. 258, 261, 383 S.E.2d 717, 719 (1989).  Exclusionary language in an insurance policy will be construed strongly against the insurer. Johnson v. Ins. Co. of N. Am., 232 Va. 340, 345, 350 S.E.2d. 616, 619 (1996).  The burden is on the insurer to prove that an exclusion applies. Id.

## A.      The "Eight-Corners" Rule

In determining whether Great Northern had a duty to defend McGuireWoods and its

partners, this Court must apply the "eight-corners" rule.  The "eight-corners" rule is a

combination of the Exclusive Pleading Rule and the Potentiality Rule.  Am. Online, Inc. v. St.

Paul Mercury Ins. Co., 207 F. Supp. 2d 459, 465 (E.D. Va. 2002) (citing Town Crier, Inc. v.

Hume, 721 F. Supp. 99, 102 (E.D. Va. 1989)), aff'd, 347 F.3d 89 (4th Cir. 2003).  "Under the

Exclusive Pleading Rule, an insurer's duty to defend is determined solely by the allegations in

the pleading."  Id.  "The Potentiality Rule extends the Exclusive Pleading Rule to require the

insurer to defend if there is the potential that the claim, as stated in the pleadings, could be

covered by the policy."  Id.  As the Fourth Circuit noted in Donnelly, the duty to defend is

triggered when the underlying Complaint alleges liability that "potentially or arguably" is

covered by the policy.  Donnelly, 589 F.2d at 767.

While some courts have recognized an exception to the "eight-corners" rule whereby the

court may use extrinsic evidence to determine whether the duty to defend exists, see, e.g., Ooida

Risk Retention Group, Inc. v. Williams, 579 F.3d 469, 475 (5th Cir. 2009), the Eastern District

of Virginia has recognized that "[a]llowing an insurer to point to facts outside the pleadings to

demonstrate that it would ultimately have no duty to indemnify as proof that it has no duty to

defend would render the two duties indistinguishable and thus effectively depreciate the duty to

defend."  Capital Envtl. Servs., Inc., 536 F. Supp. 2d at 642 (emphasis in original).  In so

holding, the Court also recognized that "[t]he Supreme Court of Virginia has never given the

green light to breach this salutary rule ["eight-corners" rule]; a federal court thus has no basis to

do so."  Id.; see also Premier Pet Prods., LLC v. Travelers Prop. Cas. Co. of Am., 678 F. Supp.

2d 409, 416 n.8 (E.D. Va. 2010) (holding that "[a]pplication of the Eight Corners Rule requires

the Court to consider only the underlying complaint itself, and to decline to look at any documents attached to the complaint or on which the complaint relies").  Accordingly, determining whether an insurer has a duty to defend requires examination of the "eight-corners": (1) the language of the policy to ascertain the terms of the coverage; and (2) the allegations of the underlying complaint to determine whether <u>any</u> claims alleged therein are covered by the policy. <u>Fuisz</u>, 61 F.3d at 242.

### B.      The "Legal or Professional Services" Exclusion.

Under the "eight-corners" rule, the evaluation of whether a duty to defend exists in the context of a "Professional Services" exclusion requires a two-part analysis.  First, the analysis examines the four corners of the underlying policy, and in particular, the "Professional Services" exclusion to determine its scope.  <u>Bohreer v. Erie Ins. Group</u>, 475 F. Supp. 2d 578, 585 (E.D. Va. 2007).  Second, the analysis examines the four corners of the underlying complaints to determine whether the allegations fall within the scope of the "Professional Services" exclusion.  <u>Id.</u> at 586. As outlined below, the scope of the "Legal or Professional Services Exclusion" in the Great Northern Policy does not exclude the acts Spencer alleged in the underlying Complaints, and, therefore, Great Northern had a duty to defend McGuireWoods and its partners in those actions.

**1.      The "Legal or Professional Services" exclusion in the Great Northern Policy is narrowly limited to legal services performed at the direction, and for the benefit, of a client of McGuireWoods.**

In order to determine the relevant coverage provided to McGuireWoods and its partners in this matter, a threshold determination must be made regarding the scope of the "Legal or Professional Services" exclusion in the Great Northern Policy.  The Great Northern Policy has an Endorsement entitled "*Exclusions Insureds or Affiliates/Legal or Other Professional Services*," Form 80-02-2423, which, in pertinent part, states as follows:

With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost, or expense arising out of the rendering of or failure to render any:

· legal service, advice or instruction; or

· other professional service, advice or instruction;

regardless of whether or not:

· a claim or suit is brought by any client or any other person or organization, or

· such service, advice or instruction is ordinary to any **insured's** profession.

