**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **McGUIREWOODS LLP** | * | |
| Plaintiff | * | |
| **v.** | * | **Civil Action No.: 3:10cv354** |
| **GREAT NORTHERN INSURANCE** | * | |
| **COMPANY** | * | |
| Defendant | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**GREAT NORTHERN INSURANCE COMPANY'S BRIEF IN OPPOSITION TO
MCGUIREWOODS LLP'S MOTION FOR JUDGMENT ON THE PLEADINGS**
_____

Defendant Great Northern Insurance Company ("Great Northern"), by and through its

undersigned attorneys, files this brief in opposition to Plaintiff McGuireWoods LLP's motion for

judgment on the pleadings and in support thereof states:

<u>SUMMARY OF ARGUMENT</u>

Great Northern acted properly when it refused to provide a defense to McGuireWoods

because the facts and circumstances alleged in the underlying complaints (1) fall well outside the

risks covered by the applicable policy; and (2) are all otherwise excluded by clear provisions in

the policy.

McGuireWoods' policy does not afford coverage for the facts alleged in the underlying

complaints.   While Great Northern agrees in the policy to "pay damages that the insured

becomes legally obligated to pay by reason of liability . . . imposed by law . . . for . . . personal

injury to which this coverage applies," **Exhibit 1**, Form 80-02-2000 p. 3, the injuries alleged by McGuireWoods are all outside the definition of "personal injury" contained in the policy.

Even if the injuries alleged did meet the definition of personal injury, those injuries are all clearly excluded by the policy. The alleged injuries all fall under the (1) Expected or Intended Injury exclusion, (2) the Publications with Knowledge of Falsity exclusion, (3) the Insureds or Affiliates exclusion, and (4) the Legal or Professional Services exclusion. Thus, the underlying complaints failed to raise the potential of an injury for which Great Northern agreed to provide coverage, and there was no duty to defend.

Moreover, there was no duty to defend the underlying suit against Getchell and Allcott because they were not insureds under the policy based on the underlying allegations asserted against them. The policy simply afforded them no coverage.

Based on the facts and circumstances alleged in the underlying complaints, there was no potential that Great Northern would be obliged to indemnify any of the underlying defendants. Because there was no potential for indemnification, Great Northern did not owe McGuireWoods, or any of the underlying defendants, a duty to defend the actions brought against them. Great Northern properly refused to provide a defense.

## STATEMENT OF FACTS

### I.      Facts preceding the underlying complaints

McGuireWoods was retained to represent Wintergreen Partners, Inc. ("Wintergreen") in a Virginia state action styled *Grigg v. Wintergreen Partners, Inc.* Compl. ¶ 13. Wintergreen was represented at trial by Christopher Spencer, of the law firm Bowman and Brooke, LLP. *Id.* After the trial, the matter was appealed; however, the appeal was subsequently dismissed by the Supreme Court of Virginia "because the original trial transcript was not timely filed as required."

*Id.* at ¶ 14.   The dismissal of the appeal was later the subject of articles in the *Virginian-Pilot* and the *National Law Journal*.   *Id.* at ¶ 15.

## II.    Allegations of the underlying complaints

### A.    The Getchell/Allcott original complaint

After the articles appeared in the *Virginian-Pilot* and the *National Law Journal*, Spencer filed a complaint against E. Duncan Getchell and William Allcott.   **Exhibit 2**.   In this first complaint, Spencer alleged that Getchell and Allcott defamed him as part of an "unlawful plan that [they] hatched in the hope of saving [Getchell's] troubled nomination to" the United States Court of Appeals for the Fourth Circuit.   Ex. 2, ¶ 5.   Getchell's nomination to the bench "encountered [an] obstacle when news reporters started asking questions about the role that he and . . . McGuireWoods LLP . . . , played in the" dismissal of the *Grigg* appeal.   *Id.*

Spencer alleges that out of fear "that negative publicity about the dismissal would doom his judicial aspirations, Getchell . . . joined with Allcott in an unlawful conspiracy to shift blame away from Getchell and his firm and to spread the false message that Spencer . . . was responsible for the failure to file the transcript and the resulting dismissal."   *Id.* at ¶ 6.   Carrying out the conspiracy, Getchell and Allcott "willfully and maliciously defamed Spencer and prejudiced him in his profession."   *Id.*   These acts of defamation included statements "that Spencer was a fraud, that Spencer was unfit to practice law and that Spencer was responsible for a mistake that was Getchell's and [McGuireWoods'] alone."   *Id.* at ¶ 7.

Spencer alleges that Wintergreen's insurer filed a complaint against Spencer and his firm for legal malpractice, yet no claim was brought against Getchell or McGuireWoods.   *Id.* at ¶ 27.   Spencer claims that the insurer's complaint became "a linchpin of [Getchell and Allcott's] scheme to cover up" Getchell's mishandling of the appeal.   *Id.* at ¶ 28.   After Getchell's

3

nomination to the bench and receiving inquiries from reporters, "Getchell and Allcott determined . . . to falsely shift blame for the *Grigg* dismissal . . . toward Spencer." *Id.* at ¶ 34. Getchell and Allcott "agreed on a plan" that "Getchell would appear to stay 'above the fray' and make no public comment about the *Grigg* appeal, while Allcott would make and spread false statements in an effort to . . . falsely shift blame for the *Grigg* dismissal to Spencer." *Id.* at ¶ 35.

Spencer painstakingly describes each step of the alleged conspiracy that was intended to cause his professional disgrace. After "Getchell declined to comment to the *Virginian-Pilot* reporter, the reporter called the White House for comment on Getchell's role in the appeal." *Id.* at ¶ 36. When "[a] White House spokesman told the reporter he would get back to him," Getchell and Allcott "advised the White House about [Wintergreen's insurer's complaint], which [Getchell and Allcott] falsely represented as being an accurate statement of the facts surrounding the *Grigg* appeal," all in an effort "to shape the White House response" to the reporter's request for comment. *Id.* at ¶¶ 36-37.

