IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

McGUIREWOODS LLP,

        Plaintiff,

v.                                       Civil Action No. 3:10cv354

GREAT NORTHERN INSURANCE COMPANY,

        Defendant.

## PLAINTIFF McGUIREWOODS LLP'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT OF LIABILITY ON THE PLEADINGS

James W. Morris, III (VSB No. 05740)
Matthew D. Green (VSB No. 46913)
Melissa Y. York (VSB No. 77493)
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA  23218
(804) 344-8300 Telephone
(804) 344-8359 Facsimile

*Counsel for Plaintiff McGuireWoods LLP*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ...................................................................................................................1

    I.     The Court Can Hold That Great Northern Had a Duty to Defend
         McGuireWoods in the Underlying Actions. ...........................................................1

    II.    Great Northern Had a Duty to Defend Because Spencer Alleged a
         Personal Injury Covered by the Policy. ................................................................2

         A.     The Policy excludes coverage for the tort of injurious falsehood,
               not the tort of defamation................................................................................4

         B.     "Malicious prosecution" is ambiguous and should be read to
               include "abuse of process."..............................................................................8

    III.   Great Northern Had a Duty to Defend Because the "Publications with
         Knowledge of Falsity" Exclusion Does not Apply...................................................9

    IV.   Great Northern Had a Duty to Defend Because the "Expected or Intended
         Injury" Exclusion Does not Apply........................................................................12

         A.     Spencer could have prevailed without proving that the defendants
               expected or intended to cause injury...........................................................13

          B.     Defamation <u>per se</u> does not obviate the defamation plaintiff's
               burden of proving the requisite intent for defamation. ..............................14

    V.    Great Northern Had a Duty to Defend Because the "Former Employee"
         Exclusion Does not Apply. ..................................................................................15

    VI.   Great Northern Had a Duty to Defend Because the "Professional Services"
         Exclusion Does not Apply. ..................................................................................17

    VII.  Getchell and Allcott are Insureds Under the Policy...............................................18

CONCLUSION................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Align Tech., Inc. v. Fed. Ins. Co.,
  673 F. Supp. 2d 957 (N.D. Cal. 2009) ................................................................................6, 12

Am. Online, Inc. v. St. Paul Mercury Ins. Co.,
  207 F. Supp. 2d 459 (E.D. Va. 2002), aff'd, 347 F.3d 89 (4th Cir. 2003).............................16

Chapin v. Greve,
  787 F. Supp. 557 (E.D. Va. 1992) ..........................................................................................14

Chil-Mil Corp. v. W.T. Grant Co.,
  70 F.R.D. 352 (E.D. Wis. 1976) ...............................................................................................2

Fuisz v. Selective Ins. Co. of Am.,
  61 F.3d 238 (4th Cir. 1995)...............................................................................................12, 14

Harad v. Aetna Cas. and Sur. Co.,
  839 F.2d 979 (3rd Cir. 1988) ...................................................................................................17

Independence News, Inc. v. City of Charlotte,
  568 F.3d 148 (4th Cir. 2009).....................................................................................................2

In re Amica, Inc.,
  130 B.R. 792 (N.D. Ill. 1991) ...................................................................................................2

Koehring Co. v. Am. Mut. Liab. Ins. Co.,
  564 F. Supp. 303 (E.D. Wis. 1983)...........................................................................................8

Levine v. McLeskey,
  881 F. Supp. 1030 (E.D. Va. 1995) ................................................................................... 10-11

Lunsford v. Am. Guar. & Liab. Ins. Co.,
  18 F.3d 653 (9th Cir. 1994) ...................................................................................................8-9

Newport News Ind. v. Dynamic Testing, Inc.,
  130 F. Supp. 2d 745 (E.D. Va. 2001) ........................................................................................2

Novell, Inc. v. Vigilant Ins. Co.,
  No. 2:09-cv-496, 2010 WL 1734771 (D. Utah Apr. 27, 2010) .................................................6

Penn-America Ins. Co. v. Coffey,
       368 F.3d 409 (4th Cir. 2004) ...................................................................... 16-17

Smurfit-Stone Container Enters., Inc. v. Nat'l Interstate Ins. Co.,
       No. 3:08-cv-93, 2008 WL4153762 (E.D. Va. Sept. 5, 2008) .............................................2

Superformance Int'l Inc. v. Hartford Cas. Ins. Co.,
       203 F. Supp. 2d 587 (E.D. Va. 2002) ........................................................... 16

Town Crier, Inc. v. Hume,
       721 F. Supp. 99 (E.D. Va. 1989) ................................................................ 16


**STATE CASES**

Brenner v. Lawyers Title Ins. Co.,
       240 Va. 185, 397 S.E.2d 100 (1990) ............................................................ 17

Brown v. Reed,
       209 Va. 562, 165 S.E.2d 394 (1969) ............................................................ 18

Carwile v. Richmond Newspapers,
       196 Va. 1, 82 S.E.2d 588 (1954) .................................................................. 7

