**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **McGUIREWOODS LLP** | * | |
| Plaintiff | * | |
| **v.** | * | **Civil Action No.: 3:10cv354** |
| **GREAT NORTHERN INSURANCE COMPANY** | * | |
| | * | |
| Defendant | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S MOTION FOR
PROTECTIVE ORDER REGARDING PLAINTIFF McGUIREWOODS LLP'S
NOTICES OF DEPOSITION**
_____

Defendant Great Northern Insurance Company ("Great Northern"), by and through its

attorneys Jeffrey R. Schmieler, Alan B. Neurick, Lisa N. Walters, Samuel T. Wolf and Saunders

& Schmieler, P.C., moves for entry of a protective order pursuant to Fed. R. Civ. P. 26(c) that (1)

specifies that McGuireWoods LLP's ("McGuireWoods") noted depositions[1] of Great Northern

be conducted at a later date, after determining the availability of counsel for Great Northern,

proper service of subpoenas on the deponents, and upon "reasonable notice" as required by Fed.

R. Civ. P. 30(b)(1) and E.D. Va. Local Civ. R. 30(H); and (2) limits the scope of the depositions

to only those matters that are relevant to the claim or defense of any party, and that are

reasonably calculated to lead to the discovery of admissible evidence.

---

[1]     Great Northern objects to the notices of deposition issued by McGuireWoods for a corporate designee of Great Northern, Thomas P. Olson, Donald J. Sonlin, and Vivian E. Harrington.

The reasons and authority supporting this motion are set forth in Great Northern's contemporaneously filed Brief in Support of Defendant Great Northern Insurance Company's Motion for Protective Order Regarding Plaintiff McGuireWoods LLP's Notices of Deposition, which is incorporated and adopted by this motion as if fully set forth herein.

Respectfully submitted,

/s/ Jeffrey R. Schmieler
Jeffrey R. Schmieler (VSB No. 32175)
Alan B. Neurick (*pro hac vice*)
Lisa N. Walters (VSB No. 72291)
Samuel T. Wolf (*pro hac vice*)
*Saunders & Schmieler, P.C.*
The Montgomery Center, Suite 1202
8630 Fenton Street
Silver Spring, Maryland 20910
(301) 588-7717
(301) 588-5073 Facsimile
schmielerj@sslawfirm.com
neuricka@sslawfirm.com
waltersl@sslawfirm.com
wolfs@sslawfirm.com

*Counsel for Defendant*
*Great Northern Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2010, I electronically filed the foregoing motion, along with the accompanying brief in support thereof and a proposed order, with the Clerk of Court using the CM/ECF System, which will send a notification of electronic filing to the following:

James W. Morris, III (VSB No. 05740)
Matthew D. Green (VSB No. 46913)
Melissa Y. York (VSB No. 77493)
*Morris & Morris, P.C.*
Post Office Box 30
Richmond, Virginia 23218-0030
(804) 344-8300
(804) 344-8359 Facsimile
jmorris@morrismorris.com
mgreen@morrismorris.com
myork@morrismorris.com

*Counsel for Plaintiff McGuireWoods LLP*

/s/ Jeffrey R. Schmieler
Jeffrey R. Schmieler (VSB No. 32175)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **McGUIREWOODS LLP** | * | |
| Plaintiff | * | |
| **v.** | * | **Civil Action No.: 3:10cv354** |
| **GREAT NORTHERN INSURANCE COMPANY** | * | |
| | * | |
| Defendant | * | |
| | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

**BRIEF IN SUPPORT OF DEFENDANT GREAT NORTHERN INSURANCE
COMPANY'S MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF
McGUIREWOODS LLP'S NOTICES OF DEPOSITION**
_____

Defendant Great Northern Insurance Company ("Great Northern"), by and through its

attorneys Jeffrey R. Schmieler, Alan B. Neurick, Lisa N. Walters, Samuel T. Wolf, and Saunders

& Schmieler, P.C., files this brief in support of its motion for protective order regarding Plaintiff

McGuireWoods LLP's ("McGuireWoods") notices of deposition, and states:

**STATEMENT OF FACTS**

On September 29, 2010, McGuireWoods served notices of four depositions on Great

Northern, through counsel, by facsimile and mail.  McGuireWoods noted the depositions of: (1)

a corporate designee of Great Northern for October 6, 2010 at 9:00 a.m., **Exhibit 1**; (2) Thomas

P. Olson for October 6, 2010 at 2:00 p.m., **Exhibit 2**; (3) Donald J. Sonlin for October 7, 2010 at

9:00 a.m., **Exhibit 3**; and (4) Vivian E. Harrington for October 8, 2010 at 2:00 p.m., **Exhibit 4**.

