IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

McGUIREWOODS LLP,

        Plaintiff,

v.                                Civil Action No. 3:10cv354

GREAT NORTHERN INSURANCE COMPANY,

        Defendant.

## PLAINTIFF McGUIREWOODS LLP'S BRIEF IN OPPOSITION TO DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

James W. Morris, III (VSB No. 05740)
Matthew D. Green (VSB No. 46913)
Melissa Y. York (VSB No. 77493)
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA  23218
(804) 344-8300 Telephone
(804) 344-8359 Facsimile

*Counsel for Plaintiff McGuireWoods LLP*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................1

    I.    Great Northern Had a Duty to Defend Because Spencer Alleged a
        Personal Injury Covered by the Policy. ....................................................................1

        A.    The Policy excludes coverage for the category of torts known as
                injurious falsehood, not the tort of defamation............................................2

        B.    Spencer's claims of "abuse of process" are covered under
                subsection B of the definition of "personal injury." ...................................7

    II.    Great Northern Had a Duty to Defend Because the "Publications with
        Knowledge of Falsity" Exclusion Does not Apply.................................................10

    III.    Great Northern Had a Duty to Defend Because the "Expected or Intended
        Injury" Exclusion Does not Apply........................................................................11

    IV.    Great Northern Had a Duty to Defend Because the "Insureds Or
        Affiliates" Exclusion Does not Apply. ..................................................................12

        A.    The "Eight-Corners" rule prevents Great Northern from relying on
                the "Insureds Or Affiliates" exclusion to avoid its duty to defend. ..........12

        B.    The "Insureds Or Affiliates" exclusion does not apply to the
                actions brought by Spencer. .....................................................................13

    V.    Great Northern Had a Duty to Defend Because the "Professional Services"
        Exclusion Does not Apply. ....................................................................................15

    VI.    Getchell and Allcott are Insureds Under the Policy...............................................15

CONCLUSION..................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Aetna Cas. & Sur. Co. v. Centennial Ins. Co.,
 838 F.2d 346 (9th Cir. 1988) ................................................................................................4

Align Tech., Inc. v. Fed. Ins. Co.,
 673 F. Supp. 2d 957 (N.D. Cal. 2009)...................................................................................2

Am. Online, Inc. v. St. Paul Mercury Ins. Co.,
 207 F. Supp. 2d 459 (E.D. Va. 2002), aff'd 347 F.3d 89 (4th Cir. 2003).............................13

Atl. Mut. Ins. Co. v. Atl. Datacom, Inc.,
 139 F.3d 1344 (11th Cir. 1998) .............................................................................................8

Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.,
 457 F.3d 368, 372, 375 (4th Cir. 2006) .................................................................................8

Fuisz v. Selective Ins. Co. of Am.,
 61 F.3d 238 (4th Cir. 1995) .............................................................................................7, 11

Lunsford v. Am. Guar. & Liab. Ins. Co.,
 18 F.3d 653 (9th Cir. 1994) ................................................................................................8-9

Martin's Herend Imports Inc. v. Twin City Fire Ins. Co.,
 No. Civ. A. H-99-064, 2000 WL 33795043 (S.D. Tex. Mar. 31, 2000)...............................8-9

Microtec Research, Inc. v. Nationwide Mut. Ins. Co.,
 40 F.3d 968 (9th Cir. 1994) ................................................................................................3-4

Novell, Inc. v. Vigilant Ins. Co.,
 No. 2:09-cv-496, 2010 WL 1734771 (D. Utah Apr. 27, 2010).................................................2

Sanderson v. Ind. Soft Water Servs., Inc.,
 No. IP 00-0459, 2004 WL 1784755 (S.D. Ind. July 23, 2004) .................................................5

Spencer v. Am. Int'l Group, Inc.,
 No. 3:08cv00591, 2009 WL 47111 (E.D. Va. Jan. 6, 2009)...................................................12

Town Crier, Inc. v. Hume,
 721 F. Supp. 99 (E.D. Va. 1989) ..........................................................................................13

UMG Recordings, Inc. v. Am. Home Assurance Co.,

321 Fed. App'x 553 (9th Cir. 2008) .......................................................................4

United States Fid. & Guar. Co. v. Saddle Ridge, L.L.C.,
    No. 98-2565-KHV, 1999 WL 1072905 (D. Kan. Sept. 27, 1999).........................9

Westfield Ins. Co. v. Gil Behling & Son, Inc.,
    No. 2:08cv317, 2010 WL 989933 (N.D. Ind. Mar. 15, 2010) ...............................5

**STATE CASES**

Aetna Cas. & Sur. Co. v. Cochran,
    651 A.2d 859 (Md. 1995) ...................................................................................13

Allcare, Inc. v. Bork,
    531 N.E.2d 1033 (Ill. Ct. App. 1988) ...................................................................4

Atl. Mut. Ins. Co. v. J. Lamb, Inc.,
    123 Cal. Rptr. 2d 256 (Cal. Ct. App. 2002).........................................................3