(Ex. A to Compl., at Form 80-02-2423, p. 2 (emphasis in original).)  None of these terms, including "legal service," "legal advice," "legal instruction," "professional service," "professional advice," or "professional instruction" are defined in the Endorsement or elsewhere in the Great Northern Policy.  Where, as here, the relevant terms of a "Professional Services" exclusion are not defined within the policy itself, "courts must look to the nature of the insured's act or conduct to determine whether the insured's act arises out of the rendering or failure to render professional services." <u>Bohreer</u>, 475 F. Supp. 2d at 585 (quoting <u>St. Paul Fire & Marine Ins. Co. v. Jacobson</u>, 826 F. Supp. 155, 160-61 (E.D. Va. 1993)).

While no court applying Virginia law has examined a "Professional Services" exclusion in the context of alleged acts of defamation within the legal profession, this exclusion has been examined for other professions.  In Virginia, for a "Professional Services" exclusion to be valid, it must be narrowly tailored so that it acts to exclude coverage only when the insured's conduct clearly involves the "rendering or failure to render . . . [a] 'professional service.'" <u>Jacobson</u>, 826 F. Supp. at 160-61.  A "Professional Services" exclusion does not automatically apply to all acts by the insured merely based on the insured's status as a professional.  <u>Id.</u>  Instead, an

11

examination of the scope of the exclusion requires, "courts [to] . . . look to the nature of the insured's act or conduct, not to the insured's title [as a professional]." Id.

Illustrative of this narrow interpretation of the "Professional Services" exclusion is Granite State Insurance Company v. Bottoms, 243 Va. 228, 233-35, 415 S.E.2d 131, 134-35 (1992), where the Supreme Court of Virginia rejected an insurer's attempt to deny its duty to defend an adult home for burn injuries sustained by one of its residents while bathing in hot water. On these facts, the Court rejected the insurer's attempt to broadly define the exclusion of coverage for any bodily injury "due to . . . the rendering of or failure to render . . . any service or treatment conducive to health or of a professional nature" so as to exclude coverage for injury due to bathing a resident on the grounds that such constituted "treatment conducive to health." Id. at 234, 415 S.E.2d at 134.

Likewise, in Capitol Environmental Services, Inc., Judge T. Ellis held that a "Professional Services" exclusion did not relieve an insurer of its duty to defend a waste material management company for an underlying motor vehicle accident lawsuit. In the underlying lawsuit, an empty tractor-trailer was on its way to pick up and transport a load of waste material when it was involved in an accident. Capital Envtl. Servs., Inc., 536 F. Supp. 2d at 636. Under those facts, Judge Ellis rejected the insurer's attempt to broadly define the exclusion such that it classified the tractor-trailer at the time of the accident as being engaged in the performance of, "operations including . . . transportation, treatment, disposal, documentation and management of waste handling." Id. at 643-44.

While no court applying Virginia law has done so, other courts have examined the same policy language at issue in this matter and in Jacobson, (whether the alleged acts "arise out of the rendering or failure to render a 'professional service'"), and have interpreted the "Professional

Services" exclusion in the context of an underlying claim of defamation against an attorney or law firm.  Compare Ex. A to Compl., at Form 80-02-2423, p. 2 and Jacobson, 826 F. Supp. at 160-61 with Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 983 (3rd Cir. 1988).

Harad is the seminal case involving application of the "Professional Services" exclusion to the work of an attorney or law firm in this context.  In that case, an attorney signed a verification to an answer and counterclaim filed on behalf of his client, which alleged that the plaintiff defrauded the client.  Harad, 839 F.2d at 980-81.  The plaintiff later sued the attorney for malicious prosecution.  Id. at 980.  In denying that it had a duty to defend, the insurer relied on the "Professional Services" exclusion of the applicable insurance policy, which excluded claims "arising out of the rendering or failure to render any professional service."  Id. at 983.

Because, as in the instant case, the policy at issue in Harad, did not define "professional service," the court turned to "the plain and ordinary meaning of the term" to determine whether the alleged acts arose out of the, "rendering or failure to render any professional service."  Id. at 983-84.  In its analysis, the court noted the distinction between "two very different and often overlooked components [in the practice of law], the professional and the commercial."  Id. at 985.  The professional aspect "involves the rendering of legal advice to and advocacy on behalf of clients for which the attorney is held to a certain minimum professional and ethical standard." Id.  While the commercial aspect involves "the setting up and running of a business," including such tasks as securing office space, hiring staff, paying bills, and collecting on accounts receivable.  Id.  Given the dual nature of the practice of law, determination of whether a professional service is being performed depends on the role the lawyer was playing at the time the potential liability arose.  Id. at 984.  As in Virginia, the relevant consideration is not the title or character of the party performing the act, but the act itself.  See id.  The Third Circuit held that

because the acts for which the attorney had been sued, namely the drafting and signing of pleadings, clearly were "professional in nature and go to the heart of the type of services an attorney provides to his clients," the insurer had no duty to defend based on the "Professional Service" exclusion. Id. at 984-85.