Spencer claims that "[b]y representing the [insurer's complaint] to the White House as true statements of the facts, Getchell and Allcott adopted, ratified and published the . . . false statements contained" in the insurer's complaint. The allegations in the insurer's complaint include that: (1) Spencer failed "to provide [Wintergreen] with competent, reasonable and appropriate legal representation it was entitled to"; (2) Spencer failed to meet the deadline for filing the transcript; (3) Spencer failed "to protect [Wintergreen's] rights as required under the applicable rules"; (4) Spencer failed to exercise "the requisite legal knowledge, skill and diligence necessary"; (5) Spencer "accept[ed] representation of [Wintergreen's] legal claims without the necessary legal knowledge and skill"; (6) Spencer "intentionally and/or deliberately withheld and/or concealed the material fact that the trial transcript was not timely filed and that

the appeal was not perfected and preserved"; (7) Spencer "falsely represented that the case was preserved for appeal"; and (8) Spencer intended to mislead Wintergreen and cover up his failure to file the trial transcript. *Id.* at ¶ 38.

Spencer alleges that Getchell and Allcott knew the insurer's complaint contained false statements of fact when they provided it to the White House. *Id.* at ¶ 39. As a result, and "[e]xactly as [Getchell and Allcott] intended, the White House spokesman . . . revealed the existence of the [insurer's complaint] to the reporter, vouched for [its] truth . . . and specifically pointed out that Spencer, not Getchell, was being sued for the mistakes on the *Grigg* appeal." *Id.* at ¶ 40. And "[e]xactly as [Getchell and Allcott] intended, the *Virginian-Pilot* reporter innocently relied on [their] misinformation and incorporated the false allegations . . . in his story about Getchell's nomination." *Id.* at ¶ 41.

After the *Virginian-Pilot* article was published, "[a] reporter for the *National Law Journal* began working on a new story and called Getchell and the LLP for comment." *Id.* at ¶ 43. To further the "unlawful conspiracy," Allcott "willfully and maliciously provided false information designed to deceive the *National Law Journal* and [its] readers." *Id.* at ¶ 44. Allcott blamed Spencer for the failure to file the trial transcript, published a copy of the insurer's complaint to the reporter and warranted, "[T]he facts are as represented in the malpractice suit." *Id.* at ¶¶ 45-46. This information was contained in an October 10, 2007 article. *Id.* at ¶ 44.

Spencer alleges that Allcott made "these false statements for the purpose and with the intent to shift blame for the dismissal of the *Grigg* appeal to Spencer . . . to injure Spencer in his reputation, business and profession." *Id.* at ¶ 50. Spencer states that "Allcott knew when he was making these false statements that the falsehoods would be published in a journal of national and international circulation among members of Spencer's profession, and that these falsehoods

would be published on the Internet, where they would be found in any search of Spencer's name and could never be erased." *Id.* at ¶ 51.  Spencer makes clear that "[a]ll of these false statements were made intentionally, maliciously and with knowledge of their falsity, and had the effect of defaming Spencer personally and professionally." *Id.* at ¶ 52.

After this exhaustive statement of facts, Spencer's original complaint against Getchell and Allcott includes five counts, which Spencer labels as follows: Count I – defamatory statements related to the *Virginian-Pilot* article; Count II – defamatory statements related to the *National Law Journal* article; Count III – conspiracy to injure Spencer in his reputation, business and profession; Count IV – negligent defamation in connection with the *Virginian-Pilot* [sic] article; and Count V – negligent defamation in connection with the *National Law Journal* article. Each count incorporates by reference the fifty-two preliminary paragraphs setting forth the factual details of his claims.  *See id.* at ¶¶ 53, 63, 74, 82, 92.  Thus, each count includes allegations of the facts described above.

### B.      The Getchell/Allcott amended complaint

In late October 2008, Spencer amended his complaint against Getchell and Allcott, who remained the only two defendants in the action.  **Exhibit 3**.  The amended complaint goes into greater detail regarding Getchell and Allcott's responsibility for the dismissal of the *Grigg* appeal. Ex. 3, ¶¶ 14-27.  Spencer states clearly, "At all times, Getchell and the law firm knew that they – and not Spencer – bore the entire responsibility for perfecting and prosecuting Wintergreen's appeal in the *Grigg* case." *Id.* at ¶ 27.  Spencer explains why Wintergreen's insurer only sued him, and not Getchell or McGuireWoods: someone at McGuireWoods had "sought to persuade [the insurer] that the insurers really did not have a viable claim for malpractice," and McGuireWoods offered a "goodwill payment." *Id.* at ¶¶ 30-31.  Eventually,

the insurer and McGuireWoods agreed that the insurer would sue only Spencer in order to shift the blame away from Getchell and in order to get Spencer to admit fault through a coerced settlement. *Id.* at ¶¶ 39-41. The "plan was hatched even though everyone involved knew full well that it was based on falsehoods." *Id.* at ¶ 42.

The amended complaint contained eight counts. Spencer split the "malicious defamation" and "negligent defamation" counts related to the *Virginian-Pilot* article into separate counts against Getchell and Allcott. The only truly new count Spencer added was Count IV for abuse of process. Again, each count incorporates by reference the preliminary statements of fact containing the substantive allegations of Spencer's claims. *See id.* at ¶¶ 65, 76, 87, 97, 105, 113, 117, 121.

### C.   The McGuireWoods/Barr Complaint

In September 2008, Spencer filed a separate action against McGuireWoods LLP, John S. Barr and McGuireWoods Consulting, LLC. The complaint many of the same allegations found in the amended complaint against Getchell and Allcott, with additional facts supporting the claims against the new defendants. **Exhibit 4**.

The complaint alleges that Barr is a partner in McGuireWoods, acting as "the law firm's inside 'general counsel' [who] struck secret deals to delay malpractice lawsuits against the firm for as long as possible." Ex. 4 at ¶¶ 2, 9. He alleges that Barr attempted "to drum up evidence against Spencer by calling former employees and making misleading statements to them to cajole them into joining his plan." *Id.* at 9. Worse, Barr "even took steps to see that a bogus lawsuit was filed against [Spencer] – and not Getchell or the law firm – so that it would appear that [Spencer] was to blame for the *Grigg* mistake" even though "Barr believed that lawsuit was meritless." *Id*.