Cent. Sur. & Ins. Corp. v. Elder,
       204 Va. 192, 129 S.E.2d 651 (1993) .............................................................. 7

Conner v. Bragg,
       203 Va. 204, 123 S.E.2d 393 (1962) ............................................................ 18

Fleming v. Moore,
       221 Va. 884, 275 S.E.2d 632 (1981) ..........................................................7, 14

Granite State Ins. Co. v. Bottoms,
       243 Va. 228, 415 S.E.2d 131 (1992) ..........................................................7, 12

Ingles v. Dively,
       246 Va. 244, 435 S.E.2d 641 (1993) ......................................................... 10-11

Johnson v. Ins. Co. v. N. Am.,
       232 Va. 340, 350 S.E.2d 616 (1986) ............................................................ 12

Kensington Assocs. v. West,
       234 Va. 430, 362 S.E.2d 900 (1987) ............................................................ 18

Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.,

252 Va. 265, 475 S.E.2d 264 (1996) ................................................................................ 12-16

## RULES/STATUTES

Fed. R. Civ. P. 12(c) ....................................................................................................2

Fed. R. Civ. P. 56(d) ....................................................................................................2

## OTHER AUTHORITIES

W. Page Keeton et al., Prosser & Keeton on Torts § 121 (5th ed. 1984) ......................................8

Restatement (Second) of Torts § 558 (1977) ..........................................................................5, 13

Restatement (Second) of Torts § 559 (1977) ...........................................................................6

Restatement (Second) of Torts § 580B (1977) ........................................................................10

Restatement (Second) of Torts § 623A (1977) ........................................................................ 4-5

Restatement (Second) of Torts § 624 (1977) ...........................................................................5

Restatement (Second) of Torts § 626 (1977) ...........................................................................5

Restatement (Second) of Torts § 629 (1977) ...........................................................................6

McGuireWoods LLP ("McGuireWoods"), by counsel, submits the following in reply to Defendant Great Northern Insurance Company's ("Great Northern") Brief in Opposition to McGuireWoods' Motion for Judgment of Liability on the Pleadings.

## ARGUMENT

Great Northern sold McGuireWoods a policy in which it agreed to pay "damages" that McGuireWoods would be obligated to pay "by reason of liability" for "publication of material that . . . libels or slanders a person." Form 80-02-2000, at 3, 30. It had the right and duty to defend any "suit," defined as any proceeding "in which damages, to which the insurance applies, are sought," even if what is sought is "false, fraudulent or groundless." Id. at 4, 31. Without question, Spencer's suits sought damages for libel and slander, which he chose to characterize as both "malicious defamation" and "negligent defamation," and his suits were ultimately determined to be "groundless." Great Northern now argues, through contorted constructions of certain definitions and exclusions in the Policy, that McGuireWoods really had no coverage for defamation at all. All of Great Northern's arguments should be rejected, and the Court should enter judgment of liability for McGuireWoods on the pleadings.

### I.     The Court Can Hold That Great Northern Had a Duty to Defend McGuireWoods in the Underlying Actions.

First, Great Northern wrongly argues that the Court cannot rule that it had a duty to defend McGuireWoods in the underlying lawsuits because it contests the damages McGuireWoods incurred. (Great Northern Ins. Co.'s Br. in Opp'n to McGuireWoods LLP's Mot. for J. on the Pleadings 12 (hereinafter "Br. in Opp'n").) McGuireWoods' Motion, however, does not seek judgment for damages on the pleadings. It seeks only judgment of liability on the pleadings. Notwithstanding Great Northern's boilerplate denial that

1

McGuireWoods sustained damages, Great Northern can have no reasonable grounds to believe that McGuireWoods did not sustain any damages.

The facts necessary to enter judgment for McGuireWoods on liability are not in dispute. Great Northern does not contest the existence of the underlying insurance policies or the underlying litigation filed by Christopher Spencer.  The parties disagree as to whether any of various provisions in the underlying policies acts to exclude or "eviscerate" (to use Great Northern's word) coverage.  Resolution of these legal issues involves matters of contract interpretation that can be decided by the Court in McGuireWoods' favor based on the pleadings.

A determination which does not fully resolve the case is allowed under Rule 12(c). Partial judgment on the pleadings may be granted pursuant to Rule 12(c) in the same way that partial summary judgment may be granted pursuant to Rule 56(d).  In re Amica, Inc., 130 B.R. 792, 796 (N.D. Ill. 1991).  The same principles should be applied in both instances.  Chi-Mil Corp. v. W.T. Grant Co., 70 F.R.D. 352, 357-58 (E.D. Wis. 1976).  The Fourth Circuit has implicitly accepted partial judgment on the pleadings.  See, e.g., Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009) (outlining standard of review for partial judgment on the pleadings); accord Smurfit-Stone Container Enters., Inc. v. National Interstate Ins., No. 3:08-cv-93, 2008 WL 4153762, at *4 (E.D. Va. Sept. 5, 2008) (deciding issues on Rule 12(c) motions in insurance dispute); Newport News Ind. v. Dynamic Testing, Inc., 130 F. Supp. 2d 745, 748-49 (E.D. Va. 2001) (deciding one claim as to one defendant).