The notices indicate that the depositions all are to take place at the offices of McGuireWoods'

counsel in Richmond, Virginia.

Olson, Sonlin and Harrington are not parties to this action.  McGuireWoods did not serve them with subpoenas.  Olson, Sonlin and Harrington all reside and work farther than 100 miles away from McGuireWoods' counsel's office in Richmond, Virginia, where the depositions were noted to take place.

A hearing on the parties' cross-motions for judgment on the pleadings is scheduled for the morning October 8, 2010.  Discovery is currently scheduled to close on October 29, 2010.

Great Northern, through counsel, has made a good faith effort to resolve this discovery dispute with counsel for McGuireWoods.  *See* Certificate of Good Faith Efforts to Confer to Resolve Discovery Dispute, **Exhibit 5**.

## THE LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that parties may obtain discovery of matters that are nonprivileged and "relevant to any party's claim or defense." The Rule limits the discovery of relevant information if the discovery does not appear "reasonably calculated to lead to the discovery of admissible evidence." *Id.*  Rule 12(b)(2)(C) imposes additional limitations on discovery:

(C) When Required.  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)  the party seeking discovery has had an ample opportunity to obtain the information by discovery in the action; or

(iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Any person may be deposed by oral questions so long as the party who wants to conduct the deposition provides "reasonable written notice to every other party" which "state[s] the time and place of the deposition, and if known, the deponent's name and address."  Fed. R. Civ. P. 30(a)-(b).  A deponent who is not a party may be compelled to attend a deposition by subpoena under Rule 45. Fed. R. Civ. P. 30(a).

Rule 26(c) states when a party or other person may obtain a protective order, as well as the relief that may be afforded by a protective order:

(c) Protective Orders.

(1) *In General*.  A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters related to a deposition, in the court for the district where the deposition will be taken.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A)  forbidding the disclosure or discovery;

(B)  specifying the terms, including time and place, for the disclosure or discovery;

(C)  prescribing a discovery method other than the one selected by the party seeking discovery;

(D)  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E)  designating the persons who may be present while the discovery is conducted;

(F)  requiring that a deposition be sealed and opened only on court order;

(G)  requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H)  requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1).

## ARGUMENT

The Court should enter an order prohibiting McGuireWoods from conducting the depositions they have noted on October 6-7, 2010 because: (1) McGuireWoods did not provide reasonable notice of the depositions; (2) the scheduling of the depositions in the two days immediately preceding the hearing on the cross-motions for judgment on the pleadings is unduly burdensome and annoying; and (3) the deponents should have been subpoenaed; and (4) Olson, Sonlin and Harrington should not be required to travel to Richmond, Virginia for their depositions.

Additionally, the Court should enter an order limiting the scope of McGuireWoods' requested discovery to only matters and information relevant to the parties' claims and defenses that is reasonably calculated to lead to the discovery of admissible evidence.

**I.      McGuireWoods should not be permitted to conduct the depositions as noted**

**A.      McGuireWoods did not provide reasonable notice of the depositions**

The Court should order that McGuireWoods not be allowed to conduct the depositions it has noted because McGuireWoods failed to provide reasonable notice of the depositions.  The Federal Rules of Civil Procedure do not state what constitutes reasonable notice of a contemplated deposition, and there appears to be no reported case law on the issue controlling in this District. This Court's Local Civil Rule 30(H) states:

As a general rule, eleven (11) days in advance of the contemplated taking of a deposition shall constitute reasonable notice of the taking of a deposition in the continental United States, but this will vary according to the complexity of the

4

contemplated testimony and the urgency of taking the deposition of a party or witness at a particular time and place.

McGuireWoods sent its notices of deposition to Great Northern's counsel by facsimile on September 29, 2010, in the minutes just before and after 5:00 p.m. **Exs. 1-4**. The depositions were noted for October 6, 2010 and October 7, 2010. Those dates are only seven and eight days after the service of the notices of deposition. Thus, the notices of deposition are presumptively improper under Local Civil Rule 30(H).[2] The testimony sought is not complicated, and there is no urgency sufficient to justify taking the depositions less than eleven days after the notices of deposition were served.