Cent. Sur. & Ins. Corp. v. Elder,
    204 Va. 192, 129 S.E.2d 651 (1993) ...................................................................6

Copp v. Nationwide Mut. Ins. Co.,
    279 Va. 675, 692 S.E.2d 220 (2010) .................................................................13

Donahoe Const. v. Mount Vernon Assoc.,
    235 Va. 531, 369 S.E.2d 857 (1988) .................................................................10

Granite State Ins. Co. v. Bottoms,
    243 Va. 228, 415 S.E.2d 131 (1992).....................................................................7

Toll Bros. v. Gen. Accident Ins. Co.,
    No. 98C-08-203, 1999 WL 744426 (Del. Super. Ct. Aug. 4, 1999)....................9

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 623A (1977) ................................................................2

Restatement (Second) of Torts § 624 cmt. a (1977) .......................................................2

Restatement (Second) of Torts § 626 cmt. a (1977) .......................................................2

McGuireWoods LLP ("McGuireWoods"), by counsel, submits the following in opposition to Defendant Great Northern Insurance Company's ("Great Northern") Cross-Motion for Judgment on the Pleadings (hereafter "Cross-Motion").

## **INTRODUCTION**

McGuireWoods' Motion for Judgment of Liability on the Pleadings was fully briefed as of August 26, 2010, and was promptly set for hearing on October 8, 2010.

It was not until September 20, 2010, that Great Northern filed its Cross-Motion, requesting that it be heard at the same time as McGuireWoods' Motion.  Great Northern has taken this opportunity to address some of the arguments in McGuireWoods' Reply Brief in Support of its Motion for Judgment of Liability on the Pleadings but, for the most part, has submitted verbatim the same brief as its Brief in Opposition to McGuireWoods LLP's Motion for Judgment on the Pleadings.  McGuireWoods will take this opportunity to address only Great Northern's new arguments and otherwise respectfully directs the Court to McGuireWoods' briefs filed previously.

## **ARGUMENT**

I.   **Great Northern Had a Duty to Defend Because Spencer Alleged a Personal Injury Covered by the Policy.**

The Great Northern Policy covers personal injury, which is defined as:

[I]njury, other than **bodily injury, property damage** or **advertising injury**, caused by an offense of:

* * *

B.   malicious prosecution;

* * *

D.   electronic, oral, written or other publication of material that:

    1.   libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

    2.   violates a person's right to privacy.

Form 80-02-2000, at 30 (emphasis in original).

> **A.    The Policy excludes coverage for the category of torts known as injurious falsehood, not the tort of defamation.[1]**

Great Northern reads subsection D of the definition of "personal injury" as stating that "coverage will be provided for slander or libel so long as the defamation committed by the insured does not consist of the disparagement of a person's services."  (Def. Great Northern Ins. Co.'s Br. in Supp. of Cross-Mot. for J. on the Pleadings 11 (hereinafter "Br. in Supp. of Cross-Mot.").) This analysis is illogical and unfounded.[2]

The parenthetical—"which does not include disparagement of goods, products, property or services"—does not limit the coverage expressly granted for offenses of libel and slander. Instead, it excludes coverage for an entirely separate category of torts arising from the insured's "disparagement of goods, products, property or services."  This latter species of tort is commonly referred to as "injurious falsehood."  <u>See</u> Restatement (Second) of Torts § 623A (1977).

Great Northern argues against this interpretation of the policy because "[w]hile the Restatement (Second) of Torts § 623A and some states have recognized injurious falsehood as an independent tort, a review of the case law of Virginia confirms that Virginia—whose law controls the interpretation of the policy—has not."  (Br. in Supp. of Cross-Mot. 15.)  Yet, Great Northern goes on to note that Virginia recognizes the torts of slander of title and trade libel, two of the causes of action specifically included in the category of injurious falsehood torts.  (<u>Id.</u> at n.2; <u>see</u> Restatement (Second) of Torts §§ 624 cmt. a, 626 cmt. a.)

---

[1] This section addresses Part I.B. of Great Northern's Brief in Support.

[2] Notably, Great Northern does not address <u>Novell, Inc. v. Vigilant Insurance Co.</u>, No. 2:09-cv-496, 2010 WL 1734771 (D. Utah Apr. 27, 2010) or <u>Align Technology, Inc. v. Federal Insurance Co.</u>, 673 F. Supp. 2d 957 (N.D. Cal. 2009), which construe the same policy language at issue in the present case.  (<u>See</u> Pl. McGuireWoods LLP's Reply Br. in Supp. of Mot. for J. of Liability on the Pleadings 6 (hereinafter "McGuireWoods' Reply Br.").)