A similar result was reached in two other cases, which relied on the distinction between the professional and commercial aspects of the practice of law articulated in Harad. In Vogelsang v. Allstate Insurance Co., 46 F. Supp. 2d 1319, 1320 (S.D. Fla. 1999), an attorney was sued by a non-client for defamation and malicious prosecution as a result of the attorney's conduct in a prior suit against the non-client. The alleged defamatory conduct consisted of allegations contained in the complaint drafted and signed by the attorney on behalf of his client. Id. The Court held that there was no duty to defend under the "Professional Services" exclusion of the applicable policy because the alleged defamation flowed directly from the attorney's professional decision made while rendering legal services to his client. Id. at 1323. In Boggs v. Camden-Clark Memorial Hospital Corp., 693 S.E.2d 53, 56 (W. Va. 2010), an attorney was sued for malicious prosecution based on statements in two counterclaims he filed on behalf of his client in an underlying case. The court held that there was no duty to defend under the "Professional Services" exclusion because the alleged defamatory conduct flowed "directly from professional services while rendering legal services to [the attorney's] client." Id. at 62-63.

Thus, in each of the cases in which courts have found that the "Professional Services" exclusion applied, the alleged tort occurred in a pleading by the attorney, an act at the heart of rendering legal services. In contrast, there was a duty to defend a law firm for acts of alleged defamation in Atlantic Lloyd's Insurance Co. of Texas v. Susman Godfrey, L.L.P., 982 S.W.2d 472, 476-77 (Tex. App. 1998). In Atlantic Lloyd, an attorney was sued for statements made in a

solicitation letter sent to a prospective client for a medical malpractice suit against a physician, in which the attorney disclosed details of his representation of another individual in a previous lawsuit against the same physician. Id. at 474. In holding that the "Professional Services" exclusion of the applicable policy did not absolve the insurer of its duty to defend, the court noted that the statements made in the letter were not part of the lawyer's professional functions in representing a client such as, "drafting pleadings, analyzing case law, and conducting trial strategy sessions." Id. at 478. Despite a clear reference to a prior act of professional legal representation in the solicitation letter, the court concluded that "the letter itself does not provide any professional services." Id. at 477. Rather, it promoted the interests of the law firm, namely as an effort by the law firm on its own behalf, "designed to acquire new business." Id.

In this matter, the "Legal or Professional Services" exclusion in the Great Northern Policy, which excludes coverage for the rendering of legal services, advice, or instruction, is limited in scope. Because the Great Northern Policy does not define those terms, they must be given their plain meaning within the context of the legal profession. The professional services McGuireWoods renders are limited to those instances where the firm and its attorneys are rendering legal advice to, or advocating on behalf of, clients who have specifically retained the firm to perform those functions, which are governed by professional and ethical standards. McGuireWoods' professional services do not include the numerous other commercial aspects of the practice of law where the firm and its attorneys are working solely to promote their own interests and are acting outside the scope of an attorney-client relationship. Under the Great Northern Policy, the duty to defend does exist for allegedly defamatory statements a McGuireWoods' lawyer made outside the context of performing a direct legal service on behalf of a client. Furthermore, under the Great Northern Policy, the duty to defend does exist for

allegedly defamatory statements a McGuireWoods' lawyer made to benefit either the lawyer or

McGuireWoods, regardless of whether the subject matter of the statements includes details of the

firm's performance of underlying professional duties.

**2.     The allegations in Spencer's Complaints do not fall within the "Legal or Professional Services" exclusion in the Great Northern Policy.**

Under the "eight-corners" rule, in order to determine the relevant coverage provided to

McGuireWoods and its partners, an examination must also be made of the underlying lawsuits

Spencer filed to determine whether the allegations fall within the scope of the "Legal or

Professional Services" exclusion.  Bohreer, 475 F. Supp. 2d at 586.

In the underlying Complaints, Spencer alleged that McGuireWoods and its partners

defamed him through:

·       Getchell's statements to the White House in September 2007 regarding the legal
malpractice complaint Wintergreen filed against Spencer.  (1st Compl. ¶¶ 30, 37-
38; Am. 1st Compl. ¶¶ 49, 52, 54-55; 2d Compl. ¶¶ 50, 53, 55-56.)

·       Allcott's statements to the National Law Journal in October 2007 regarding
Spencer's responsibility for filing the trial transcripts and the legal malpractice
complaint Wintergreen filed against Spencer.  (1st Compl. ¶¶ 44-47; Am. 1st
Compl. ¶ 62; 2d Compl. ¶ 63.)

·       Page's statements to Evan Burkholder in December 2007 that Spencer was
responsible for the dismissal of the Grigg appeal and Getchell and
McGuireWoods were not.  (2d Comp. ¶ 67.)