After the *Grigg* appeal was dismissed, "[t]he law firm's management asked Barr to try to find a way to control the damage," and Barr "proceeded on three tracks." *Id.* at ¶¶ 29-30. He first developed the firm's position on the dismissal in *Grigg* in order "to exonerate the law firm, no matter what the truth really was." *Id.* Second, he met with "a senior official of Wintergreen's insurers" to convince them to file a lawsuit replete with false allegations. *Id.* at ¶ 31. And, third, Barr offered the "goodwill payment" to the insurer. *Id.* at ¶ 32.

After Wintergreen's insurer filed its complaint against Spencer, "[t]he law firm and Barr resolved to use the [insurer's complaint] as one of their public relations weapons," considering "it a perfect tool to support the firm's 'position' that Spencer – and not Getchell and the law firm – was responsible for botching the *Grigg* appeal." *Id.* at ¶ 45. McGuireWoods LLP and Barr "enliste[ed] the expertise of William Allcott and [McGuireWoods Consulting LLC] to . . . coordinate the law firm's responses to the media with Getchell's." *Id.* at 46.

Spencer claims the insurer's complaint was given to the White House despite everyone's knowledge "that 'the firm position' and" the statements made about Spencer in the insurer's complaint were false. *Id.* at ¶ 57. Spencer states that Barr, McGuireWoods LLP and McGuireWoods Consulting intended that the White House would reveal the existence of the insurer's complaint to the *Virginian-Pilot* reporter, vouch for the complaint's truth and "specifically point[] out that Spencer, not Getchell, was being sued." *Id.* at ¶ 58.

Spencer alleges that "Getchell, Barr, the law firm, Allcott and the consulting company conferred" and "decided that Getchell would say nothing directly or for public attribution" to the *National Law Journal*. *Id.* at ¶ 62. Instead, "Allcott and the consulting company would respond in the name of the law firm, but they would do it in a way that advanced Getchell's interests as well as the law firm's." *Id.* In accordance with this scheme:

Allcott and the consulting company, acting at the specific direction of Getchell and law firm chairmen Richard Cullen, called the *National Law Journal* and falsely stated the law firm's "position" that Barr had concocted for such occasions.  He made false statement [sic] of fact that Spencer was "responsible for perfecting the [*Grigg*] appeal, including filing the trial transcripts with the court."  Allcott noted that the [insurer's complaint] named Spencer, and not Getchell or the law firm, and vouched for the truth of the allegations in the [insurer's complaint] . . . .  He stated, "[T]he facts are as represented in the malpractice suit . . . ."  Allcott even provided a copy of the [insurer's complaint] to the *National Law Journal*.  In these ways, Allcott, overtly for the law firm and covertly for Getchell, willfully and maliciously published false information designed to harm Spencer.

*Id.* at 63.

This complaint contains a total of ten counts: Counts I through IV – malicious defamation; Count V – abuse of process; Count VI – conspiracy; and Counts VIII through X – negligent defamation.  Again, Spencer incorporates by reference all of the substantive factual allegations from the preliminary paragraphs into each count of the complaint.  *See id.* at ¶¶ 77, 88, 101, 113, 126, 134, 142, 146, 150, 154.

## STANDARD OF REVIEW

McGuireWoods' statement of the standard of review does not fully address the posture of this action.  McGuireWoods is correct that its motion has been brought pursuant to Fed. R. Civ. P. 12(c), which states, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  However, the case McGuireWoods cites, *Thomas v. Std. Fire Ins. Co.*, 414 F. Supp. 2d 567 (E.D. Va. 2006) is inapposite where the plaintiff is the moving party.  In *Thomas*, the defendant was the moving party and the Court properly applied the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  This is because a defendant's motion for judgment on the pleadings challenges only the sufficiency of the complaint, and the issue is whether the facts alleged in the complaint – if true – would entitle the plaintiff to relief.

Here, the motion to dismiss standard is inapplicable.  Offensive motions for judgment on the pleadings are not often addressed in reported opinions.  The Sixth Circuit, on review of the district court's grant of a plaintiff's motion for judgment on the pleadings, has stated the standard of review as follows:

> A motion for judgment under Rule 12(c) . . . may be granted where the moving party 'is entitled to judgment as a matter of law.'  *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) (citation omitted).  When deciding such a motion, the district court must take all the 'well-pleaded material allegations of the pleadings of the opposing party' as true.  *Id.* (citation omitted).  This court reviews a grant of judgment on the pleadings de novo.  *Id.*

*Cincinnati Ins. Co. v. Beazer Homes Investments, LLC*, 594 F.3d 441, 444 (6th Cir. 2010).

It is clear that, if a motion for judgment on the pleadings may be used offensively by the plaintiff, such a motion may be granted only where the pleadings reveal no disputed facts and the plaintiff is entitled to judgment as a matter of law.   A court must first determine whether the complaint contains factual allegations sufficient to state a plausible claim of entitlement to relief.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Then the court must assume that the allegations of complaint that are denied by the answer are *untrue*, because these are facts that have been put at issue by the defendant.  The court must also assume the truth of all well-pleaded affirmative defenses contained in the answer.  Once this analysis has been accomplished, the court may only grant the plaintiff's motion if the admitted facts of the complaint would entitle him to judgment as a matter of law, in spite of any asserted affirmative defense.  Where a plaintiff is the moving party, the standard of review is more akin to that applied to a motion for summary judgment.

## ARGUMENT

This Court should deny McGuireWoods' motion because (1) the facts alleged in the Complaint and admitted by the Answer are insufficient to entitle McGuireWoods to a judgment on the pleadings; (2) the injuries alleged in the underlying complaints fall well outside the risks

covered under the clear terms of the applicable policy; and (3) the injuries alleged in the underlying complaints are otherwise excluded by the clear terms of the policy.  As a matter of law, McGuireWoods is not entitled to judgment on the pleadings.  If any judgment on the pleadings is to be entered in this case, it must be entered in favor of Great Northern.