## II.      Great Northern Had a Duty to Defend Because Spencer Alleged a Personal Injury Covered by the Policy.

The Great Northern Policy covers personal injury, which is defined as:

[I]njury, other than **bodily injury, property damage** or **advertising injury**, caused by an offense of:

* * *

B.      malicious prosecution;

* * *

D.      electronic, oral, written or other publication of material that:

1.      libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

2.      violates a person's right to privacy.

Form 80-02-2000, at 30 (emphasis in original).

In its Brief in Opposition, Great Northern, for the first time, argues that Spencer's

Complaints did not allege a personal injury covered by the Policy.  (Br. in Opp'n 12-17.)  In fact,

in its denial of coverage letter, Great Northern specifically admitted:

> While the claims of both defamation and malicious prosecution <u>do meet the</u> <u>policy definition of Personal Injury</u>, we must look at the context of the allegations in conjunction with the endorsements and exclusions which form a part of the policy in order to determine if there is a duty to defend or indemnify any or all of the defendants.

Letter from Vivian E. Harrington, Casualty Litigation Examiner, to Alexander H. Slaughter,

McGuireWoods (Dec. 23, 2008) (attached as Ex. A to Answer) (emphasis added).

McGuireWoods, in turn, addressed Great Northern's acknowledgment that the claims were

within the scope of the Policy's coverage:

> You point out correctly, on page 7 of your letter, that "the claims of both defamation and malicious prosecution <u>do meet the policy definition of Personal Injury</u> . . . ."  Nonetheless, you deny coverage, including your Company's duty to defend, on the grounds that the controversy arose in the context of litigation.

Letter from Alexander H. Slaughter, McGuireWoods, to Vivian E. Harrington (Feb. 13, 2009)

(attached as Ex. 5 to Br. in Opp'n) (emphasis added).

It is at a minimum disingenuous for Great Northern, twenty months after assuring

McGuireWoods that the claims in the underlying complaints "do meet the policy definition of

Personal Injury," now to attempt to justify its denial of the duty to defend on the basis that the

3

complaints were <u>not</u> within the risk covered by the policy.  These diametrically conflicting interpretations of the policy is dramatic proof of ambiguity.

### A.    The Policy excludes coverage for the tort of injurious falsehood, not the tort of defamation.

The Policy grants coverage for claims for injury caused by "material that . . . libels or slanders a person or organization," but then immediately adds the parenthetical phrase "which does not include disparagement of goods, products, property or services."  Great Northern has argued that this means defamation of a person that disparages the person's services is outside the definition of personal injury.  (Br. in Opp'n 13.)

The correct interpretation of the parenthetical is that it does not apply to the torts of libel and slander at all.  Instead, it is excluding from coverage an entirely separate category of torts described as "disparagement of goods, products, property or services."  Accord, Restatement (Second) of Torts.  "Disparagement of goods, products, property or services," is commonly referred to as "injurious falsehood."  <u>See</u> Restatement (Second) of Torts § 623A (1977).

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if:
>
> (a)    he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
>
> (b)    he knows that the statement is false or acts in reckless disregard of its truth or falsity.

<u>Id.</u>  In contrast, an action for defamation requires:

> (a)    a false and defamatory statement concerning another;
>
> (b)    an unprivileged publication to a third party;
>
> (c)    fault amounting at least to negligence on the part of the publisher; and

> (d)     either actionability of the statement irrespective of special harm or the
> existence of special harm by the publication.

Restatement (Second) of Torts § 558.  While an action for injurious falsehood is "similar in

many respects to the action for defamation . . . the two torts protect different interests and have

entirely different origins in history."  Restatement (Second) of Torts § 623A, cmt. g.

> The action for defamation is to protect the personal reputation of the injured
> party; it arose out of the old actions for libel and slander.  The action for injurious
> falsehood is to protect economic interests of the injured party against pecuniary
> loss; it arose as an action on the case for the special damage resulting from
> publication.

Id.

The Restatement further explains that injurious falsehood includes "a false statement

disparaging another's property rights in land, chattels or intangible things," and "matter

disparaging the quality of another's land, chattels or intangible things."  Restatement (Second) of

Torts §§ 624, 626.  These causes of action are respectively referred to as "slander of title" and

"trade libel."  See id. at cmt. a.  "Slander of title" and "trade libel" differ from defamation in at

least three important respects.  First, proof of special harm is required in all cases of slander of

title and trade libel.  Id. at §§ 624 cmt. a, 626 cmt. b.  Second, there must be proof of a greater

amount of fault than negligence on the part of the defendant regarding the falsity of the statement

in a case of slander of title or trade libel.  Id.  Finally, disparagement of property or quality may,

in a proper case, be enjoined because of the economic interest involved, whereas defamation

normally cannot.  Id.