The testimony sought is not sufficiently complicated to justify conducting the depositions on the dates that counsel have chosen in deviation from this Court's Local Rule. The depositions are scheduled two-per-day, and appear to be scheduled to be completed within 3-hour windows. Moreover, the list of topics McGuireWoods seeks to discuss with Great Northern's corporate designee is not very complicated, and, as will be discussed later, is mostly irrelevant to the claims and defenses of the parties as well as not reasonably likely to lead to the discovery of admissible evidence. So along with the fact that the topics are not complicated, they should not be inquired into in any event, further shortening the time needed for the depositions.

There is likewise no urgency to the taking of these depositions sufficient to justify McGuireWoods noncompliance with Local Civil Rule 30(H). Discovery does not close until October 29, 2010. If McGuireWoods waited to note these depositions on September 29, it had the period between October 10 and October 29 during which to conduct the depositions. Instead, McGuireWoods noted the depositions for the two days prior to the hearing on the parties' cross-

---

[2]     Additionally, Local Civil Rule 45(F) provides that, in order to compel Olson, Sonlin or Harrington to attend a deposition, McGuireWoods was required to have served them with subpoenas "not later than eleven (11) days before the date of the deposition."

5

motions for judgment on the pleadings—which may obviate the need to take the depositions in any event—in violation of the Local Rule.

Even if Local Civil Rule 30(H) did not require McGuireWoods to have served the notices of deposition at least eleven days prior to the contemplated depositions, McGuireWoods still did not provide reasonable notice of the depositions.  McGuireWoods did not determine whether counsel for Great Northern would be available on the days when the depositions were noted to take place, even though counsel for Great Northern obviously has pressing matters to attend to those two days, *i.e.*, preparation for the October 8 hearing which could very well be dispositive of this entire action.  Moreover, the notice of deposition for Great Northern—the only deposition for which a deponent may be compelled to appear, since McGuireWoods did not subpoena the other deponents—was not provided within a reasonable time prior to the contemplated deposition because seven days—effectively six, since McGuireWoods did not fax the notices to counsel's office until the close of business, **Ex. 1**—is not sufficient time to determine who will be designated to appear on behalf of Great Northern based on availability and ability to answer questions on the topics stated in the notice.  It simply is unreasonable to expect to conduct the depositions on seven or eight days' notice in the two days prior to the hearing on the cross-motions for judgment on the pleadings.

Because McGuireWoods did not provide reasonable notice of the contemplated depositions, the Court should order that the depositions may not go forward on October 6 and 7, 2010.

> **B.      As scheduled by McGuireWoods, the noted depositions are unduly burdensome**

Conducting the depositions on one week's notice in the two days immediately preceding the scheduled hearing on the cross-motions for summary judgment is unduly burdensome, and

the Court should order that that the depositions may not go forward as noted.  The fact that the notices of deposition are presumptively invalid because they were served less than eleven days prior to the contemplated depositions—even though there is no rush to conduct the depositions— necessarily raises the question why McGuireWoods would have noted the depositions for the two days immediately preceding the hearing on the cross-motions for judgment on the pleadings. The answer can only be that McGuireWoods did so *intending* to impose undue burden on Great Northern and its counsel.  There is no other plausible explanation.  The two days prior to the hearing date are necessary to prepare for the hearing, and it is unduly burdensome to require counsel to attend depositions in those two days, especially when those depositions likely will be unnecessary upon resolution of the cross-motions for judgment on the pleadings.

It is also unduly burdensome to require the deponents to appear for deposition on such short notice.  The only deponent required to attend a deposition would be Great Northern's corporate designee.  The other three deponents are not parties to this action and were not subpoenaed; thus, they are not compelled to attend their noted depositions.[3]  It is unreasonable and unduly burdensome to expect a corporate designee of Great Northern to attend on only seven days' notice.  First, it is too brief an amount of time to determine who the appropriate designee should be based on the topics stated in McGuireWoods' notice of deposition.  It is also too brief an amount of time to require whoever may end up serving as the corporate designee to rearrange his or her schedule and travel to Richmond.

The Court should prohibit McGuireWoods from conducting the depositions it has noted because the notices of deposition and their requirements are unduly burdensome.