Injurious falsehood is not an independent tort, but rather a common name used to describe a category of torts involving disparagement of goods, products, property, or services. The mere fact that the phrase "injurious falsehood" may not have been used in Virginia case law does not mean that the torts comprising that category of wrongs are not recognized in Virginia. Indeed, no Virginia case has <u>rejected</u> liability for such wrongs, and, as indicated, Virginia has accepted the validity of the only two causes of action within that category so far presented to the Supreme Court.   Furthermore, while Virginia law controls the interpretation of the policy, the mere fact that Virginia may or may not recognize a particular tort does not mean that coverage for that tort cannot be provided for in, or excluded by, the Great Northern Policy issued to McGuireWoods.  McGuireWoods, after all, is an international law firm and the coverage territory of the policy was "anywhere."  Form 80-02-2000 at 5.

Case law from other jurisdictions supports McGuireWoods' interpretation of the "disparagement" parenthetical as referring to the category of torts known as injurious falsehood. The definition of personal injury in many insurance policies reads as follows:

> [I]njury, other than "bodily injury" arising out of one or more of the following offenses:
>
> * * *
>
> D.       Oral or written publication of material that slanders or libels a person or organization <u>or disparages a person's or organization's goods, products or services</u>.

<u>Microtec Research, Inc. v. Nationwide Mut. Ins. Co.</u>, 40 F.3d 968, 969 (9th Cir. 1994) (emphasis added).  "This amounts to coverage for product disparagement and trade libel as well as defamation."  <u>Atl. Mut. Ins. Co. v. J. Lamb, Inc.</u>, 123 Cal. Rptr. 2d 256, 269 (Cal. Ct. App. 2002).  Thus, the exclusionary language in the Great Northern Policy often appears in other

policies as inclusionary language, which grants (rather than restricts) coverage for injurious

falsehood torts.[3]

In <u>Microtec Research, Inc.</u>, the Ninth Circuit Court of Appeals held that the term

"disparage" in the policy was "meant to cover claims that arise under trade libel.  Trade libel is

defined as 'an intentional disparagement of the quality of property which results in pecuniary

damage.'  It is more akin to unfair competition than to true libel, and is not actionable as

defamation."  <u>Microtec Research, Inc.</u>, 40 F.3d at 972 (quoting <u>Aetna Cas. & Sur. Co. v.

Centennial Ins. Co.</u>, 838 F.2d 346, 351 (9th Cir. 1988)).

> The defamatory torts of libel and slander are different than trade libel.  The
> difference between the two types of actions is that an action for defamation is
> designed to protect the <u>reputation</u> of the plaintiff, and the judgment vindicates that
> reputation, whereas the action for disparagement is based on <u>pecuniary damage</u>
> and lies only where such damage has been suffered.

<u>Id.</u> (internal quotations and citations omitted) (emphasis in original).

> "Disparagement" has been held to include statements about a competitor's goods,
> products or services that are untrue or misleading and are made to influence
> potential purchasers not to buy.  Unlike classic defamation, which concerns
> damage to reputation, disparagement in insurance policies is meant to cover
> claims that arise under trade libel, which concerns quality of property that results
> in <u>pecuniary</u> damage.

<u>UMG Recordings, Inc. v. Am. Home Assurance Co.</u>, 321 Fed. App'x 553, 555 (9th Cir. 2008)

(internal quotations and citation omitted) (emphasis in original).

"[D]efamation and commercial disparagement are two distinct causes of action.

Defamation lies when a person's integrity in his business or profession is attacked while

commercial disparagement lies when the quality of his goods or services is attacked."  <u>Allcare,</u>

---

[3] The mere fact that this definition of "personal injury" is often written in the conjunctive should, by itself, prove that the phrase "disparages a person's or organization's goods, products or services" refers to torts other than libel or slander.  If the phrase were referring to a specific category of libel or slander that disparages goods, products, or services, the phrase would be unnecessary because this specific category of defamation would be covered by the phrase "slanders or libels a person or organization."  Thus, the definition must refer to separate categories of torts.

Inc. v. Bork, 531 N.E.2d 1033, 1037 (Ill. Ct. App. 1988).  "Defamation and commercial disparagement protect different interests.  Defamation protects interests of personality.  Commercial disparagement protects property interests.  As such, there is a clear line of demarcation between the two causes of action."  Id. at 1038.

The United States District Court for the Northern District of Indiana distinguished defamation and disparagement in Westfield Insurance Co. v. Gil Behling & Son, Inc., No. 2:08cv317, 2010 WL 989933 (N.D. Ind. Mar. 15, 2010), when applying policy language identical to that in Microtec Research, Inc.  In that case, the court noted that "'product disparagement' has also been described by commentators as 'disparagement of property,' 'slander of goods,' 'commercial disparagement,' 'trade libel,' and 'injurious falsehood.'  The tort differs from defamation in that it seeks to protect economic interests rather than reputational interests."  Id. at *12 (quoting Sanderson v. Ind. Soft Water Servs., Inc., No. IP 00-0459, 2004 WL 1784755, at *7 (S.D. Ind. July 23, 2004)).

The court went on to hold that if the plaintiff in the underlying case "alleged reputational harm or injury based upon alleged defamation by any manner of oral or written publication by [the insured]," the "slanders or libels" term would apply; and if the plaintiff "alleged harm or injury to economic interests by any manner of oral or written publication by [the insured] that denigrated, discredited, or belittled [the plaintiff's] goods, products, or services," then the "disparages" term would apply.  Id.