Because the alleged acts of defamation contained in the underlying Complaints were

made apart from, and indeed two years after, McGuireWoods' and its partners' performance of

professional services in the Grigg matter, and because they were made for the benefit of

McGuireWoods and its partners, and not one of their clients, the acts do not fall within the

"Legal or Professional Services" exclusion in the Great Northern Policy.  See supra pp. 4-5.

Great Northern cannot rely on the mere fact that the underlying alleged defamatory statements

relate, in part, to the professional representation McGuireWoods and its partners performed in the <u>Grigg</u> matter.  Just as in <u>Atlantic Lloyd</u>, the critical issue is not the subject matter of the statement or the title of the person making it, but whether it was made while performing a professional act of the practice of law to benefit a client.  As in <u>Atlantic Lloyd</u>, the defamatory statements McGuireWoods and its partners allegedly made were made <u>after</u> the subject legal representation had ended and were done to benefit the lawyer, not the client.  Therefore, the "Professional Services" exclusion does not apply.  The exclusion could only apply if the defamatory statements were made within a legal pleading, while analyzing case law, or as part of a trial strategy sessions.  <u>See</u> <u>Atl. Lloyd</u>, 982 S.W.2d at 478.  Otherwise, they are outside the professional aspects of the practice of law and do not fall within the exclusion.

Furthermore, because the underlying Complaints alleged that the statements were made to promote Getchell's career and McGuireWoods' reputation, they were part of the "commercial aspect" of the practice of law and not the "professional aspect."  (<u>See</u>, <u>e.g.</u>, 1st Compl. ¶¶ 32 ("The LLP [McGuireWoods] had a desire to minimize any further damage to the LLP's [McGuireWoods'] reputation from the dismissal of the <u>Grigg</u> appeal"), 53 ("This would serve Getchell's personal agenda, independent of his law firm employment, of getting on the Fourth Circuit.").)  Therefore, the "Professional Services" exclusion of the Great Northern Policy does not apply, and Great Northern is not absolved of its duty to defend McGuireWoods and its partners against Spencer's lawsuits.

### C.     The "Former Employee" Exclusion.

As one reason for denying its duty to defend, Great Northern asserts that Spencer is "a former member, partner, and/or employee" of McGuireWoods, (Answer ¶ 47), and that it has no duty to defend against claims brought by him under the Endorsement entitled "*Exclusions*

*Insureds or Affiliates/Legal or Other Professional Services*," Form 80-02-2423, which states: "This insurance does not apply to any damages, loss, cost or expense arising out of any injury or damage sustained by any: . . . current, former or prospective director, **officer**, stockholder, **employee**, custodian of property or legal representative of any such organization described above."  (Ex. A to Compl., at Form 80-02-2423, p. 1 (emphasis in original).)

However, this argument ignores the simple fact that in Virginia under the "eight-corners" rule, even if considered proven, Spencer's status as a former member, partner, and/or employee of McGuireWoods is immaterial because the underlying Complaints include <u>no</u> allegation of any employment relationship between him and McGuireWoods.  Therefore, this issue is ripe for a Rule 12(c) determination by the Court and this exclusion cannot be invoked to deny Great Northern's duty to defend.

In the interpretation of insurance contracts, the Supreme Court of Virginia has repeatedly held that the duty to defend is distinct from the narrower duty to indemnify and that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether an insurer's broad duty to defend has been triggered.  <u>Brenner</u>, 240 Va. at 189, 192, 397 S.E.2d at 102, 104; <u>Reisen</u>, 225 Va. at 331, 302 S.E.2d at 531; <u>Travelers Indem. Co. v. Obenshain</u>, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978); <u>Norman v. Ins. Co. of N. Am.</u>, 218 Va. 718, 724, 239 S.E.2d 902, 905-06 (1978); <u>London Guar. & Accident Co.</u>, 188 Va. at 199-200, 49 S.E.2d at 256.  The Eastern District of Virginia has uniformly followed this rule when evaluating whether a duty do defend exists.  <u>See</u> <u>Capital Envtl. Servs., Inc.</u>, 536 F. Supp. 2d at 640; <u>Premier Pet Prods., LLC</u>, 678 F. Supp. 2d at 416.  The rationale for this approach was recently articulated by Judge T. Ellis: "Allowing an insurer to point to facts outside the pleadings to demonstrate that it would ultimately have no duty to indemnify as proof that it has no duty to defend would render

the two duties indistinguishable and thus effectively depreciate the duty to defend." <u>Capital Envtl. Servs., Inc.</u>, 536 F. Supp. at 642.  The Supreme Court of Virginia has "never given the green light to breach this salutary rule ["eight-corners" rule]; a federal court thus has no basis to do so." <u>Id.</u>

Judge H. Lauck reached a similar determination in <u>Premier Pet Products, LLC</u>, holding that the, "[a]pplication of the Eight Corners Rule requires the Court to consider only the underlying complaint itself, and to decline to look at any documents attached to the complaint or on which the complaint relies." <u>Premier Pet Products, LLC</u>, 678 F. Supp. 2d at 416 n.8.