> I.     **Virginia law governing an insurer's duty to defend**

Interpretation of an insurance policy is a question of law for the court.  *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 80, 677 S.E.2d 299, 302 (2009).  Insurance policies are interpreted, like any other contract, "by determining the parties' intent from the words . . . used." *Id.*  Where a term is unambiguous, a court is to "apply its plain meaning as written." *Id.* at 81, 677 S.E.2d at 302.  But if the language "can be understood to have more than one meaning," it is construed "in favor of coverage and against the insurer." *Id.*  Additionally, "[b]ecause insurance policies usually are drafted by insurers, [courts] construe ambiguous policy language purporting to exclude certain occurrences from coverage most strongly against the insurer," and an "insurer must use language that is reasonable, clear and unambiguous." *Id.*

An insurer owes a duty to defend a suit against its insured "whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *VEPCO v. Northbrook Property & Cas. Ins. Co.*, 252 Va. 265, 268, 475 S.E.2d 264, 265 (1996) (quoting *Lerner v. Safeco*, 219 Va. 101, 104, 245 S.E.2d 249, 251 (1978)).  There is no duty to defend, however, "when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983) (emphasis in original).  In deciding whether there is a potential for coverage, "the party seeking coverage bears the ultimate burden of proving by a preponderance of the evidence that it is entitled to coverage, the insurer

bears the burden of proving that an exclusion applies." *Bohreer v. Erie Ins. Group*, 475 F. Supp. 2d 578, 585 (E.D. Va. 2007).

## II.   The facts admitted by the Answer do not entitle McGuireWoods to judgment on the issue of liability

McGuireWoods cannot be granted judgment on the pleadings because the undisputed facts in the pleadings fail to establish its cause of action.   In this breach of contract case, in order to establish liability, McGuireWoods must establish:  (1) that Great Northern owed it a "legally enforceable obligation"; (2) that Great Northern violated or beached that obligation; and (3) damages caused by the breach of the obligation. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009).  Great Northern's Answer denies that McGuireWoods has incurred damages.  The issue of whether McGuireWoods has incurred damages is one of fact that cannot be resolved by the Court.  For the purposes of this motion, the Court must assume that McGuireWoods incurred no damages.  Without any facts to establish that element of its cause of action, there can be no finding of liability and McGuireWoods' motion must be denied.

## III.   Great Northern had no duty to defend because Spencer did not allege a personal injury covered by the policy

Under the policy, Great Northern agrees to provide the following "Advertising and Personal Injury Liability Coverage":

> Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
>
> - imposed by law; or
>
> - assumed in an **insured contract**
>
> for **advertising injury** or **personal injury** to which this coverage applies.
>
> This coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period.

Other than as provided under the Investigation, Defense and Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

Form 80-02-2000, p. 3.

In order for Spencer's alleged injury to be covered, it must fall within the definition of "personal injury" under the terms of the policy.  The policy clearly defines the term "personal injury":

**Personal injury** means injury, other than **bodily injury**, **property damage** or **advertising injury**, caused by an offense of:

A.      false arrest, false detention or other false imprisonment;

B.      malicious prosecution;

C.      wrongful entry into, wrongful eviction of a person from or other violation of a person's rights of private occupancy of a dwelling, premises, or room that such other person occupies, if committed by or on behalf of its landlord, lessor or owner;

D.      electronic, oral, written or other publication of material that:

1.      libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

2.      violates a person's right of privacy; or

E.      discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex.

Form 80-02-2000, p. 30.

Spencer alleged an injury caused by acts of defamation that disparaged his services as an attorney, which falls outside the definition of a covered personal injury.  *Black's Law Dictionary* 538 (9th ed. 2009) defines "disparagement" as follows:

1. A derogatory comparison of one thing with another
2. The act or an instance of castigating or detracting from the reputation of, esp. unfairly or untruthfully

3.  A false and injurious statement that discredits or detracts from the reputation of another's character, property, product, or business
4.  Reproach, disgrace or indignity

*Webster's Third New International Dictionary* 653 (2002) defines "disparagement" as:

1a:  diminution of esteem or standing
2a:  the expression of a low opinion of something

If one thing is clear from Spencer's complaints, it is that the only alleged wrong he suffered was the disparagement of his services as an attorney.  As the amended complaint against Getchell and Allcott states, the defendants intended to destroy Spencer's reputation for their own benefit:

> The complaint against Spencer would be made especially and unnecessarily salacious.  It would not only claim that Spencer had breached the implied contract that a lawyer owes his client, it would accuse him of much, much more.  It would accuse him of general professional incompetence.  It would claim he was too ignorant to try cases or handle appeals.  It would accuse him of rank dishonesty. It would call him a fraud and a sneak.  It would claim he was generally and utterly unethical.  It would also be filed in Wintergreen's name, making it appear falsely that even Spencer's long-time client thought he was to blame.  It was thought that these vicious allegations would make Getchell and the law firm look better by making Spencer look worse, and that they would increase the harm to Spencer and the pressure on Spencer to settle.

Ex. 3, ¶ 41.

And all of the underlying complaints have at their core the underlying defendants' participation in the creation and repeated publications of Wintergreen's insurer's complaint against Spencer, which alleged that: (1) Spencer failed "to provide [Wintergreen] with competent, reasonable and appropriate legal representation it was entitled to"; (2) Spencer failed to meet the deadline for filing the transcript; (3) Spencer failed "to protect [Wintergreen's] rights as required under the applicable rules"; (4) Spencer failed to exercise "the requisite legal knowledge, skill and diligence necessary"; (5) Spencer "accept[ed] representation of [Wintergreen's] legal claims without the necessary legal knowledge and skill"; (6) Spencer

"intentionally and/or deliberately withheld and/or concealed the material fact that the trial transcript was not timely filed and that the appeal was not perfected and preserved"; (7) Spencer "falsely represented that the case was preserved for appeal"; and (8) Spencer intended to mislead Wintergreen and cover up his failure to file the trial transcript.  Ex. 2, ¶¶ 38, 47; Ex. 3, ¶ 55; Ex. 4, ¶ 56.

In addition, every defamation count in the underlying complaints includes the allegation that the defendants' statements "imputed to Spencer unfitness to perform the duties of his employment for profit as an attorney," "imputed to Spencer a want of integrity in the discharge of his employment as an attorney"; and "prejudiced Spencer in his profession."  Ex. 2, ¶¶ 55-57, 66-68, 84-86, 95- 97; Ex. 3, ¶¶ 68-70, 79-81, 89-91, 113, 117, 121; Ex. 4, ¶¶ 80-82, 92-94, 105-07, 117-19, 142, 146, 150, 154.