Thus, the parenthetical in the Policy means, at most, that liability for injurious

falsehoods, such as slander of title and trade libel, is not covered unless the disparagement also

rises to the level of defamation and injures the reputation of a person or organization.  A

"disparaging" statement does not necessarily injure a person or organization in his or its

reputation and a "disparaging" statement is not necessarily a "defamatory" statement.  A

"disparaging" statement is one that "cast[s] doubt upon the quality of another's land, chattels or

intangible things, or upon the existence or extent of his property in them."  Restatement (Second)

of Torts § 629.  In contrast, a "defamatory" statement is one that "tends so to harm the reputation

of another as to lower him in the estimation of the community or to deter third persons from

associating or dealing with him."  Restatement (Second) of Torts § 559.  Therefore, the

parenthetical on which Great Northern relies does <u>not</u> exclude coverage for certain categories of

defamation at all; rather it is a clarification that, although Great Northern is providing coverage

for defamation, it is not providing coverage for injurious falsehoods such as slander of title and

trade libel.

    The court in <u>Novell, Inc. v. Vigilant Insurance Co.</u>, No. 2:09-cv-496, 2010 WL 1734771,

at *4-8 (D. Utah Apr. 27, 2010), discussed the difference between the tort of defamation and the

tort of injurious falsehood in construing the exact same parenthetical phrase that is at issue here.

The court held that the parenthetical applied only to claims for injurious falsehood, e.g., slander

of title and the like, not to claims for defamation.  <u>Id.</u> at *4.  The court held for the insurer,

however, because the complaint alleged only slander of title, not defamation.  <u>Id.</u> at 6, 8; <u>see</u>

<u>also</u>, <u>Align Tech., Inc. v. Fed. Ins. Co.</u>, 673 F. Supp. 2d 957 (N.D. Cal. 2009) (finding a duty to

defend under identical policy language where the underlying complaint did allege defamation).

The court stated "there are simply no allegations in the Complaint that [the insured] made any

statements that could be construed as slandering or libeling [the plaintiff]."  <u>Novell</u>, 2010 WL

1734771, at *6.  Here, of course, Great Northern does not contest that Spencer's complaints

alleged defamation.

It is true that the parenthetical refers to disparagement of "services," as well as goods, products, and property, and that the tort of injurious falsehood normally applies to falsehoods about property rather than services.  The inclusion of word "services" in the parenthetical, however, cannot mean that the policy does not cover defamation of a person if the defamation involves falsehoods about a person's services.  Indeed, statements that a person is unfit to perform his employment or that prejudice a person in his profession or trade are perhaps the most common examples of defamation per se.  See e.g., Fleming v. Moore, 221 Va. 884, 889, 275 S.E.2d 632, 635-36 (1981); Carwile v. Richmond Newspapers, 196 Va. 1, 7-8, 82 S.E.2d 588, 591-92 (1954).  If Great Northern had intended to exclude from its defamation coverage such common, everyday examples of the tort, it needed to do so in clear, unambiguous language, not through a parenthetic referring to injurious falsehoods such as slander of title and trade libel. Any ambiguity in this regard must be resolved in favor of McGuireWoods.

If an insurance policy is "susceptible to two constructions," one of which would effectuate coverage and the other of which would not, "it is to be construed liberally in favor of the insured and strictly against the insurer." Cent. Sur. & Ins. Corp. v. Elder, 204 Va. 192, 198, 129 S.E.2d 651, 655 (1993) (internal citation omitted).

> Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies.  Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous.  An ambiguity, if one exists, must be found on the face of the policy.  And, language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time.  Finally, doubtful ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it.

Granite State Ins. Co. v. Bottoms, 243 Va. 228, 233-34, 415 S.E.2d 131, 134 (1992).

As Spencer's Complaints alleged the tort of defamation and not the tort of injurious falsehood, the underlying Complaints allege a claim within the Policy's definition of personal injury.

### B.    "Malicious prosecution" is ambiguous and should be read to include "abuse of process."

Great Northern correctly notes that "malicious prosecution" and "abuse of process" are separate torts in Virginia and that the Great Northern Policy does not specifically define "personal injury" to include "abuse of process." (Br. in Opp'n 15-17.) Several courts have held, however, that "malicious prosecution" as used in an insurance policy "is ambiguous because it is not defined in the policy." Lunsford v. Am. Guar. & Liab. Ins. Co., 18 F.3d 653, 654 (9th Cir. 1994). "[T]he distinction between malicious prosecution and abuse of process is 'at very best unclear.' Even the distinction between the two terms as they are understood by lawyers and judges is less than clear. Id. at 655 (quoting Koehring Co. v. Am. Mut. Liab. Ins. Co., 564 F. Supp. 303, 311 (E.D. Wis. 1983)). "[T]he two torts have the common element of an improper purpose in the use of legal process and there are many cases in which [the two torts] overlap and either will lie, such as . . . any unjustified criminal prosecution or civil action in which legal process issued for an end other than that of the proceeding itself." Id. (quoting W. Page Keeton et al., Prosser & Keeton on Torts § 121, at 897-98 (5th ed. 1984) (alterations and emphasis in original). The Ninth Circuit concluded that the term "malicious prosecution" as used in the policy was ambiguous and thus resolved the issue in favor of coverage. In so holding, the court noted:

> There is no reason, given the overlap between malicious prosecution and abuse of process (particularly in the eyes of those untrained in the law), why persons who purchase insurance covering the cost of defending against the one claim would not also expect the contract to cover the cost of defending against the other.