---

[3]      Additionally, Olson, Sonlin and Harrington are not employees of Great Northern Insurance Company. They are employed by Chubb & Son, a division of Federal Insurance Company. While Great Northern Insurance Company and Federal Insurance Company are both members of the Chubb Group of Insurance Companies—which itself is not a legal person—they are separate and distinct corporate entities.

### C.   Olson, Sonlin and Harrington cannot be required to travel to Richmond for deposition

Olson, Sonlin and Harrington's depositions, as currently noted, cannot proceed because they all reside and work more than 100 miles away from the location of the noted depositions.

Though the individual deponents have not been subpoenaed, even if they were to be subpoenaed, they still would not be required to attend depositions in Richmond, Virginia, and the Court would be required to quash the subpoena.  Federal Rule of Civil Procedure 45(c)(3)(A)(ii) requires that the court issuing a subpoena either quash or modify any subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person. . . ."  Olson resides in Potomac, Maryland and works in the District of Columbia.  Sonlin resides and works in Pennsylvania.  Harrington resides in Winchester, Virginia and works in the District of Columbia. None of these deponents may be compelled to testify at a deposition in Richmond, Virginia, under the subpoena power of this Court or any other district court.

Because the depositions were not noted in compliance with either the Federal Rules of Civil Procedure, or this Court's Local Civil Rules, the Court should enter a protective order prohibiting McGuireWoods from conducting the depositions as they have been noted.

### II.   Any deposition must be limited to questioning on matters that are relevant and questioning that is reasonably calculated to lead to the discovery of admissible evidence

Should McGuireWoods choose to take the depositions of these deponents, upon reasonable notice and in a proper location, those depositions must be limited to questioning on matters that are relevant to the parties' claims and defenses and questioning that is reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  Because topics stated in the notice of the deposition of Great Northern's corporate designee indicate that

McGuireWoods seeks to address topics that are not relevant to the claims or defenses of any party in this action, and do not appear to be reasonably calculated to the discovery of admissible evidence, this Court should enter an order directing that McGuireWoods not inquire, at any deposition, into what has been listed in paragraphs 1-6, 9(b), (e) and (f), and 10, which are stated in full, below, for the convenience of the Court.

1.  The Insurance Policies at issue in this litigation, including whether any of the Key Policy Terms consist of or were drafted in whole or in party by reference to Form Language. For each such Key Policy Term, Great Northern's knowledge of:

(a) any name commonly used to describe such Form Language (e.g., a form number);

(b) the period during which such Form Language was used and, if no longer used, when such use ceased;

(c) the individual(s) [who] participated in the process by which such Form Language was drafted or developed;

(d) the organization or entities that participated in the process by which the Form Language was drafted or developed (including, without limitation, syndicates, companies, Managing Agents, brokers, and industry organizations or associations such as ISO or others);

(e) the process by which the Form Language was drafted or developed;
(f) the process by which the Form Language was accepted or adopted for use;

(g) whether the Form Language ever was submitted to any insurance authority in the United States for review or approval including those of the Commonwealth of Virginia; if so, describe in detail each such submission with respect to each such Form Language and identify all decisions, statements, regulations, rate approvals and other actions taken by any state insurance commissioner, department, agency or bureau including those of the Commonwealth of Virginia concerning each such submission.

2.  The Insurance Policies at issue in this litigation, including whether one or more portions of the policy consist of Non-Form Language, and for each such policy term, Great Northern's knowledge of:

(a) the individuals who participated in the drafting of the Non-Form language;

(b) any organizations or entities that participated in the drafting of the Non-Form language;

(c) the process by which the Non-Form language was drafted;

(d) the reason that the policy includes Non-Form language;

(e) any policy form, model, specimen or other source language upon which the Non-Form language was modeled or based.

3.   The persons, including any insurance agent or broker, and the process involved in negotiating, drafting, formulating, underwriting, or approving the Insurance Policies at issue in this litigation, including the negotiating, drafting, formulating, and approval process.

4.   Great Northern's knowledge of each communication in which its representatives participated, were present or involved, and each document in its custody or control (including without limitation, all insurance industry trade documents), concerning or relating to the drafting history, meaning, interpretation, scope or application of any Key Policy Terms of the Insurance Policy.  This topic encompasses communications between Great Northern and any other insurance carrier regarding claims similar to those asserted by McGuireWoods under insurance policies that include the same or virtually identical language to that in the policy you sold McGuireWoods.