The same holds true when there is coverage for "libel or slander" but not "disparagement," as in the case of the Great Northern Policy.  The policy would provide coverage if a plaintiff alleged reputational harm or injury based upon alleged defamation, but it would not provide coverage if a plaintiff alleged harm or injury only to economic interests by a

publication that denigrated, discredited, or belittled the plaintiff's goods, products, or services.

As Christopher Spencer alleged harm to his reputation—"humiliation, embarrassment,

inconvenience and other damages"—based upon alleged defamation, his claims constituted a

personal injury covered by the Policy.  (See 1st Compl. ¶¶ 50, 61, 72, 89, 100; Am. 1st Compl.

¶¶ 9, 74, 85, 95; 2d Compl. ¶¶ 10, 86, 98, 111, 123.)[4]  Indeed, Great Northern acknowledges that

Spencer alleged that the purported false statements "had the effect of defaming Spencer

*personally* and professionally." (Br. in Supp. of Cross-Mot. 5. (quoting 1st Compl. ¶ 52)

(emphasis added).)

It defies the great weight of authority and logic to read the parenthetical upon which

Great Northern relies as excluding coverage for certain categories of defamation.  The proper

interpretation of subsection D of the definition of "personal injury" is as a clarification that,

although Great Northern is providing coverage for defamation, it is not providing coverage for

injurious falsehoods such as slander of title, trade libel, and other "disparagement" torts.[5]

At the very least, the Great Northern Policy's definition of personal injury is ambiguous

and must be construed in favor of McGuireWoods.[6]  If an insurance policy is "susceptible to two

---

[4] Even Great Northern agrees that Spencer alleged harm to his reputation.  (See Br. in Supp. of Cross-Mot. 13 ("As the Amended Complaint against Getchell and Allcott states, the defendants intended to destroy Spencer's reputation for their own benefit").)

[5] Even if Great Northern's interpretation of the disparagement parenthetical were correct, Spencer's Complaints alleged more than just a "disparagement of his services."  For example:
- "Getchell and Allcott went so far as to spread false statements that Spencer was a fraud, that Spencer was unfit to practice law . . ." (1st Compl. ¶ 7.)
- "Spencer . . . actively concealed from the Plaintiff [WPI] that the trial transcript was not timely filed."  (1st Compl. ¶ 38(f); Am. 1st Compl. ¶ 55(f); 2d Compl. ¶ 56(f).)
- "Spencer . . . intentionally and/or deliberately withheld and/or concealed the material fact that the trial transcript was not timely filed and that the appeal was not perfected and preserved."  (1st Compl. ¶ 38(q); Am. 1st Compl. ¶ 55(bb); 2d Compl. ¶ 56(bb).)
- "It would accuse him of rank dishonesty.  It would call him a fraud and a sneak.  It would claim he was generally and utterly unethical."  (Am. 1st Compl. ¶ 41; 2d Compl. 42.)

[6] McGuireWoods cited Great Northern's pre-litigation position that the alleged claims did allege a personal injury primarily to demonstrate that the definition of "personal injury" is not as "clear" as Great Northern now contends. (See Br. in Supp. of Cross-Mot. 15 n.1; McGuireWoods' Reply Br. 3-4.)  Based on its own inability to maintain a

constructions," one of which would effectuate coverage and the other of which would not, "it is to be construed liberally in favor of the insured and strictly against the insurer." Cent. Sur. & Ins. Corp. v. Elder, 204 Va. 192, 198, 129 S.E.2d 651, 655 (1993) (internal citation omitted).

> Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies.  Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous.  An ambiguity, if one exists, must be found on the face of the policy.  And, language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time.  Finally, doubtful ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it.

Granite State Ins. Co. v. Bottoms, 243 Va. 228, 233-34, 415 S.E.2d 131, 134 (1992).

### B.    Spencer's claims of "abuse of process" are covered under subsection B of the definition of "personal injury."[7]

In addition to triggering Great Northern's duty to defend based on the allegations of defamation, Spencer's Complaints separately trigger the duty to defend based on his allegations of abuse of process.  Allegations of defamation and abuse of process act independently to trigger Great Northern's duty to defend, which arises whenever the underlying complaint alleges any claim covered by the policy.  Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 242 (4th Cir. 1995).  Thus, even if Great Northern's contentions regarding abuse of process were sustained, it would still owe a duty to defend because of the allegations of defamation.

Despite Great Northern's contention, Spencer's claims for abuse of process are covered under subsection B of the definition of "personal injury."  McGuireWoods has not argued that "malicious prosecution" and "abuse of process" are the same.  McGuireWoods recognizes that

---

consistent position on the issue, Great Northern's conflicting pre- and post-litigation interpretations of this policy term is further evidence of its ambiguity.