The distinction between the duty to defend and the duty to indemnify was exemplified in <u>Admiral Insurance Co. v. G4S Youth Services</u>, 634 F. Supp. 2d 605 (E.D. Va. 2009), where this Court applied Virginia's "eight-corners" rule to interpret an insurance contract.  There the policy excluded any injury suffered by an employee of the insured "arising out of and in the course of employment." <u>Id.</u> at 612-13.  At issue was whether the exclusion applied to the shooting death of an employee of the insured while on the insured's premises.  <u>Id.</u> at 607.  In determining whether the duty to defend was triggered, this Court looked at the policy and the underlying complaint, which contained a count based on the insured's negligence in breaching its duty as her employer and a count based on premises liability.  <u>Id.</u> at 614.  This Court held that the duty to defend did exist for the entire underlying case because the premises claim did not trigger the employee policy exclusion and, "if some claims are covered by a policy and others are not, the duty to defend still attaches." <u>Id.</u>  Acknowledging that the duty to indemnify is distinct and separate from the duty to defend, the Court held that determination of the duty to indemnify was not ripe, since the underlying claim was not yet resolved.  <u>Id.</u> at 615.

> Admiral Insurance states that if this Court finds the company does not owe a duty to defend, it would also follow that they do not have a duty to indemnify. While

> this statement is true, the reverse is not. A duty to defend is a preliminary issue requiring an insurer to guard against a determination of liability in the underlying case; however, a duty to indemnify is based upon the specific claims alleged and the factual outcome of the Underlying Case, as determined by the trier of fact. Where, as here, the underlying case brings alternative theories and counts, some of which may not trigger policy coverage, the court must abstain on deciding the issue of indemnification until the pending case is resolved.

Id.

As in Admiral Insurance, other cases applying Virginia's "eight-corners" rule to an employment related exclusion have found no duty to defend only where the underlying complaint contained a clear allegation of the employment relationship.  In Virginia Electric & Power Co. v. Northbrook Property & Casualty Insurance Co., 252 Va. 265, 267, 475 S.E.2d 264, 265 (1996), the general liability policy contained an exclusion that eliminated the insurer's liability, "for bodily injury to an employee of the insured for injuries 'arising out of and in the course of employment by the Insured.'"  The Court ultimately held that the underlying suit did trigger the duty to defend because it alleged that the injured party was a "business invitee" of the insured and did not allege that the injured party was an "employee."  Id. at 270, 475 S.E.2d at 266.  The Court noted that the duty to defend was broader and triggered earlier than the duty to indemnify.

> The insurer has the obligation to defend the insured . . . even though the obligation to pay is not ultimately invoked.  It is in this context that the obligation to defend is said to be broader than the obligation to pay.  Stated differently, the insurer has a duty to defend against risks covered by the policy even though the defense successfully litigates the issue of its lack of obligation to pay the claim.

Id. at 269, 475 S.E.2d at 266.  In contrast, this Court found that such an exclusion did apply in Builders Management Insurance Co. v. R.G. Management Services, Inc., No. 1:08cv383, 2008 WL 4546600, at *4 (E.D. Va. Oct. 7, 2008), but only because the underlying complaint at issue specifically alleged that at the time of injury the employee was employed by the employer, was

working at one of the employer's job sites, and was injured while attempting compliance with one of the employer's directives.

A result similar to that in <u>Virginia Electric & Power Co.</u> was reached in <u>Baron Oil Co. v. Nationwide Mutual Fire Insurance Co.</u>, 470 So. 2d 810, 812 (Fla. Dist. Ct. App. 1985), where a general liability policy contained an exclusion for "personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured."  A former employee sued the insured for malicious prosecution and the original complaint did <u>not</u> allege or otherwise indicate that the plaintiff was ever an employee of the insured or that his status as an employee might have any significance or relationship to the lawsuit for malicious prosecution.  <u>Id.</u> at 811.  The former employee later amended the complaint to include allegations regarding his status as a former employee.  <u>Id.</u> at 811-12.  The court held that the insurer had a duty to defend based on the original complaint because the original complaint did not contain any allegations of fact that fell within the policy exclusion.  <u>Id.</u> at 813-14.  The insurer had a "clear-cut duty to defend [the insured] upon the filing of the original complaint, irrespective of the true facts."  <u>Id.</u> at 814.  Proof that the plaintiff was a former employee of the insured:

> [W]as legally insufficient to relieve [the insurer] of the obligation to defend. When the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend. . . . Once the insurer's duty to defend arises, it continues throughout the case unless it is made to appear by the pleadings that the claims giving rise to coverage have been eliminated from the suit.