The disparagement of his services as an attorney is the only type of defamation Spencer alleges.  Spencer does not complain of any statement that does not disparage the services he provides as an attorney.  As a result, the defamation claims in the underlying complaints all fall outside the definition of a "personal injury" covered by the insurance policy.  Additionally, the counts complaining that the underlying defendants conspired to "injure Spencer in his reputation, business and profession" are all grounded on the alleged disparagement of Spencer's services. The duty to defend was not triggered by the defamation claims because there was no potential that Great Northern could be required to provide indemnification.

The injury alleged by Spencer in the abuse of process counts also is not an injury covered by the policy.  The substantive allegations of the abuse of process count against Getchell and Allcott are as follows:

> 97.   Defendants used the [insurer's complaint] as a whip and a club to
> harm Spencer as part of Defendants' and their co-conspirators' public campaign

of defamation and misinformation against Spencer.  They abused the process to cover up the law firm's and Getchell's professional misconduct, to the business and professional reputation of the law firm, to try to eliminate an obstacle to Getchell's ascension to the federal bench and to harm and humiliate Spencer.

98.    Defendants maliciously misused and misapplied the AIG Complaint primarily to accomplish ulterior purposes not lawfully or properly attainable by it.

99.    Defendants took actions not proper in the regular prosecution of the lawsuit, as described above.

Ex. 3.  Identical allegations are found in the complaint against McGuireWoods and Barr.  Ex. 4, ¶¶ 127-29.

As seen above, "abuse of process" is not found in the list of enumerated offenses capable of causing "personal injury" under the policy.  Abuse of process and malicious prosecution are two distinct torts, which have different elements and protect different interests.  An "[a]buse of process involves the wrongful *use* of process *after* it has been issued.  The essential elements of an abuse of process claim are: (1) the existence of an ulterior purpose; and (2) an act in the use of process not proper in the regular prosecution of the proceedings."  *Triangle Auto Auction, Inc. v. Cash*, 238 Va. 183, 184, 380 S.E.2d 649, 650 (1989) (internal quotations and citation omitted) (emphasis in original).   On the other hand, malicious prosecution requires proof of "four essential elements: that the prosecution (1) was malicious, (2) instituted by or with the cooperation of the defendant, (3) without probable cause, and (4) terminated in a manner not unfavorable to the plaintiff."  *Reilly v. Shepherd*, 273 Va. 728, 732, 643 S.E.2d 216, 218 (2007).  Additionally, where a plaintiff alleges malicious prosecution "stemming from civil proceedings the plaintiff must allege and prove arrest of his person, seizure of his property or special injury incurred."  *Ayyildiz v. Kidd*, 220 Va. 1080, 1084, 266 S.E.2d 108, 111 (1980).

The distinction between the two torts was further explained by the Supreme Court of Virginia in *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 369 S.E.2d 857 (1988):

> The distinctive nature of malicious abuse of process lies in the perversion of regularly-issued process to accomplish some ulterior purpose for which the procedure was not intended. A legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process. Process is maliciously abused when it is used oppressively, *e.g.*, as a whip to force the payment of an alleged indebtedness, or as a means of extortion. The gravamen of the tort lies in the abuse or the perversion of the process after it has been issued. Consequently, it is not necessary to allege or prove that the process was maliciously issued.
>
> A kindred, but distinctly different, cause of action lies for malicious prosecution.
>
> \*   \*   \*
>
> Malicious prosecution differs from abuse of process in that malicious prosecution lies for maliciously causing the process to issue, while abuse of process lies for the improper use of process after it has been issued.

*Id.* at 539-40, 369 S.E.2d at 862.

The abuse of process claim is not the same as a malicious prosecution claim, and, therefore, there is no allegation in the underlying complaints of an injury caused by any of the clearly enumerated offenses in the definition of personal injury in the policy. McGuireWoods does not – and cannot – argue that Spencer alleged any injury covered by the policy.

Because the underlying complaints do not allege an injury of a kind covered by the policy, there was no potential that Great Northern would be obligated to provide indemnification. The duty to defend was never triggered, and Great Northern properly denied a defense.

**IV.     Great Northern had no duty to defend because the allegations of the underlying complaints fall within the "Publications with Knowledge of Falsity" exclusion**

The facts and circumstances alleged in the underlying complaints fall squarely within the clear exclusion for "Publications with Knowledge of Falsity." That exclusion states:

This insurance does not apply to . . . **personal injury** arising out of any electronic, oral, written or other publication of content or material by or with the consent of the **insured**:

- with knowledge of its falsity; or

- if a reasonable person in the circumstances of the insured would have known such content or material to be false

Form 80-02-2000, p. 15.

McGuireWoods incorrectly argues that "Great Northern cannot rely on this defense because the allegations in Spencer's Complaints include causes of action alleging that the defamatory statements were negligently made without knowledge of their falsity." McGuireWoods' argument fails for two fundamental reasons.  First, McGuireWoods entirely ignores that the policy clearly states that "This insurance does not apply [where] a reasonable person in the circumstances of the insured would have known such content or material to be false."  Because the exclusion encompasses both statements made with knowledge of falsity *and* statements that a reasonable person would know to be false, all of the allegations of the underlying complaints fall within the exclusion.  Second, the "negligent defamation" counts of the underlying complaints all incorporate by reference all of the substantive facts contained in the paragraphs prior to the alleged causes of action, disposing of any notion that the underlying defendants could have acted without knowledge of the falsity of their statements.

The policy excludes defamatory statements both where the insured knows that the statement is false *and* where a reasonable person would know the statement is false.  The allegations of the underlying complaints all fall within these two clearly defined categories and therefore fall within the exclusion.  The preliminary paragraphs of all the underlying complaints and all of the counts alleging "malicious defamation" abound with clear allegations that the underlying defendants knew that the contents of their communications were false.  The

"negligent defamation" counts of the original complaint against Getchell and Allcott both include the allegation that "Getchell and Allcott knew or should have known that the statements were false. Getchell and Allcott published those statements negligently." Ex. 2, ¶¶ 88, 99. The negligent defamation counts in the two other complaints all contain the same naked, legal conclusion that the defendants "acted carelessly and negligently in the manner alleged." Ex. 3, ¶¶ 114, 118, 122; Ex. 4 ¶¶ 143, 147, 151, 155. These bare conclusory charges, of course, are meaningless since the complaints contain no facts to support them. However, if anything can be inferred from these legal conclusions it is that Spencer again attempts to allege that the defendants "knew or should have known that the statements were false."