Id. at 656.

Evidence of this ambiguity appears even in the present case, as both Great Northern and McGuireWoods, both experts in such matters, initially referred to the abuse of process claim as a claim for malicious prosecution.  See Letter from Vivian E. Harrington to Alexander H. Slaughter (Dec. 23, 2008) supra p. 3; Letter from Alexander H. Slaughter to Vivian E. Harrington (Feb. 13, 2009) supra p. 3. Therefore, "malicious prosecution" in the definition of personal injury should be deemed ambiguous and interpreted in a manner to provide coverage for the abuse of process claims.

### III.  Great Northern Had a Duty to Defend Because the "Publications with Knowledge of Falsity" Exclusion Does not Apply.

Great Northern argues that it did not have a duty to defend McGuireWoods because of the "Publications with Knowledge of Falsity" exclusion.

> This insurance does not apply to **advertising injury** or **personal injury** arising out of any electronic, oral, written or other publication of content or material by or with the consent of the insured:
>
> ·      with knowledge of its falsity; or
>
> ·      if a reasonable person in the circumstances of the **insured** would have known such content or material to be false.

Form 80-02-2000, at 15 (emphasis in original).  Great Northern wrongly asserts that the underlying complaints fall within this exclusion because they allege "malicious defamation"— the defendants knew the contents of their alleged statements were false—and "negligent defamation," which Great Northern interprets as meaning that the defendants "knew or should have known that the statements were false."  (Br. in Opp'n 18-19.)

While the First Complaint alleged that "Getchell and Allcott knew or should have known that the statements were false," (1st Compl. ¶¶ 88, 99), that does not mean that "a reasonable

9

person in the circumstances of the insured <u>would</u> have known such content or material to be false," Form 80-02-2000, at 15 (emphasis added).  There is a fundamental difference between the terms "would" and "should" and the two cannot be used interchangeably as Great Northern attempts to do.  (<u>See</u> Br. in Opp'n 18-21.)  Additionally, the Amended First Complaint and the Second Complaint contained no such allegations, but alleged that the defendants "acted carelessly and negligently" and showed "reckless and wanton disregard of Spencer's rights." (Am. 1st Compl. ¶¶ 114-15, 118-19, 122-23; 2d Compl. ¶¶ 143-44, 147-48, 151-52, 155-56.)

In Virginia, Spencer—as a private plaintiff as opposed to a public figure—could have prevailed on his defamation claim if he established either (i) that the defendants knew that the statements were false, or (ii) that the defendants, believing the statements to be true, lacked a reasonable basis for such belief, or (iii) that the defendants acted negligently in failing to ascertain the truth.  <u>Ingles v. Dively</u>, 246 Va. 244, 251, 435 S.E.2d 641, 645 (1993); <u>Levine v. McLeskey</u>, 881 F. Supp. 1030, 1048 (E.D. Va. 1995); <u>see also</u> Restatement (Second) of Torts § 580B (requiring a private plaintiff to establish that the defendant either knows that the statement is false **and** knows that the statement is defamatory, or acts "in reckless disregard of these matters" or acts "negligently in failing to ascertain these matters").  The concept set forth in the "Publication with Knowledge of Falsity" exclusion of whether a "reasonable person . . . would have known such content or material to be false" does not exist in Virginia defamation law, and to our knowledge, does not exist in the defamation law of any State.  Thus, Spencer could have prevailed on his defamation claim without regard to whether a reasonable person "would have known" that the statements were false.

Whatever the meaning of the "would have known" concept, it is different from the Virginia requirement that Spencer establish that McGuireWoods "knew the statements were

false, or believing them to be true, either lacked reasonable grounds for such belief or acted negligently in failing to ascertain the truth."  See Ingles, 246 Va. at 251, 435 S.E.2d at 645; Levine, 881 F. Supp. at 1048.  "Would have known" is not the same thing as "should have known," and neither "would have known" nor "should have known" is the same as lack of reasonable grounds for belief.

McGuireWoods' position in the Spencer litigation was that its statements were neither false nor defamatory.  The court ultimately dismissed both of Spencer's cases on the grounds that the statements were not defamatory.  Whether the statements were false, or whether McGuireWoods knew they were false, lacked a reasonable ground for belief that they were true, or acted negligently in ascertaining the truth, were questions never reached by the court.  The suits were determined to be without merit, but because they alleged defamation, Great Northern had a duty to defend "even if such suit is false, fraudulent, or groundless."  Form 80-02-2000, at 4.