5.   Since 2000, Great Northern's acceptance or denial of insurance coverage for any claims (such as those asserted by McGuireWoods) involving alleged personal injury based on defamation and/or malicious prosecution, made against any of its insureds other than McGuireWoods, including:

(a) the name of the insured;

(b) the date of the claim for coverage;

(c) the control number for the claim, if any;

(d) the nature of the claim;

(e) if any formal legal action was initiated, the date of the initiation (and termination, if applicable), and the court, docket number, and parties involved;

(f) the present status of the claim;

(g) the precise legal and factual basis for accepting or denying the claim;

6.   The individuals who have been, is or will be responsible for making claims decisions or for determining on behalf of Great Northern how the Insurance Policies sold to McGuireWoods apply, the process used by them to make these decisions and determinations, each individual[']s role in the process, their supervisor, and all related documents. . . .

9.   Great Northern's contention that under the Insurance Policies at issue in this litigation McGuireWoods and its partners and employee are not entitled to coverage for the underlying claims and suits of Christopher Spencer, Esq., including but not limited to: . . .

(b) the investigation performed by Great Northern of the underlying facts and circumstances of the claims of lawsuits brought by Christopher Spencer before denying coverage[;] . . .

(e) all settlement offers and efforts made by Great Northern to settle the instan[t] coverage dispute with McGuireWoods;

(f) all communications with third parties including but not limited to excess carriers and reinsurers concerning the underlying claims and lawsuits brought by Christopher Spencer and McGuireWoods['] request for coverage regarding these claims and lawsuits[;] . . .

10. All instances since 2000, that Great Northern or Chubb or any subsidiary or parent of Great Northern or Chubb has retained the law firm of O'Melveny & Meyers, LLP, Termblay & Smith, LLP, Williams Mullen, McEachin & Gee, PC, and/or Morris & Morris PC, either directly or on behalf of an insured, including by not limited to:

(a) the name of the client for which the law firm(s) was retained;

(b) the date the law firm(s) was retained;

(c) a description of the legal matter for which the law firm(s) was retained;

(d) if any formal legal action was initiated, the date of the initiation (and termination, if applicable), and the court, docket number, and parties involved;

(e) the present status of the legal matter;

(f) the total legal fees and costs billed by law firm(s) that was retained;

(g) the total legal fees and costs paid by Great Northern or Chubb or any subsidiary or parent of Great Northern or Chubb;

11

(h) all attorneys and paralegals who billed time in such a legal matter including their titles and billing rates; and,

(i) all related documents. . . .

**Ex. 1**.

None of these abusive and unduly burdensome areas of inquiry is relevant, and none of these areas of inquiry are reasonably calculated to lead to the discovery of admissible evidence in this action.  This is a breach of contract action in which McGuireWoods claims that Great Northern breached a duty to defend the underlying claims made by Christopher Spencer. Liability in this litigation is to be determined based on the contents of the underlying complaints and the contents of the insurance policy.  None of the facts McGuireWoods seeks to discover are relevant because they have nothing to do with what the parties agreed to in the unambiguous insurance policy and they have nothing to do with the substance of Christopher Spencer's underlying claims.

Courts are to interpret insurance policies as a matter of law.  *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 80, 677 S.E.2d 299, 302 (2009).  The meaning of an insurance policy is not a question of fact for a jury.  The Court is to interpret an insurance policy as it would any other contract, "by determining the parties' intent from the words . . . used."  *Id.* When a term in the insurance policy is unambiguous, a court is to "apply its plain meaning as written."  *Id.* at 81, 677 S.E.2d at 302.  If language in the policy "can be understood to have more than one meaning," it is construed "in favor of coverage and against the insurer." [4]  *Id.*

Thus, a court is only to look to the language of the policy itself, and not to any parol evidence.  It is of no importance how the policy was drafted, why it was drafted that way, or

---

[4]     Of course, if a term in the policy is ambiguous, but any interpretation of the term would lead to a conclusion that there is no coverage, then there is no reason to construe an ambiguity against an insurer.

what the parties thought the policy meant.  Like any other contract, an insurance policy means just what it says, and it does not matter what the parties to the contract say about it later.  The same presumption applies to insurance policies as it does to any contract: the written agreement is the best expression of the parties' intent.  Because the insurance policy at issue in this case is unambiguous, none of the facts McGuireWoods seeks to discover could ever be relevant, nor could they ever lead to the discovery of evidence admissible in this action.  The policy means what it means.  Nothing else matters.