[7] This section addresses Part I.C. of Great Northern's Brief in Support.

these are separate torts in Virginia and that the Great Northern Policy does not specifically define "personal injury" to include "abuse of process."  McGuireWoods has shown, however, that the undefined term "malicious prosecution" in the Policy's definition of "personal injury" is ambiguous and should be read to include a claim for "abuse of process."  (See McGuireWoods' Reply Br. 8-9.)

Great Northern attempts to distinguish Lunsford v. American Guarantee & Liability Insurance Co., 18 F.3d 653 (9th Cir. 1994), which McGuireWoods cited for the proposition that other courts have found the term "malicious prosecution" to be ambiguous, on the grounds that the duty to defend under California law "differs greatly" from the duty to defend under Virginia law.  (Br. in Supp. of Cross-Mot. 18-19.)  This argument is a red-herring.  The standard applied when determining whether an insurer has a duty to defend has no bearing on whether a particular term used in an insurance policy is ambiguous.

Moreover, while Great Northern is correct that some courts have found "malicious prosecution" as used in an insurance policy to be unambiguous, other courts have found the term to be ambiguous[8], which is the better reasoned interpretation for purposes of determining the intent of the parties.

---

[8] Great Northern's reliance on Atlantic Mutual Insurance Co. v. Atlanta Datacom, Inc., 139 F.3d 1344 (11th Cir. 1998), is misplaced.  In that case, the Eleventh Circuit Court of Appeals determined that the term "malicious prosecution" was unambiguous and did not include the tort of "abuse of process."  Id. at 1345-46.  Under Georgia law, malicious prosecution "is a criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted . . . [w]hile the tort of abusive litigation [is] applicable to civil proceedings."  Id. at 1345.  Thus, in Georgia, "[t]he term 'malicious prosecution' is applicable only to the carrying on of a criminal case. . . . When damages are sought for the malicious carrying on of a civil suit, the cause of action is not for malicious prosecution, but for the malicious use of process."  Id. (internal quotation omitted). Therefore, under Georgia law, abuse of the term "malicious prosecution" is not ambiguous and cannot be read to include a claim for malicious use of process, as one refers to criminal proceedings and the other a civil action.  In Virginia, however, the two causes of action are much more similar, "sister torts," if you will, as malicious prosecution and abuse of process can each lie for civil and criminal actions.

For example, in <u>Martin's Herend Imports Inc. v. Twin City Fire Insurance Co.</u>, No. Civ.

A. H-99-064, 2000 WL 33795043, at *6 (S.D. Tex. Mar. 31, 2000), the United States District

Court for the Southern District of Texas held that "[i]n an insurance policy the undefined term

'malicious prosecution' is ambiguous and must be construed so as to cover the sister tort of

'abuse of process.'"  The court reasoned that construing "malicious prosecution" to cover "abuse

of process" was "an objective enforcement of the plain and popularly understood interpretation

of malicious prosecution in the real world."  <u>Id.</u> (internal quotation omitted).  The counterclaim

against the insured for a seizure that was allegedly "wrongful and in bad faith" and "based on an

apparent knowing and intentional <u>ex parte</u> misrepresentation of facts to the Court" thus alleged a

cause of action for malicious prosecution for the purposes of insurance coverage.  <u>Id.</u> at *1, 7.

Similarly, in <u>Toll Bros. v. General Accident Insurance Co.</u>, No. 98C-08-203, 1999 WL

744426, at *9 (Del. Super. Ct. Aug. 4, 1999), the Superior Court of Delaware held that while

"malicious prosecution" and "abuse of process" are distinct torts, the term "malicious

prosecution" would cover actions deriving from "abuse of process."

> At the very least, the insurer should bear the burden of any ambiguity.  Had the
> insurer wished to exclude a tort so closely related to malicious prosecution, it
> should have done so expressly.  This failure proves fatal.

<u>Id.</u>  The court thus concluded that a counterclaim labeled "abuse of process" was covered under

the policy as a personal injury arising out of "malicious prosecution."  <u>Id.</u> at *1, 9.  <u>See also</u>

<u>United States Fid. & Guar. Co. v. Saddle Ridge, L.L.C.</u>, No. 98-2565-KHV, 1999 WL 1072905

(D. Kan. Sept. 27, 1999) (holding that the term "malicious prosecution" as used in the policy was

ambiguous).

Given the overlap between "malicious prosecution" and "abuse of process," and the

blurred distinction between the two torts, <u>see</u> <u>Lunsford</u>, 18 F.3d at 655, the undefined term of

9

"malicious prosecution" in the Great Northern Policy's definition of "personal injury" is ambiguous and should thus be interpreted in a manner to provide coverage for Spencer's claims of abuse of process.