<u>Id.</u> at 814-15.  The court held that the insurer's duty to defend terminated when the amended complaint was filed because it alleged facts that clearly brought the entire cause of action within a policy exclusion.  <u>Id.</u> at 815.

The Superior Court of Connecticut found that a similar exclusion did <u>not</u> relieve the insurer of its duty to defend.  <u>See</u> <u>Nat'l Grange Mut. v. Mallozzi</u>, No. CV054011341S, 2006 WL 3859735, at *2 (Conn. Dec. 12, 2006).  The court held that it may not look beyond the four corners of the underlying complaint when determining whether an insurer has a duty to defend, and because the complaint did <u>not</u> provide any indication that the plaintiff was an employee of the insured, the underlying complaint triggered the duty to defend.  <u>Id.</u>

Other jurisdictions that follow the "eight-corners" rule, have found that the insurer had a duty to defend even where the "actual facts" reveal that there is no duty to indemnify.

Judge Learned hand has stated that the duty to defend means:

> [T]hat the insurer will defend the suit, if the injured party states a claim, which qua claim, is for an injury "covered" by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured or any one else, which indicates, or even demonstrates, that the injury is not in fact "covered."

<u>Lee v. Aetna Cas. & Sur. Co.</u>, 178 F.2d 750, 751 (2d Cir. 1950).  Judge Hand's holding has been applied in other jurisdictions as well.

> The law is clear that, in determining whether there is potential coverage, only the complaint can be considered.  The insurer's duty to defend is predicated not upon information in its possession which indicates or even proves noncoverage.  Rather it is predicated upon the allegations in the complaint in an action against the insured and when such allegations state facts which bring the case within or potentially within, the coverage of the policy, the insurer is from this time on unjustified in not defending the insured.

<u>Fragman Constr. Co. v. Preston Constr. Co.</u>, 274 N.E.2d 614, 617-18 (Ill. App. Ct. 1971) (internal quotations omitted).  "The fact that the insurer is possessed of information, whether obtained from its insured or from other sources, which may show the claim against the insured to fall outside the coverage of the policy is, in this regard, of no consequence."  <u>Brooklyn & Queens Allied Oil Burner Serv. Co. v. Sec. Mut. Ins. Co.</u>, 27 Misc. 2d 401, 402 (N.Y. Sup. Ct. 1960).

In <u>Fragman Construction Co.</u>, the Illinois Court of Appeals went further and held that:

> If there is potential coverage but the insurer believes it has valid exclusionary coverage defenses, it must: (1) secure a declaratory judgment of its rights while defending the potential insured under a reservation of rights, or (2) defend the potential insured under a reservation of rights and adjudicate its coverage in a supplemental suit. . . . If the insurer refuses to defend or seek a declaratory judgment in a case where there is potential coverage, it is estopped from raising exclusionary defenses in a subsequent action against the carrier by the insured.

<u>Fragman Constr. Co.</u>, 274 N.E.2d at 616.  <u>See</u> <u>also</u> <u>Am. Registry of Pathology v. Ohio Cas. Ins.</u>

<u>Co.</u>, 461 F. Supp. 2d 61 (D.D.C. 2006) (holding that the "eight corners" rule applied and that

facts outside the complaint and policy were "irrelevant"); <u>Stern, Walter & Simmons, Inc. v.</u>

<u>Seaboard Surety Co.</u>, 208 F. Supp. 252 (N.D. Ill. 1970) (holding that "[t]he insurer's duty to

defend is predicated not upon information in its possession which indicates or even proves non-

coverage.  Rather, it is predicated upon the allegations in the complaint in an action brought

against the insured and when such allegations state facts which bring the case within, or

potentially within, the coverage of the policy, the insurer is from this time on unjustified in not

defending the insured").

In this matter, Great Northern cannot rely on the former employee exclusion contained in

the "*Exclusions Insureds or Affiliates/Legal or Other Professional Services*" Endorsement

because, even assuming the Endorsement is valid, enforceable, and applicable to Spencer,

nowhere in Spencer's underlying Complaints is there any allegation that he had any prior

employment relationship with McGuireWoods.  To the extent that Spencer previously had a

relationship with McGuireWoods that might preclude coverage under the exclusion, Great

Northern could rely on it to avoid its duty to defend <u>only</u> if that relationship were alleged in

Spencer's underlying Complaints.  Because the underlying Complaints do not contain any

allegation of, or even a reference to, an employment relationship between Spencer and

McGuireWoods, this issue is ripe for a Rule 12(c) resolution, and this Court should find as a matter of law that Great Northern cannot rely on the exclusion to deny its duty to defend.