It is immaterial that Spencer claimed both intentional and negligent defamation in his underlying suits. And the Seventh Circuit cases McGuireWoods cites in its argument are not on point. Neither case dealt with policy language excluding coverage for defamation claims where the insured reasonably should have known that his statement was false. In *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742 (7th Cir. 2001), the primary insurance policy excluded "injury 'arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity.'" *Id.* at 744. The umbrella policy excluded "intentional or expected injury," and made no mention of statements made with knowledge of falsity. Those policies simply did not contain the language found in McGuireWoods' policy excluding coverage for claims of personal injury where the insured made a statement that he reasonably should have known to be false.

Likewise, *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640 (7th Cir. 2007) neither involves a policy provision excluding coverage for statements made by an insured who reasonably should have known the statements to be false; nor does it involve a

defamation claim.  In that case, the policy language excludes personal or advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured *with knowledge of its falsity*" or "[a]rising out of the *willful violation of a penal statute* or ordinance committed by or with the consent of the insured."  *Id.* at 642.  Unlike McGuireWoods' policy, the exclusionary language analyzed by the Seventh Circuit did not exclude statements the insured reasonably should have known to be false.  Additionally, the underlying plaintiffs "claimed that they were injured by Del Monte's alleged monopoly in the extra-sweet pineapple market," *id.* at 641, "based on allegations that Del Monte knowingly submitted fraudulent patent applications, knowingly sent false letters to competitors regarding its patent rights, and knowingly engaged in fraudulent patent litigation."  *Id.* at 642.  The plaintiffs did not allege that Del Monte defamed anyone.  Rather, they alleged that Del Monte used false statements to corner the pineapple market.

The cases McGuireWoods relies upon provide no guidance here because they do not address what the Seventh Circuit would have decided if the policies had excluded injuries caused by statements that the insured reasonably should have known to be false.

McGuireWoods' argument is further defeated by the fact that all of the preliminary allegations of fact are incorporated by reference into the negligent defamation counts.  These preliminary allegations of fact include all of the allegations of intentional conduct and knowledge of falsity.  The facts, as opposed to conclusions, asserted in the underlying complaints make clear that Spencer's cursory inclusion of "negligent defamation" counts is merely an attempt "to end-run an intentional acts exclusion," and their "mere presence . . . is insufficient" to create a duty to defend.  *Markel Am. Ins. Co. v. Staples*, 2010 U.S. Dist. LEXIS 7148 at *12 (E.D. Va. Jan. 28, 2010) (unreported).

This Court has before it all it needs: the applicable policy provisions and the underlying complaints.    The policy excludes personal injury caused by statements the insured either knew to be false or reasonably should have known to be false.  The underlying complaints state that the defendants either knew their statements were false, or reasonably should have known that their statements were false.   The complained of injury is excluded by the policy.  The underlying claims raised no potential that Great Northern would be required to indemnify McGuireWoods. Great Northern had no duty to defend the underlying claims, and it properly denied a defense.

**IV.    Great Northern had no duty to defend because the allegations of the underlying complaints fall within the "Expected or Intended Injury" exclusion**

Great Northern properly denied a defense because Spencer's claims are all excluded by the "Expected or Intended Injury" exclusion in McGuireWoods' policy.  The policy states:

> This insurance does not apply to . . . **personal injury** arising out of an offense, committed by or on behalf of the **insured**, that:
>
> •    is intended by such **insured**; or
>
> •    would be expected from the standpoint of a reasonable person in the circumstances of such **insured**
>
> to cause injury.

Form 80-02-2000, p. 14.  All of the injuries alleged in Spencer's complaints are injuries the defendants intended to cause.  Any reasonable person in the circumstances of the defendants would have expected the claimed injuries to have occurred.  This exclusion applies to the underlying claims, and Great Northern owed no duty to defend.

McGuireWoods argues in its memorandum that "Great Northern cannot rely on this defense because the allegations in Spencer's Complaints include causes of action alleging that the defamatory statements were negligently, not intentionally made."  In support of its argument,

McGuireWoods relies heavily on *Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238 (4th Cir. 1995). In that case, the complaint in the underlying action alleged that Fuisz, the insured, had defamed "Terex," the underlying plaintiff. In each of the four counts of defamation, Terex alleged that Fuisz "'knew that the statements were false, or published the statements with reckless disregard as to whether they were true or false.'" *Id.* at 241. Terex further alleged that "Fuisz was motivated by actual malice and wrongfully and willfully intended to injure plaintiffs." *Id.*

Fuisz tendered his defense to Selective, and Selective refused to provide a defense solely on the basis of the intentional acts exclusion in Fuisz's policy. *Id.* The intentional acts exclusion stated "that Selective will not provide coverage for 'any act committed by or at the direction of the insured.'" *Id.* at 240. Fuisz tendered his defense to Selective a second time, and Selective again refused to provide a defense and listed a "business exclusion as an additional basis for the denial." *Id.* at 241. Fuisz then filed a declaratory judgment action against Selective in the Eastern District of Virginia. This Court granted Selective's motion for summary judgment on the basis of both exclusions. *Id.* The Fourth Circuit reversed in a 2-1 decision, holding that Selective owed Fuisz a duty to defend. The Court reasoned:

> Notwithstanding Terex's repeated allegations that Fuisz "willfully intended to injure," by also pleading that Fuisz acted with actual malice[1] Terex has left open the possibility of another avenue of recovery if it is unable to establish Fuisz' intent to harm Terex's reputation. If the evidence fails at trial to establish that Fuisz intentionally harmed Terex, the complaint permits Terex nonetheless to prevail on its claims by proving that Fuisz intended to harm, but acted with reckless disregard for the falsity of his statements. Selective concedes that the intentional acts exclusion does not apply to such a claim. Furthermore, where both covered and excluded acts are alleged, the duty to defend attaches.

*Id.* at 244-45.

---

[1] In the sense "actual malice" is used in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) to mean publication with either knowledge of falsity or with reckless indifference to the truth.