Great Northern's argument that the "Publication with Knowledge of Falsity" exclusion absolved it of the duty to defend is equivalent to an argument that there is no conceivable circumstance under which it would have a duty to defend a defamation claim.  According to Great Northern, the first prong of the exclusion ("with knowledge of falsity") excluded claims for malicious defamation, and the second prong (reasonable person "would have known" that the statements were false) excluded claims for negligent defamation.  This would exclude the entire universe of defamation claims, as there are none, and can be none, that are not based, as least in part, on either malice or negligence.  According to Great Northern, even though it promised to cover libel and slander in the definition of "Personal Injury," (and pocketed a handsome

premium for such "protection"), it took all of that coverage away in the exclusion for "Publication with Knowledge of Falsity."

Courts do not allow insurers to get away with such disingenuous shenanigans. Exclusionary language in an insurance policy is to be construed most strongly against the insurer, and the burden is upon the insurer to prove that an exclusion applies.  Johnson v. Ins. Co. of N. Am., 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986).  This is true whether the insurer is asserting the exclusion to deny liability for payment or to avoid its duty to defend the insured. Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 252 Va. 265, 270, 475 S.E.2d 264, 266 (1996).   Accordingly, for each exclusion on which it relies, Great Northern bears the burden of showing that the policy clearly intended for the exclusion to apply in the context of the lawsuits Christopher Spencer filed.

In Fuisz v. Selective Insurance Co. of America, 61 F.3d 238 (4th Cir. 1995), the Fourth Circuit noted that, if an exclusion was interpreted to eliminate coverage for injuries arising from all defamation claims, the exclusion would swallow the policy coverage for defamation, permitting the insurer to "give with the right hand and then take away with the left," all the while banking the premium.  To the same effect is Align Technology, Inc. v. Federal Insurance Co., 673 F. Supp. 2d 957, 971-72 (N.D. Cal. 2009).  The court refused to interpret an intellectual property exclusion to "eviscerate coverage" for defamation and unfair competition.  Id.  Under the cannons of insurance policy interpretation, the ambiguity in the Policy must be resolved in favor of providing coverage.  See Bottoms, 243 Va. at 233-34, 415 S.E.2d at 134.

### IV.   Great Northern Had a Duty to Defend Because the "Expected or Intended Injury" Exclusion Does not Apply.

Great Northern argues that it did not have a duty to defend because the claims in the underlying complaints are excluded by the "Expected or Intended Injury" exclusion.

This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense committed by or on behalf of the **insured**, that:

·        is intended by such **insured**; or

·        would be expected from the standpoint of a reasonable person in the circumstances of such insured;

to cause injury.

Form 80-02-2000, at 14 (emphasis in original).  Intent to cause injury is not an element of defamation, therefore the "Expected or Intended Injury" exclusion does not apply to exclude coverage for Spencer's complaints.

> **A.        Spencer could have prevailed without proving that the defendants expected or intended to cause injury.**

Great Northern, without authority, baldly states that "[a]ll of the injuries alleged in Spencer's complaints are injuries the defendants intended to cause.  Any reasonable person in the circumstances of the defendants would have expected the claimed injuries to have occurred." (Br. in Opp'n 21.)  Great Northern further argues that "Spencer could not have recovered for the claims in his underlying complaints without establishing that the underlying defendants either intended to cause the alleged injuries or that the underlying defendants reasonably should have expected to cause the alleged injuries."  Again, this argument is stated summarily without legal support and wholly ignores the fact that intent to cause harm is not required to prove defamation. See Restatement (Second) of Torts § 558 (identifying the elements of a defamation claim).

While Spencer did allege in his counts of malicious defamation that the defendants intended to injure him, he also alleged that the defendants acted carelessly and negligently, resulting in negligent defamation.  Because Spencer could have prevailed at trial on his theory of negligent defamation without proving that the defendants intended, or that a reasonable person in

13

the circumstances of the defendants would have expected, to cause injury, the "Expected or Intended Injury" exclusion is inapplicable.  See Fuisz, 61 F.3d at 245.

### B. Defamation per se does not obviate the defamation plaintiff's burden of proving the requisite intent for defamation.

Great Northern argues that because the underlying complaints alleged defamation per se, the defendants "reasonably should have known that their statements would cause harm."  (Br. in Opp'n 24.)  Not only does this assertion use the wrong standard (should v. would), it relies upon entirely faulty logic.

In Virginia, four categories of defamatory statements are considered actionable per se:

(1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.

(2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.

(3) Those which impute to a person unfitness to perform the duties of an office or employment for profit, or want of integrity in the discharge of the duties of such an office or employment.

(4) Those which prejudice such person in his or her profession or trade.

Fleming v. Moore, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981).  Statements which constitute defamation per se are actionable without proof of special damages.  Id. at 889-90, 275 S.E.2d at 636.  While a defamation plaintiff would ordinarily have to prove: "(1) publication about the plaintiff, (2) an actionable statement, and (3) the requisite intent," plus causation and damages, Chapin v. Greve, 787 F. Supp. 557, 562 (E.D. Va. 1992), proving defamation per se obviates the plaintiff's burden to prove damages.  It does not, however, obviate the burden to prove any other element of defamation.