McGuireWoods may not obtain answers to the questions it wants to ask because they simply are not significant to this action.  The facts it seeks to discover will never be relevant, will never be admissible in evidence, and will never change the outcome of this litigation.  Great Northern already has provided, under objection, banker's boxes full of such documents in response to McGuireWoods request for production.  Nothing McGuireWoods has sought to discover will be of any use to it, and it must be content with what it has.  Great Northern is not required by Rule, and should not be required by the Court, to further enable McGuireWoods' quest for a red herring at Great Northern's expense.  The Court should protect Great Northern from having to provide McGuireWoods with even more pointless, irrelevant, oppressive and

The parties have made their arguments about what the insurance policy means, and the Court must determine that as a matter of law.  But even if McGuireWoods could somehow convince the Court that there is any ambiguity in the policy, the information it seeks still would never be relevant nor would it ever be admissible.  If an ambiguity in an insurance policy is found, and it is determined that one of the possible meanings of the ambiguous provision would favor a finding of coverage, than the inquiry ends there: coverage would exist and the insurer would owe its insured a duty to defend.

13

unduly burdensome discovery than has already been provided.  Because the insurance policy is to be interpreted as a matter of law based on the face of the contract, this Court should order that McGuireWoods may not seek the information stated in paragraphs 1-6 and 9 in its notice of deposition of Great Northern's corporate designee, set forth above.

The Court should also order that McGuireWoods may not seek the information contained in paragraph 10 in its notice of deposition of Great Northern's corporate designee.  This information, which appears to be directed toward the general issue of McGuireWoods' attempt to recover the attorneys' fees it claims it incurred in defending Spencer's underlying claims, is likewise wholly irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Assuming, *arguendo*, that McGuireWoods is able to establish liability against Great Northern, it must prove that it incurred damages.  It will proffer that it incurred what are grossly excessive attorneys' fees[5] that, from some firms,[6] are a long way off on the wrong side of Virginia Rule of Professional Conduct 1.5's requirement that an attorney's fee be reasonable.

Under Virginia law, in a breach of contract action where one party claims attorneys' fees as an element of damages, "[t]he party claiming the legal fees has the burden of proving *prima facie* that the fees are reasonable and were necessary."  *Chawla v. BurgerBusters, Inc.*, 255 Va.

---

[5]     Though the Complaint states only that McGuireWoods incurred over $75,000 in attorneys' fees, through discovery McGuireWoods has provided information indicating that it was billed an impossible amount over $3.4 million in defense of Spencer's claims that could have, and should have, been defeated quickly and easily—no matter the skill, experience or reputation of the defense attorneys—on the basis of numerous applicable privileges.

[6]     For example, O'Melveny & Meyers, LLP, alone billed over $1 million in the defense of what everyone would concede were patently frivolous claims that were not litigated for a great amount of time, that required no great amount of skill to defend, and that never reached an appeal on the merits.

616, 624, 499 S.E.2d 829, 833 (1998).  The Supreme Court of Virginia has stated what a plaintiff

is required to prove in order to recover attorneys' fees in a breach of contract action:

> Where, as here, the contracts provided for attorney's fees, but did not fix the
> amount thereof, a fact finder is required to determine from the evidence what are
> reasonable fees under the facts and circumstances of the particular case.   In
> determining a reasonable fee, the fact finder should consider such circumstances
> as the time consumed, the effort expended, the nature of the services rendered,
> and other attending circumstances.

*Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991) (citations

omitted).  Virginia Rule of Professional Conduct 1.5, requiring that a lawyer's fee be reasonable,

provides guidance in determining whether a fee is reasonable:

> (a)  A lawyer's fee shall be reasonable.   The factors to be considered in
> determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions
> involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular
> employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation and ability of the lawyer or lawyers performing
> the services; and
>
> (8) whether the fee is fixed or contingent.