**II.    Great Northern Had a Duty to Defend Because the "Publications with Knowledge of Falsity" Exclusion Does not Apply.[9]**

Great Northern's argument with respect to the "Publications with Knowledge of Falsity" exclusion is verbatim the same as its argument in Opposition to McGuireWoods' Motion for Judgment of Liability on the Pleadings.  (Compare Great Northern Ins. Company's Br. in Opp'n to McGuireWoods LLP's Mot. for J. on the Pleadings 17-21 (hereinafter "Great Northern's Br. in Opp'n") with Br. in Supp. of Cross-Mot. 20-22.)  Therefore, McGuireWoods respectfully directs the Court to its Memorandum in Support of Motion for Judgment of Liability on the Pleadings and Reply Brief in Support of Motion for Judgment of Liability on the Pleadings.  (See Pl. McGuireWoods LLP's Mem. in Supp. of Mot. for J. of Liability on the Pleadings 25-28 (hereinafter "McGuireWoods' Mem. in Supp."); McGuireWoods' Reply Br. 9-12.)

Noticeably, Great Northern's Brief in Support of its Cross-Motion does not address the arguments concerning this exclusion set forth in McGuireWoods' Reply Brief.  Instead, as in its Opposition Brief, Great Northern merely argues again in favor of an interpretation and application of exclusionary language that would allow it to "give with the right and then take away with the left," see Fuisz, 61 F.3d at 243, by promising to cover libel and slander in the definition of "personal injury" and then, without saying so directly, taking all of that coverage away in the exclusion for "Publication with Knowledge of Falsity," which under Great Northern's interpretation would preclude coverage for both malicious and negligent defamation.

---

[9] This section addresses Part I.D. of Great Northern's Brief in Support.

### III.    Great Northern Had a Duty to Defend Because the "Expected or Intended Injury" Exclusion Does not Apply.[10]

Great Northern's argument with respect to the "Expected or Intended Injury" exclusion is nearly identical to its argument in Opposition to McGuireWoods' Motion for Judgment of Liability on the Pleadings.  (Compare Great Northern's Br. in Opp'n 21-24 with Br. in Supp. of Cross-Mot. 23-26.)  Therefore, McGuireWoods respectfully directs the Court to its Memorandum in Support of Motion for Judgment of Liability on the Pleadings and Reply Brief in Support of Motion for Judgment of Liability on the Pleadings.  (See McGuireWoods' Mem. in Supp. 24-25; McGuireWoods' Reply Br. 12-15.)

Great Northern blatantly ignores McGuireWoods' argument as to why an allegation of defamation per se does not mean that a reasonable person in the circumstances of the insured would have expected the statements to cause injury.  Instead, Great Northern focuses on inapposite cases wherein the insured engaged in some intentional conduct (i.e. shooting a gun or punching someone in the face) and the court concluded that he must have expected injury to result.  (See Br. in Supp. of Cross-Mot. 23-26.)  Additionally, Great Northern fails to consider that intent to injure is not an element of a defamation claim when it argues that Spencer could not succeed on his defamation claim without proving that the defendants expected or intended to injure him.

Further, Spencer's underlying allegations were carefully examined in related litigation, and Judge Norman K. Moon found that the defendants neither intended nor expected to injure Spencer when he determined that the alleged defamatory statements were not actionable because they did not make Spencer appear "odious, infamous, or ridiculous," or "assail his reputation to such a degree to lower him in the estimation of the community or to deter third persons from

---

[10] This section addresses Part I.E. of Great Northern's Brief in Support.

associating or dealing with him."  <u>Spencer v. Am. Int'l Group, Inc.</u>, No. 3:08cv00591, 2009 WL

47111, at *6 (E.D. Va. Jan. 6, 2009).  Because the alleged defamatory statements were found to

be, as a matter of law, <u>not</u> injurious, the defendants could not and did not expect or intend to

cause injury.

IV.   **<u>Great Northern Had a Duty to Defend Because the "Insureds or Affiliates"
Exclusion Does not Apply.</u>**[11]

A.   **The "Eight-Corners" rule prevents Great Northern from relying on
the "Insureds Or Affiliates" exclusion to avoid its duty to defend.**

Great Northern's argument with respect to the "Insureds or Affiliates" exclusion is

verbatim the same as its argument in Opposition to McGuireWoods' Motion for Judgment of

Liability on the Pleadings.  (<u>Compare</u> Great Northern's Br. in Opp'n 25-28 <u>with</u> Br. in Supp. of

Cross-Mot. 26-27.)  Therefore, McGuireWoods respectfully directs the Court to its

Memorandum in Support of Motion for Judgment of Liability on the Pleadings and Reply Brief

in Support of Motion for Judgment of Liability on the Pleadings.  (<u>See</u> McGuireWoods' Mem. in

Supp. 17-24; McGuireWoods' Reply Br. 15-17.)

Once again, Great Northern makes a blanket misstatement of allegedly applicable law

without citation to <u>any</u> authority when it alleges that "where the existence of coverage or the

applicability of an exclusion are not dependent on the content of the underlying claim, and

instead dependent upon either (1) who is making the claims, or (2) who the claims are made

against, it makes no sense to apply the Eight Corners Rule."  (Br. in Supp. of Cross Mot. 15.)