### D.     The "Expected or Intended Injury" Exclusion.

Great Northern also relies on the "Expected or Intended Injury" exclusion in the Policy, which excludes coverage for any personal injury arising out of an offense committed with the intent to injure.  However, Great Northern cannot rely on this defense because the allegations in Spencer's Complaints include causes of action alleging that the defamatory statements were negligently, not intentionally, made.

There can be an inherent conflict in providing insurance coverage for acts of defamation under personal injury coverage, as such coverage typically includes an exclusion for any intentional act.  Because the tort of defamation can be an intentional tort, the exclusion for coverage for any intentional act would seem to negate the specific coverage provided for defamation and related acts.  In the Fourth Circuit, the conflict is resolved by looking, not at whether the defamatory act was intentional, but whether the resulting harm to the subject of the defamation was intentional.

In <u>Fuisz</u>, the Fourth Circuit examined the implications of an exclusion for intentional acts in an insurance policy for coverage of claims of personal injury resulting from defamation.  In that case, the insured sought defense and indemnification under two identical personal catastrophe liability policies that were issued for successive policy periods.  <u>Fuisz</u>, 61 F.3d at 240.  The policies covered damages because of personal injury, specifically defined to include libel, slander, or defamation of character, and the policies also excluded coverage for "any act committed by or at the direction of an insured with intent to cause . . . personal injury . . . ."  <u>Id.</u>

In the defamation action against the insured, the plaintiff alleged that the false accusations were disseminated to retaliate against the plaintiff for the insured's loss of a business opportunity.  Id.

The court acknowledged that the policy provisions appeared to be in direct conflict, but also recognized that defamation may be committed in two different ways, both of which were alleged in the complaint against the insured.  Id. at 242-43.  The complaint alleged that the insured, with an intent to injure the plaintiff, had published material the insured knew to be false. Id. at 244.  The complaint also alleged "New York Times" malice in that the insured recklessly disregarded whether his statements were true or false.  Id. at 243-44.  Inasmuch as the latter allegations were not within the exclusion for intentional acts, the court held that the insurer had a duty to defend.  Id. at 244-45.  In reaching this conclusion, the court further held that under the "eight-corners" rule the duty to defend is triggered whenever the underlying complaint alleges any claim covered by the policy.  Id. at 242.  Thus, if the complaint contains multiple counts of defamation and at least one of them can be categorized as lacking an intent to injure, coverage is afforded for all the claims.

The "Expected or Intended Injury" exclusion in the Great Northern Policy is almost identical to the one at issue in Fuisz.  Great Northern cannot rely on this exclusion to deny its duty to defend because each of Spencer's Complaints contained a count against each of the named defendants in which Spencer alleged "negligent defamation."  (See 1st Compl. ¶¶ 23-25; Am. 1st Compl. ¶¶ 28-30; 2d Compl. ¶¶ 32-34.)  Thus, under Fuisz, the duty to defend is triggered for the entire complaint.  See Fuisz, 61 F.3d at 242.

### E.    The "Publications with Knowledge of Falsity" Exclusion.

Closely related to the "Expected or Intended Injury" exclusion, Great Northern also relies on the "Publications with Knowledge of Falsity" exclusion, which excludes personal injury

arising out of any publication of content or material with knowledge of its falsity.  However, Great Northern cannot rely on this defense because the allegations in Spencer's Complaints include causes of action alleging that the defamatory statements were negligently made without knowledge of their falsity.

No court applying Virginia law has examined the application of a "Publications with Knowledge of Falsity" exclusion in the context of a denial of a duty to defend.  However, this exclusion has been examined by the Seventh Circuit.  In <u>Cincinnati Insurance Co. v. Eastern Atlantic Ins. Co.</u>, 260 F.3d 742, 745-46 (7th Cir. 2001), the Seventh Circuit examined such an exclusion and held that it could not apply where the underlying complaint alleged alternative theories of recovery, which included allegations that the publications were made without actual knowledge of their falsity.  Applying Illinois law, the Court found that the same policy exclusion did not exclude coverage of a suit for tortious interference because, "coverage does not depend on the characterization of the wrong by the plaintiff."  <u>Id.</u> at 745.  If it did, "insurance protection could be lost as the result of a totally inconsequential omission by the drafter of the complaint."  <u>Id.</u>  Although the underlying claim was "replete with allegations of deliberate misconduct" by the insured, the court reasoned that those allegations were "much more likely to have been intended as a pitch for punitive damages than as a limitation of the claim."  <u>Id.</u> at 746.  Because the court recognized that the plaintiff could still recover under Illinois law if he proved negligent defamation, it held that the exclusion did not apply and the insurer had a duty to defend.  <u>Id.</u>