McGuireWoods' reliance on *Fuisz* is misplaced.  This case is unlike *Fuisz* because of the language of the exclusion and the allegations of the underlying complaints.  The "Expected or Intended Injury" exclusion in McGuireWoods' policy states:

> This insurance does not apply to . . . **personal injury** arising out of an offense, committed by or on behalf of an **insured**, that:
>
> •        is intended by such injured; or
>
> •        *would be expected from the standpoint of a reasonable person in the circumstances of such insured*:
>
> to cause injury.

Form 80-02-2000, p. 14 (emphasis added).  Unlike in *Fuisz*, this exclusion applies both (1) where the insured intends to cause injury; and (2) where a reasonable person in the insured's circumstances would have expected injury.

Spencer could not have recovered for the claims in his underlying complaints without establishing that the underlying defendants either intended to cause the alleged injuries or that the underlying defendants reasonably should have expected to cause the alleged injuries.  First, Spencer alleged only that the underlying defendants intended to injure him: there is no combination of facts alleged in the underlying complaints that would allow for proof of defamation without simultaneously proving that the underlying defendants actually intended to cause Spencer harm.  Spencer makes clear that his injuries were not caused by mistake or accident.

Second, the alleged defamatory statements are all defamatory *per se* under Virginia law because they impugn Spencer in his profession.  Therefore, injury is to be presumed from the mere publication of those statements.  Even if it were possible for Spencer to have recovered without proving actual intent, because the statements were defamatory *per se*, the exclusion still

applies. The underlying defendants reasonably should have known that their statements would cause harm because they were defamatory *per se*.

Virginia law defines statements that are defamatory *per se* to include "[t]hose which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment," as well as "[t]hose which prejudice such person in his or her profession or trade." *Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632, 665 (1981). As an example of language that is defamatory *per se*, the *Fleming* Court stated, "because an attorney is required to adhere to the disciplinary rules, charging an attorney with unethical conduct is defamatory *per se*. The words themselves must necessarily be damaging to the attorney in his profession." *Id.* at 890, 275 S.E.2d at 636.

As explained earlier in this brief, all of the alleged defamatory statements in the underlying complaints impute to Spencer the unfitness to perform the duties of an attorney, a want of integrity in his discharge of his duties as an attorney, and prejudice him in his profession as an attorney. The statements Spencer attributes to the underlying defendants are all defamatory *per se*, and are deemed to be injurious as a matter of law.

Because the law presumes that the statements alleged in the underlying complaints are always injurious, a reasonable person in the underlying defendants' circumstance only could have expected injury to result from the publication of those statements. Because a reasonable person would have expected injury to have resulted from the statements, the allegations of the underlying complaints fall squarely within the Expected or Intended Injury exclusion. The underlying complaints presented no potential that Great Northern would be required to indemnify the defendants, and there was no duty to defend.

**V.    Great Northern had no duty to defend because the insurance does not apply to damages sustained by former partners of McGuireWoods**

The "Insureds or Affiliates" exclusion in McGuireWoods' policy clearly states, "This insurance does not apply to any damages, loss, cost or expense arising out of any injury or damage sustained by any . . . former . . . partner of any limited liability company, partnership or joint venture in which any **insured** has or had (at any time) any interest."  Form 80-02-2423, p. 1.  Christopher Spencer is a former partner in McGuireWoods.  McGuireWoods acknowledged as much in a letter to Great Northern.  **Exhibit 5**.  Because Spencer is a former partner in McGuireWoods, the Insureds or Affiliates exclusion applies to preclude any potential for coverage, and Great Northern had no duty to defend.

In an effort to avoid this clear and unambiguous exclusion, McGuireWoods argues that Spencer does not allege that he was a partner in McGuireWoods and that the "Eight-Corners Rule" prohibits looking outside the pleading and the policy to determine whether this exclusion applies.  McGuireWoods' argument is inapt because this is not an issue to be resolved by application of the Eight-Corners Rule.

The cases applying Virginia law cited by McGuireWoods stand for the same principle: where the existence of coverage depends on the substance of the underlying claim, a court is to determine whether the factual allegations in the underlying suit create a potential that the insurer may be obligated to pay.

But where the existence of coverage or the applicability of an exclusion are not dependent on the content of the underlying claims, and instead are dependent upon either (1) who is making the claims, or (2) who the claims are made against, it makes no sense to apply the Eight Corners Rule.  The answer will never be found that way.

Here, whether Spencer is a former partner of McGuireWoods is not something that would conceivably be determined as a matter of fact in resolving Spencer's underlying claims.  On the other hand, both McGuireWoods and Great Northern knew from the outset that Spencer is a former partner in McGuireWoods.  The policy clearly excludes claims made by former partners.

McGuireWoods relies heavily on *Admiral Ins. Co. v. G4S Youth Servs.*, 634 F. Supp. 2d 605 (E.D. Va. 2009), but this reliance is misplaced.  In that underlying claim, the plaintiff had sued G4S for allegedly causing the wrongful death of her decedent, an employee of G4S who was shot and killed by her boyfriend on G4S' parking lot.  The underlying claim included a premises liability cause of action.  The policy G4S issued to Admiral included an exclusion for bodily injury to a G4S employee arising out of and in the course of employment or in the performance of duties related to the conduct of G4S' business.  Admiral filed a declaratory judgment action seeking a declaration that it owed no duty to defend.  This Court framed the parties' arguments and stated its holding as follows:

> . . . [Admiral] asserts the Employer's Liability exclusion bars coverage for the claims.  Specifically, [Admiral] contends the Underlying Case can only succeed if [the underlying plaintiff's] injury "arose out of" her employment, a fact that would exclude liability coverage under the Employer's Liability exclusion.  In contrast, [G4S] argues the Employer's Liability exclusion's "arising out of and in the course of employment" language casts the killing of [the decedent] outside of the exclusion.  Further, [G4S] contends the allegations in the Underlying Case, specifically the premises liability claim, is not based upon any employer-employee relationship, and therefore this count clearly falls under the liability policy and dictates that Admiral Insurance owes G4S a duty to defend.  This Court agrees.

*Id.* at 612-13.  In that case the Eight-Corners Rule was applied only to show that the plaintiff could recover from the insured on the premises liability claim.  That claim did not depend on whether the decedent was an employee.  The Court did not apply the Eight Corners Rule to determine whether the decedent was an employee, because everyone knew she worked for G4S.