14

Therefore, Great Northern's conclusion that "[b]ecause the law presumes that the statements alleged in the underlying complaints are always injurious, a reasonable person in the underlying defendants' circumstances only could have expected injury to result from the publication of those statements," is wrong.  Not only is this conclusion without legal support, it completely misconstrues the effect of proving defamation per se.  While a defamation plaintiff who proves defamation per se is presumed to have been injured and incurred damages, it is not presumed that the defamation defendant acted with any level of intent.  Allegations of defamation per se, therefore, do not indicate that a reasonable person in the circumstances of the insured would have expected the statements to cause injury.  In fact, it was ruled that they were not defamatory at all.  Accordingly, Great Northern has not met its burden of showing that the Policy clearly intended for "Expected or Intended Injury" exclusion to apply to the underlying lawsuits.

**V.      Great Northern Had a Duty to Defend Because the "Former Employee" Exclusion Does not Apply.**

Great Northern wrongly argues that the endorsement entitled "*Exclusions Insureds or Affiliates/Legal or Other Professional Services*," Form 80-02-2423, acts to preclude coverage under the Policy, based on its incorrect assertion that Christopher Spencer is a former partner of McGuireWoods LLP.  In support of this position, Great Northern, once again citing no authority, baldly states that, "where the existence of coverage or the applicability of an exclusion are not dependent on the content of the underlying claims, and instead dependent upon either (1) who is making the claims, or (2) who the claims are made against, it makes no sense to apply the Eight Corners Rule."  (Br. in Opp'n 25.)  This is a blanket misstatement of the applicable law.

Despite Great Northern's assertion, the issue before the Court is whether Great Northern had a duty to defend McGuireWoods in the underlying litigation, not whether there was a duty to

indemnify or provide coverage to McGuireWoods for any judgment Spencer may have recovered in the lawsuits.  Courts applying Virginia law have repeatedly and consistently held that determination of the insurer's duty to defend is governed by the "eight-corners rule," requiring review of "(1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." Am. Online, Inc. v. St. Paul Mercury Ins. Co., 207 F. Supp. 2d 459, 465 (E.D. Va. 2002) (citing Town Crier, Inc. v. Hume, 721 F. Supp. 99, 102 (E.D. Va. 1989)), aff'd, 347 F.3d 89 (4th Cir. 2003).

Great Northern relies on Virginia Electric & Power Co. v. Northbrook Property & Casualty Insurance Co., 252 Va. 265, 267, 475 S.E.2d 264, 265 (1996), a case where the Supreme Court of Virginia determined that the duty to defend did exist in an insurance coverage dispute.  Great Northern argues that VEPCO illustrates the determination of the duty to defend without application of the "eight-corners" rule.  (Br. in Opp'n 28.)  Despite Great Northern's argument, VEPCO does not support the position that determination of the duty to defend is made without use of the "eight-corners" rule.  While VEPCO does not cite the "eight-corners" rule by name, the case clearly articulates the rule.  "[T]o determine [the insurer's] obligation to defend in this particular case, we are concerned exclusively with the risks covered by the express provisions of the policy and the allegation of [the underlying] motion for judgment." VEPCO, 252 Va. at 269, 475 S.E.2d at 266.  Indeed a number of subsequent decisions have cited VEPCO for the proposition that an insurer's duty to defend arises, "whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risks covered by the policy." Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 413 (4th Cir. 2004); Am. Online, Inc. v. St. Paul Mercury Ins. Co., 207 F. Supp. 2d 459, 465 (E.D. Va. 2002); Superformance Int'l, Inc. v. Hartford Cas. Ins. Co., 203 F. Supp. 2d 587, 592 (E.D. Va. 2002).

In <u>Coffey</u>, the Fourth Circuit, relying in part on <u>VEPCO</u>, articulated the process by which the existence of the duty to defend is determined.  The <u>Coffey</u> Court found that "[u]nder Virginia law, an insurer's duty to defend arises whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." <u>Coffey</u>, 368 F.3d at 413 (quoting <u>Brenner v. Lawyers Title Ins. Corp.</u>, 240 Va. 185, 397 S.E.2d 100, 102 (1990)).  As the Court further noted, "the duty-to-defend question . . . [does] not require the district court to resolve factual questions at all.  It need only decide such coverage by comparing what [the plaintiff] *has alleged* in the state court action with the language of the [provider's] insurance policy." <u>Id.</u> (emphasis in original).

Because the underlying Complaints here do not contain any allegation of, or even a reference to, an employment or partnership relationship between Spencer and McGuireWoods, this issue is ripe for a Rule 12(c) resolution, and this Court should find as a matter of law that Great Northern has not met its burden of establishing that the "Former Employee" exclusion applies to Spencer's lawsuits.