Virginia Rule of Professional Conduct 1.5(a).  Further guidance in determining what constitutes

a reasonable attorneys' fee can be found in Fourth Circuit jurisprudence governing the

application of the lodestar formula in actions where a "private attorney general" seeks to recover

a reasonable fee provided for in a statute.  *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290

F.3d 639, 652 (4th Cir. 2002) ("In calculating attorney's fees, the Fourth Circuit employs the 'lodestar' formula, multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  In making the reasonableness determinations, a court is to use the twelve factor test articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).").  The Fourth Circuit adopted the *Johnson* twelve-factor test in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), stating that "any award [of attorneys' fees] must be accompanied by detailed findings of fact with regard to the" following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the sill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 226.  Though numbered differently, these factors parrot those contained in Virginia Rule of Professional Conduct 1.5(a).

It is clear that the information that McGuireWoods seeks to discover through deposition testimony, as indicated in paragraph 10 of its notice of deposition to Great Northern's corporate designee, bears absolutely no relation to what the jury is to consider in determining whether the fees incurred by McGuireWoods in defense of the underlying claims were necessary or reasonable.  Whether Great Northern has ever hired any of the firms hired to represent the underlying defendants does not have any tendency to make the fees those firms charged any more or less necessary or reasonable.  Nor is such questioning likely to lead to the discovery of admissible evidence.

The questioning proposed by McGuireWoods presents nothing more than a burden and a nuisance to Great Northern, does not seek relevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. This Court should prohibit McGuireWoods from engaging in such an unnecessary, boundless and improper inquiry.

While McGuireWoods is entitled to discovery of information that is relevant and that could lead to the discovery of evidence admissible at trial, McGuireWoods must be prohibited from further engaging in this costly, burdensome and ultimately futile chase for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The issues in this case are very simple, are principally to be decided as a matter of law, and McGuireWoods' quest to obtain irrelevant information that will never be admissible at trial must stop. The Court should enter a protective order directing that McGuireWoods may not inquire into the areas detailed above, and that McGuireWoods may only obtain discovery of relevant information and limit itself to questioning that is reasonably calculated to lead to the discovery of admissible evidence.

## CONCLUSION

This Court should enter a protective order prohibiting McGuireWoods from conducting the depositions it has noted for October 6 and 7, 2010. McGuireWoods failed to provide timely, reasonable notice of the depositions, did not issue subpoenas compelling the deponents' attendance, and the depositions, as noted, are unduly burdensome.

And while Great Northern cannot object to depositions of the proposed deponents at a later time, if those depositions are properly noted and the deponents properly subpoenaed, McGuireWoods must be confined to permissible areas of inquiry. In that vein, the Court should enter a protective order directing that McGuireWoods may not inquire into the areas stated in

paragraphs 1-6, 9(b), (e) and (f), and 10 of its notice of deposition of Great Northern's corporate

designee.  The Court should direct that McGuireWoods, in any future discovery, limit its inquiry

into only matters that are relevant and reasonably calculated to lead to the discovery of

admissible evidence.

Respectfully submitted,


/s/ Jeffrey R. Schmieler
Jeffrey R. Schmieler (VSB No. 32175)
Alan B. Neurick (*pro hac vice*)
Lisa N. Walters (VSB No. 72291)
Samuel T. Wolf (*pro hac vice*)
*Saunders & Schmieler, P.C.*
The Montgomery Center, Suite 1202
8630 Fenton Street
Silver Spring, Maryland 20910
(301) 588-7717
(301) 588-5073 Facsimile
schmielerj@sslawfirm.com
neuricka@sslawfirm.com
waltersl@sslawfirm.com
wolfs@sslawfirm.com

*Counsel for Defendant*
*Great Northern Insurance Company*

Filename:               Motion for Protective Order re Depositions.docx
Directory:              N:\Chubb\CH1-1048 Great Northern - McGuire Woods\E-
     Filings\Motion for Protective Order - October 6-7 Depos
Template:               C:\Documents and Settings\pazzellir.SSLAWFIRM\Application
     Data\Microsoft\Templates\Normal.dotm
Title:
Subject:
Author:                 Your User Name
Keywords:
Comments:
Creation Date:          10/4/2010 3:55:00 PM
Change Number:          2
Last Saved On:          10/4/2010 3:55:00 PM
Last Saved By:          Your User Name
Total Editing Time:     2 Minutes
Last Printed On:        10/4/2010 4:21:00 PM
As of Last Complete Printing
     Number of Pages:   21
     Number of Words:   5,691 (approx.)
     Number of Characters:       32,441 (approx.)