Great Northern makes this contention despite the fact that courts applying Virginia law have

consistently applied the "eight corners" rule without the described qualifications Great Northern

---

[11] This section addresses Part I.F. of Great Northern's Brief in Support.

urges upon this Court. [12]   See Am. Online, Inc. v. St. Paul Mercury Ins. Co., 207 F. Supp. 2d

459, 465 (E.D. Va. 2002) (citing Town Crier, Inc. v. Hume, 721 F. Supp. 99, 102 (E.D. Va.

1989)), aff'd, 347 F.3d 89 (4th Cir. 2003).

In fact the only instance in which the Supreme Court of Virginia has gone beyond the

"eight-corners" rule when determining whether a complaint triggers an insurer's duty to defend,

was in an effort to find coverage, not exclude it.  See Copp v. Nationwide Mut. Ins. Co., 279 Va.

675, 683-85, 692 S.E.2d 220, 225 (2010).  This is in accord with other jurisdictions and is

designed only to benefit insureds.  See, e.g., Aetna Cas. & Sur. Co. v. Cochran, 651 A.2d 859

(Md. 1995) (holding that an insurer may not use extrinsic evidence to avoid its duty to defend,

but that the insured may cite extrinsic facts to show that the duty to defend is triggered when it is

not clear from the complaint); Cowan Sys., Inc. v. Harleysville Mut. Ins. Co., 457 F.3d 368, 372,

375 (4th Cir. 2006).

In the present case, however, Great Northern is attempting to use extrinsic evidence to

avoid its duty to defend.  (See Br. in Supp. of Cross-Mot. 26-27.)  The eight-corners rule exists

to prohibit insurers from engaging in precisely this type of conduct.  If Great Northern's

proffered interpretation were accepted, it would render this cornerstone rule of insurance policy

interpretation meaningless, as well as fly in the face of longstanding Virginia jurisprudence and

the public policy reasons justifying this rule.

### B.       The "Insureds Or Affiliates" exclusion does not apply to the actions brought by Spencer.

Great Northern, after at least one false start, has reached way down into the exclusions

added by endorsement, and invoked the "Insureds Or Affiliates" Exclusion. Great Northern

---

[12] Great Northern is not hidebound in its position, however.  Elsewhere, it argues that the "eight-corners" rule should preclude coverage for Allcott and Getchell on account of Spencer's characterizations of them in his Complaints. (See Br. in Supp. of Cross-Mot. 29.)

recites this rather turgid Exclusion and concludes that because Spencer was once a partner of what is now McGuireWoods LLP said  Exclusion relieves it of its duty to defend Spencer's cases. McGuireWoods is the Named Insured in this rather voluminous policy. If Great Northern had wished to say that claims by former partners of its Named Insured were not covered it could have done so. It knows how to write exclusions. Perhaps the marketability of this policy form would have been damaged by such candor. Instead, should it prevail on this point, Great Northern will have successfully buried what should have been a straight forward provision of the policy in an arcane exclusion which, to all appearances, is aimed at something else.

The Exclusion provides in part that there will be no coverage for damage and so forth "sustained by any ...current, former or prospective manager, member or partner of any limited liability company, partnership or joint venture in which any insured has or had (at any time) any interest; ...." There are six other parts to Section A of this Exclusion. One excludes coverage for claims by anyone who is or was "counsel" or "of counsel" of "any insured" and another for damage to kith and kin. Three others include any insured; any person or organization who is entitled to vote for the governors of an insured; and the subsidiary of an insured. The part under discussion (A [4]) and the one following it seek to preclude coverage for organizations and their operatives (in which any insured has an interest) perhaps, for example, special subsidiaries or investment vehicles. Section A(4) recited in pertinent part above clearly contemplates that the "limited liability company, partnership or joint venture" be an entity created or acquired by an insured, not the Named Insured itself. The underwriters were clearly not dealing here with what happens if a former partner of the Named Insured sues his or her former fellows whose quarrel had nothing to do with their lives together long ago.

---

### V.   Great Northern Had a Duty to Defend Because the "Legal or Other Professional Services" Exclusion Does not Apply.[13]

Great Northern's argument with respect to the "Legal or Other Professional Services" exclusion is verbatim the same as its argument in Opposition to McGuireWoods' Motion for Judgment of Liability on the Pleadings.  (Compare Great Northern's Br. in Opp'n 28-29 with Br. in Supp. of Cross-Mot. 28-29.)  Therefore, McGuireWoods respectfully directs the Court to its Memorandum in Support of Motion for Judgment of Liability on the Pleadings and Reply Brief in Support of Motion for Judgment of Liability on the Pleadings.  (See McGuireWoods' Mem. in Supp. 10-17; McGuireWoods' Reply Br. 17.)

Great Northern has neither distinguished the cases McGuireWoods cited in support of its position nor cited case law to meet its burden that this exclusion applies.