In contrast, the Seventh Circuit held that an identical "Publications with Knowledge of Falsity" exclusion applied and the insurer had no duty to defend under different facts in <u>Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.</u>, 500 F.3d 640, 646-47 (7th Cir. 2007).  The decisive question was whether the underlying complaint's allegations of intentional

misconduct would trigger the exclusion even though the statutes underlying the complaint allowed for recovery without proving knowledge of falsity.  Id. at 645-46.  Ultimately, the court found it irrelevant that "the statute underlying the action allows relief on a lesser showing of culpability."  Id. at 646.  What was essential, was that the plaintiffs' "actual pleadings" requested relief solely on the basis of the defendant's alleged fraud.  Id.  The plaintiffs' specific allegations of fraud and reliance solely on that theory of relief meant that the exclusion applied.  Id.

The critical inquiry is whether it is conceivable that the underlying plaintiff could recover from the insured without showing that the insured acted willfully or with knowledge of falsity.  In Del Monte, the exclusion applied because, based on the way the plaintiffs had structured their complaint, there could be no recovery without a showing of willful knowledge of the falsity.  See id. at 644.  In contrast, in Cincinnati, the exclusion did not apply because the plaintiff could still recover even without such a showing.  See Cincinnati, 260 F.3d at 746.

The Seventh Circuit's interpretation of when the exclusion applies is consistent with Virginia law because it is grounded on the same principles of insurance contract interpretation, namely that any ambiguous policy exclusion is to be construed strictly against the insurer and the use of the "eight-corners" rule to determine the duty to defend.  See Del Monte, 500 F.3d at 643.  It is also consistent with Virginia's interpretation of the "eight-corners" rule because under that rule the duty to defend is triggered whenever the underlying complaint alleges any claim covered by the policy.  Fuisz, 61 F.3d at 242.

Great Northern cannot rely on the "Publications with Knowledge of Falsity" exclusion to deny its duty to defend in this matter.  Spencer's allegations in his Complaints clearly include causes of action premised on negligence, which required no showing that McGuireWoods or its partners had knowledge of the falsity of their allegedly defamatory conduct.  (See 1st Compl. ¶¶

23-25; Am. 1st Compl. ¶¶ 28-30; 2d Compl. ¶¶ 32-34.)  Unlike the complaint at issue in <u>Del Monte</u>, Spencer clearly included alternative theories of recovery that did not limit him to a recovery only if he first proved intentional misconduct by McGuireWoods and its partners.  Because Spencer could have prevailed at trial without showing an actual knowledge of the falsity of the publication by McGuireWoods and its partners, Great Northern had a duty to defend at least one claim in each of the Complaints, which then triggered a duty to defend the entire complaints.  <u>See</u> <u>Fuisz</u>, 61 F.3d at 242.  Thus, Great Northern cannot rely on this exclusion to obviate its duty to defend.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, McGuireWoods, LLP, respectfully requests that the Court grant its Motion for Judgment of Liability on the Pleadings and hold that Great Northern had a duty to defend McGuireWoods, LLP, in the underlying legal actions filed by Christopher Spencer, Esq.

McGUIREWOODS LLP


\_\_/s/ James W. Morris, III_____
James W. Morris, III
Virginia State Bar No. 05740
Matthew D. Green
Virginia State Bar No. 46913
Melissa Y. York
Virginia State Bar No. 77493
Attorneys for McGuireWoods LLP
Morris & Morris, P.C.
Post Office Box 30
Richmond, Virginia  23218-0030
(804) 344-8300 Telephone
(804) 344-8359 Facsimile
jmorris@morrismorris.com
mgreen@morrismorris.com
myork@morrismorris.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send a notification of such filing (NEF) to the following:

Jeffrey R. Schmieler
Virginia State Bar No.: 32175
Alan B. Neurick *(Pro hac vice)*
Lisa N. Walters
Virginia State Bar No.: 72291
Saunders & Schmieler, P.C.
The Montgomery Center
8630 Fenton Street, Suite 1202
Silver Spring, Maryland 20910
Email: schmielerj@sslawfirm.com
Email: neuricka@sslawfirm.com
Email: waltersl@sslawfirm.com
Telephone: (301) 588-7717
Facsimile: (301) 588-5073
*Counsel for Defendant*

/s/ James W. Morris, III
James W. Morris, III
Virginia State Bar No. 05740
Matthew D. Green
Virginia State Bar No. 46913
Melissa Y. York
Virginia State Bar No. 77493
Attorneys for McGuireWoods LLP
Morris & Morris, P.C.
Post Office Box 30
Richmond, Virginia  23218-0030
(804) 344-8300 Telephone
(804) 344-8359 Facsimile
jmorris@morrismorris.com
mgreen@morrismorris.com
myork@morrismorris.com