McGuireWoods also severely misconstrues the Virginia Supreme Court's opinion in *VEPCO v. Northbrook Prop. & Cas. Ins. Co.*, 252 Va. 265, 475 S.E.2d 264 (1996), which stands for exactly the opposite proposition than the one for which it is cited.  At page 20 of its memorandum, McGuireWoods states that the Virginia Supreme Court in *VEPCO* "ultimately held that the underlying suit did trigger the duty to defend because it alleged that the injured party was a 'business invitee' of the insured and did not allege that the injured party was an employee."  That is not a holding found in *VEPCO*.

In that case, the underlying plaintiff, Margaret Laveri, was a courier employed by Commercial Courier.  Commercial Courier had a contract with VEPCO to provide courier services.  Laveri was delivering parcels to VEPCO's office when she fell and injured herself.  When Laveri sued VEPCO, the latter tendered its defense to Northbrook, who denied coverage.  VEPCO successfully defended the suit by arguing that Laveri was its statutory employee under the Virginia Workers' Compensation Act.  VEPCO then sued Northbrook alleging that the latter wrongly refused to provide a defense.  The trial court granted Northbrook's motion for summary judgment on the ground that Laveri was VEPCO's statutory employee and employees' claims were excluded under the policy.

On appeal, the issue before the Virginia Supreme Court was "whether [the underlying plaintiff's] status as a statutory employee of VEPCO for purposes of workers' compensation brought her within the definition of the term 'employee' as used in the coverage exclusion contained in the policy."  *Id.* at 270, 475 S.E.2d at 266.  Because the Act "defines statutory employees for the purpose of applying workers' compensation laws," the Supreme Court held "that the statutory definition [of 'employee'] contained in the Act will not be applied to an

insurance policy unless the policy provides by reference to the specific statute that the statutory definition is intended to be applied." *Id.* at 270-71, 475 S.E.2d at 267.

More significant than the decision itself is *how* the Supreme Court arrived at that decision. The Court's rationale defeats McGuireWoods' argument because the Court did not apply the Eight-Corners Rule to decide whether the employee claims exclusion applied nor did it indicate that the Eight-Corners Rule should be applied under the circumstances. Laveri's complaint alleged that she was a business invitee, not an employee. The Court looked in specific detail at the facts surrounding the relationship between Laveri and her actual employer, Commercial Courier, as well as the relationship between Commercial Courier and VEPCO. There is no hint that these factual details were included in Laveri's complaint, nor is there any reason to assume that a slip-and-fall plaintiff would include such minutiae in a complaint. It is clear from a reading of this opinion that the Supreme Court of Virginia would not apply the Eight-Corners Rule to a determination of whether the claimant is, or was, a partner of the policyholder, much less that the Court would require that the Eight-Corners Rule be applied.

In this breach of contract action, both parties agree that Spencer is a former partner in McGuireWoods. The policy excludes coverage for claims made by former partners. There is no coverage for Spencer's claims, and Great Northern had no duty to defend.

**VI.   Great Northern had no duty to defend because the Legal or Other Professional Services Exclusion applies to preclude the potential for indemnification**

McGuireWoods' policy contains the following exclusion for "Legal or Other Professional Services":

> With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of the rendering of or failure to render any:
>
> •       legal service, advice or instruction; or

- other professional advice or instruction;

regardless of whether or not

- a claim or suit is brought by any client or any other person or organization; or

- such service, advice or instruction is ordinary to any **insured's** profession.

Form 80-02-2423, p. 2.

Spencer's claims arise directly from Getchell and McGuireWoods' alleged failure to timely file the trial transcript in the *Grigg* litigation. Prosecuting an appeal is obviously a legal service. All of the acts attributed to the defendants in the underlying complaints were done to cover up their alleged malpractice and to pin the blame on Spencer. Without Getchell and McGuireWoods' alleged acts of malpractice, there would have been no reason for the scheme to cover up their own wrongdoing and to blame Spencer.

While McGuireWoods may be correct that the exclusion cannot be applied merely because of its status as a law firm, its argument is unavailing because, here, the underlying claims arise directly from Getchell and McGuireWoods' allegedly negligent provision of legal services to its client, Wintergreen. If Getchell and McGuireWoods had timely filed the trial transcript, the appeal would not have been dismissed, the underlying defendants would not have schemed to cover up their wrongdoing by blaming Spencer, and Spencer would never have made his claims. The Legal or Other Professional Services exclusion applies to negate any potential for indemnification. Great Northern owed no duty to defend.

## VII.   Getchell and Allcott are not insureds with respect to the claims made only against them

The policy defines "**insureds**" to include the members and partners of a limited liability partnership, "but they are insureds only with respect to the conduct of" the limited liability

partnership's business.  Form 80-02-2000, p. 6.  Similarly, employees are insureds, but "only for acts within the scope of their employment . . . or while performing duties related to the conduct of" their insured employer's business.  *Id.*  While Getchell may have been a partner, and Allcott may have been an employee, there is not a single allegation in Spencer's original or amended complaints against them that they were conducting McGuireWoods' business or that Allcott was acting within the scope of his employment.

Applying the Eight-Corner's Rule, because there is no allegation that Getchell and Allcott were conducting McGuireWoods' business or that Allcott was acting within the scope of his employment, they are not insureds under the policy.  Thus, the original and amended complaints against them did not create the potential for indemnification and there was no duty to defend.

## CONCLUSION

For all of the foregoing reasons, McGuireWoods' motion for judgment on the pleadings must be denied.  If the Court is to enter a judgment on the pleadings, it must be entered in favor of Great Northern.

Respectfully submitted,

/s/ Jeffrey R. Schmieler
Jeffrey R. Schmieler, #32175
Alan B. Neurick, *pro hac vice*
Lisa N. Walters, #72291
Saunders & Schmieler, P.C.
The Montgomery Center, Suite 1202
8630 Fenton Street
Silver Spring, Maryland 20910
(301) 588-7717
(301) 588-5073 Facsimile
Email: schmielerj@sslawfirm.com
        neuricka@sslawfirm.com
        waltersl@sslawfirm.com