**VI.    <u>Great Northern Had a Duty to Defend Because the "Professional Services"<br>Exclusion Does not Apply.</u>**

Despite initially denying a duty to defend based upon the "Professional Services" exclusion in the Policy, (<u>see</u> Ex. A to Answer), Great Northern devotes only two brief paragraphs to this exclusion in its Brief.  Great Northern fails to cite or discuss <u>any</u> case law regarding this exclusion and has not met its burden of showing that this exclusion applies here.  Clearly, this exclusion is inapplicable because the underlying allegations do <u>not</u> contend that the defamatory statements were made while rendering legal advice to, or advocating on behalf of, clients who had specifically retained McGuireWoods and its partners to perform those functions.  <u>Harad v. Aetna Cas. & Sur. Co.</u>, 839 F.2d 979, 983 (3rd Cir. 1988).

### VII.   Getchell and Allcott are Insureds Under the Policy.

After first arguing earlier in its Brief that the "eight-corners" rule does not apply to a determination of whether there is a duty to defend in relation to the "Former Employee" exclusion, Great Northern asserts that the rule should be invoked to preclude coverage for Getchell and Allcott based on the Policy definition of "insured."  Likewise, after its earlier argument that "the underlying claims arise directly from Getchell and McGuireWoods' allegedly negligent provision of legal services to its client," Great Northern then argues that there is no allegation that Getchell or Allcott, "were conducting McGuireWoods business."  (Br. in Opp'n 29-30.)  These positions are without merit.

Under Virginia law, an act is within the "course of employment," where it occurs during the period of employment, at a place where the employee is reasonably expected to be, and while the employee is reasonably fulfilling the duties of his employment or an act reasonably incidental thereto.  Brown v. Reed, 209 Va. 562, 565-66, 165 S.E.2d 394, 397 (1969); Conner v. Bragg, 203 Va. 204, 208, 123 S.E.2d 393, 396 (1962).  An act is within the scope of employment if it was expressly or impliedly directed by the employer, or is naturally incident to the business, and it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, "and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his account."  Kensington Assocs. v. West, 234 Va. 430, 432, 362 S.E.2d 900, 901 (1987).

Christopher Spencer's allegations in the underlying litigation against Getchell and Allcott clearly establish that their acts were aimed at furthering the interests of McGuireWoods and were not wholly for an independent and solely personal motive.  Spencer alleged that the acts were

made to, "shift the blame [for the <u>Grigg</u> matter] away from Getchell and his firm."  (1st Compl. ¶

6).  Spencer alleged that the acts were made while McGuireWoods was dealing with allegations

of malpractice against it and "was attempting to minimize the damage those claims" would have

on it.  (<u>Id.</u> at ¶ 26).   Spencer alleged that the acts were made to, "minimize any further damage

to the LLP's [McGuireWoods'] reputation from the dismissal of the <u>Grigg</u> appeal."  (<u>Id.</u> at ¶ 32).

Spencer alleged that the acts were made to accomplish the goals of McGuireWoods.  (<u>Id.</u> at ¶

34).  Because these alleged acts of Getchell and Allcott were made, at least in part, to promote

the interest of McGuireWoods, they clearly occurred within the scope of their employment and

while performing duties related to the conduct of McGuireWoods' business.  Great Northern

cannot rely on the definition of "insureds" to deny a duty to defend Getchell or Allcott.

## <u>CONCLUSION</u>

For the foregoing reasons, McGuireWoods, LLP, respectfully requests that the Court

grant its Motion for Judgment of Liability on the Pleadings and hold that Great Northern had a

duty to defend McGuireWoods, LLP, in the underlying legal actions filed by Christopher

Spencer, Esq.


McGUIREWOODS LLP

   __/s/ James W. Morris, III_____
James W. Morris, III
Virginia State Bar No. 05740
Matthew D. Green
Virginia State Bar No. 46913
Melissa Y. York
Virginia State Bar No. 77493
Attorneys for McGuireWoods LLP
Morris & Morris, P.C.
Post Office Box 30
Richmond, Virginia  23218-0030
(804) 344-8300 Telephone

(804) 344-8359 Facsimile
jmorris@morrismorris.com
mgreen@morrismorris.com
myork@morrismorris.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send a notification of such filing (NEF) to the following:

Jeffrey R. Schmieler
Virginia State Bar No.: 32175
Alan B. Neurick *(Pro hac vice)*
Lisa N. Walters
Virginia State Bar No.: 72291
Saunders & Schmieler, P.C.
The Montgomery Center
8630 Fenton Street, Suite 1202
Silver Spring, Maryland 20910
Email: schmielerj@sslawfirm.com
Email: neuricka@sslawfirm.com
Email: waltersl@sslawfirm.com
Telephone: (301) 588-7717
Facsimile: (301) 588-5073
*Counsel for Defendant*

/s/ James W. Morris, III
James W. Morris, III
Virginia State Bar No. 05740
Matthew D. Green
Virginia State Bar No. 46913
Melissa Y. York
Virginia State Bar No. 77493
Attorneys for McGuireWoods LLP
Morris & Morris, P.C.
Post Office Box 30
Richmond, Virginia  23218-0030
(804) 344-8300 Telephone
(804) 344-8359 Facsimile
jmorris@morrismorris.com
mgreen@morrismorris.com
myork@morrismorris.com