### VI.   Getchell and Allcott are Insureds Under the Policy.[14]

On September 2, 2010, Great Northern filed an Amended Answer pursuant to the Court's Order granting in part, and denying in part, McGuireWoods' Motion to Strike Defendant's Affirmative Defenses.  The Amended Answer, however, exceeded the scope of the Court's leave to amend by adding without permission an additional defense not previously pled in Great Northern's Answer.  (Compare Answer with Amended Answer ¶ 61; see also Pl. McGuireWoods LLP's Mot. to Strike Paragraph 61 of Def.'s Am. Answer.)  For that reason alone, this Court should deny Great Northern's Motion for Judgment on the Pleadings to the extent that it relies on the argument that Getchell and Allcott are not insureds with respect to the claims made against them.

---

[13] This section addresses Part. I.G. of Great Northern's Brief in Support.
[14] This section addresses Part I.H. of Great Northern's Brief in Support.

On the merits, however, Great Northern's argument with respect to Getchell and Allcott's status as insureds is verbatim the same as its argument in Opposition to McGuireWoods' Motion for Judgment of Liability on the Pleadings.  (<u>Compare</u> Great Northern's Br. in Opp'n 29-30 <u>with</u> Br. in Supp. of Cross-Mot. 29.)  Therefore, McGuireWoods respectfully directs the Court to its Reply Brief in Support of Motion for Judgment of Liability on the Pleadings.  (<u>See</u> McGuireWoods' Reply Br. 18-19.)

Great Northern makes no attempt to address McGuireWoods' argument as to how and why Getchell were conducting McGuireWoods' business or acting within the scope of their employment.  (<u>See</u> Br. in Supp. of Cross-Mot. 29.)  In fact, Great Northern blatantly and disingenuously ignores Spencer's allegations that:

-   "Allcott agreed to act as a public spokesman for the LLP and to coordinate Getchell's and the LLP's responses to the media." (1st Compl. ¶ 33.)

-   "Getchell and Allcott determined that one way to accomplish Getchell's goals and the LLP's goals, particularly in responding to this news investigation, would be to falsely shift blame for the <u>Grigg</u> dismissal away from Getchell and the LLP and toward Spencer." (1st Compl. ¶ 34.)

-   "Allcott made these false statements for the purpose and with the intent to shift blame for the dismissal of the <u>Grigg</u> appeal to Spencer and away from Getchell and the LLP . . . ." (1st Compl. ¶ 50.)

-   "Getchell, Barr, the law firm, McGuireWoods Consulting LLC ("the consulting company") and its chief spokesman, William Allcott—acting with the knowledge, support and direction of the law firm's chairman, Richard Cullen—spread Getchell's and the firm's made-up 'position' that it and Getchell were blameless and that Plaintiff was responsible." (Am. 1st Compl. ¶ 9; 2d Compl. ¶ 10.)

-   "In all events, Allcott was acting as an agent of the consulting company." (2d Compl. ¶ 76.)

Even a quote that Great Northern cites elsewhere in its brief includes an allegation that Allcott was acting within the scope of his employment.  (<u>See</u> Br. in Supp. of Cross-Mot. 8

("Allcott and the consulting company, acting at the specific direction of Getchell and law firm chairmen Richard Cullen . . .").)  Therefore, Great Northern's argument that Getchell and Allcott were not insureds under the Policy is without merit.

## CONCLUSION

For the foregoing reasons, McGuireWoods, LLP, respectfully requests that the Court deny Great Northern's Motion for Judgment on the Pleadings.

McGUIREWOODS LLP

＿＿/s/ James W. Morris, III＿＿＿＿＿＿＿
James W. Morris, III
Virginia State Bar No. 05740
Matthew D. Green
Virginia State Bar No. 46913
Melissa Y. York
Virginia State Bar No. 77493
Attorneys for McGuireWoods LLP
Morris & Morris, P.C.
Post Office Box 30
Richmond, Virginia  23218-0030
(804) 344-8300 Telephone
(804) 344-8359 Facsimile
jmorris@morrismorris.com
mgreen@morrismorris.com
myork@morrismorris.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send a notification of such filing (NEF) to the following:

Jeffrey R. Schmieler
Virginia State Bar No.: 32175
Alan B. Neurick *(Pro hac vice)*
Lisa N. Walters
Virginia State Bar No.: 72291
Samuel T. Wolf (*Pro hac vice*)
Saunders & Schmieler, P.C.
The Montgomery Center
8630 Fenton Street, Suite 1202
Silver Spring, Maryland 20910
Email: schmielerj@sslawfirm.com
Email: neuricka@sslawfirm.com
Email: waltersl@sslawfirm.com
Email: wolfs@sslawfirm.com
Telephone: (301) 588-7717
Facsimile: (301) 588-5073
*Counsel for Defendant*

/s/ James W. Morris, III
James W. Morris, III
Virginia State Bar No. 05740
Matthew D. Green
Virginia State Bar No. 46913
Melissa Y. York
Virginia State Bar No. 77493
Attorneys for McGuireWoods LLP
Morris & Morris, P.C.
Post Office Box 30
Richmond, Virginia 23218-0030
(804) 344-8300 Telephone
(804) 344-8359 Facsimile
jmorris@morrismorris.com
mgreen@morrismorris.com
myork@morrismorris.com