IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

McGUIREWOODS LLP,

        Plaintiff,

v.                                              Civil Action No. 3:10cv354

GREAT NORTHERN INSURANCE COMPANY,

        Defendant.

**PLAINTIFF McGUIREWOODS LLP'S BRIEF IN OPPOSITION TO DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF McGUIREWOODS LLP'S NOTICES OF DEPOSITION**

                                                    James W. Morris, III (VSB No. 05740)
                                                    Matthew D. Green (VSB No. 46913)
                                                    Melissa Y. York (VSB No. 77493)
                                                    Morris & Morris, P.C.
                                                    P.O. Box 30
                                                    Richmond, VA  23218
                                                    (804) 344-8300 Telephone
                                                    (804) 344-8359 Facsimile

                                                    *Counsel for Plaintiff McGuireWoods LLP*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

FACTS ....................................................................................................................................1

ARGUMENT ..........................................................................................................................3

    I.      Great Northern's Request that McGuireWoods not be Permitted to Conduct the Depositions as Noticed is Moot ..........................................................3

    II.     McGuireWoods' Notice of Deposition Addresses Relevant Topics and Topics Reasonably Calculated to Lead to the Discovery of Admissible Evidence ..........................................................................................................5

          A.    Matters relevant to McGuireWoods' claim of bad faith. .............................6

          B.    Matters relevant to McGuireWoods' claims of ambiguity and applicability of policy exclusions. ..............................................................8

          C.    Matters relevant to damages. ....................................................................11

CONCLUSION .....................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

Taco, Inc. v. Fed. Ins. Co.,
 No. 07-27S, 2007 WL 4269180 (D.R.I. Nov. 30, 2007) ....................................................11

Tiger Fibers, LLC v. Aspen Specialty Ins. Co.,
 594 F. Supp. 2d 630 (E.D. Va. 2009) ................................................................................7

**STATE CASES**

Cascades N. Venture Ltd. P'ship v. PRC Inc.,
 249 Va. 574, 457 S.E.2d 370 (1995) .................................................................................9

Johnson v. Ins. Co. of N. Am.,
 232 Va. 340, 350 S.E.2d 616 (1996) ...............................................................................11

State Farm Mut. Ins. Co. v. Gandy,
 238 Va. 258, 383 S.E.2d 717 (1989) ...............................................................................11

Va. Farm Bureau Mut. Ins. Co. v. Williams,
 278 Va. 75, 677 S.E.2d 299 (2009) ...................................................................................8

Westmoreland-LG &E Partners v. VEPCO,
 254 Va. 1, 486 S.E.2d 289 (1997)......................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1)................................................................................................... 5-6

Fed. R. Civ. P. 30(b)(6)................................................................................................ passim

Fed. R. Evid. 401 .................................................................................................................6

Va. Code § 38.2-209 ............................................................................................................6

McGuireWoods LLP ("McGuireWoods"), by counsel, submits the following in opposition to Defendant Great Northern Insurance Company's ("Great Northern") Motion for Protective Order Regarding Plaintiff McGuireWoods LLP's Notices of Deposition.

## FACTS

This is an insurance coverage action in which McGuireWoods asserts that Great Northern had a duty to defend it, several of its partners, and an employee in three underlying defamation lawsuits filed against them by Christopher Spencer. (Compl. ¶¶ 32-40.) The Complaint sets forth a single count—breach of contract—and details the factual and legal basis for this claim. (Compl. ¶¶ 5-31.) McGuireWoods incurred damages of approximately $3,445,517.47 based on Defendant's breach of contract. In addition, pursuant to Virginia Code section 38.2-209, McGuireWoods seeks an award of all costs, attorneys' fees, and other expenses, which McGuireWoods has incurred in the instant action based on Great Northern's failure to act in good faith in its refusal to provide McGuireWoods with a defense in the underlying lawsuits.

On August 27, 2010, McGuireWoods, for the first time, requested in writing that Great Northern provide dates on which Thomas P. Olson, Donald J. Sonlin, and Vivian E. Harrington could be deposed. See E-mail from Matthew Green, Morris & Morris, P.C., to Alan Neurick, Saunders & Schmieler, P.C. (dated Aug. 27, 2010), attached as Ex. A. In the subsequent weeks, McGuireWoods, by counsel, renewed this request several times in telephone conversations with counsel for Great Northern. In addition, McGuireWoods again repeated this request to Great Northern in writing on September 17, 2010. See E-mail from Matthew Green, Morris & Morris, P.C., to Alan Neurick & Lisa Walters, Saunders & Schmieler, P.C. (dated Sep. 17, 2010), attached as Ex. B.

After waiting one month and without receiving a response to its request, despite repeated assurances that Great Northern was working on obtaining such dates, McGuireWoods had no choice but to unilaterally select dates for these depositions. See Letter from Matthew Green, Morris & Morris, P.C., to Jeffrey Schmieler, Saunders & Schmieler, P.C. (dated Sept. 29, 2010), attached as Ex. C.

On Wednesday, September 29, 2010, McGuireWoods noticed the depositions of Great Northern's corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Olson, Sonlin, and Harrington (the only individuals identified in response to Interrogatories propounded on Great Northern) for October 6 and 7, 2010. (See Notice of Dep., attached as Exs. 1-4 to Br. in Supp. of Def. Great Northern Ins. Co.'s Mot. for Protective Order Regarding Pl. McGuireWoods LLP's Notices of Dep. (hereinafter "Br. in Supp.").) McGuireWoods received no correspondence from Great Northern until Monday, October 4, 2010, when Great Northern's counsel, via e-mail, demanded that McGuireWoods withdraw its depositions. See E-mail from Alan Neurick, Saunders & Schmieler, P.C., to Matthew Green, Morris & Morris, P.C. (dated Oct. 4, 2010), attached as Ex. D. McGuireWoods requested that Great Northern provide alternative dates for the noticed depositions before it would withdraw its notices. See E-mail from Matthew Green, Morris & Morris, P.C., to Alan Neurick & Lisa Walters, Saunders & Schmieler, P.C. (dated Oct. 4, 2010), attached as Ex. E. Great Northern did not respond and, instead, filed its Motion for Protective Order and Brief in Support. (Docket No. 53.)

At no time did Great Northern specifically inform McGuireWoods that it was not going to appear for the depositions scheduled for October 6 and 7, 2010. When Great Northern did not appear on October 6, 2010, McGuireWoods incurred costs associated with the court reporter that

2

arrived for the depositions. In addition, McGuireWoods lost attorney's fees related to preparation for these depositions.

Following the failure of the Great Northern witnesses to appear at the October 6 and 7, 2010 depositions, counsel for Great Northern indicated that these individuals could be deposed on October 14, 2010. McGuireWoods immediately replied that its counsel would be speaking at the Virginia Association of Defense Attorneys Conference on that date and was, thus, unavailable. McGuireWoods immediately requested other possible dates in writing on October 7, 2010 and renewed this request in writing on October 8, 9, and 13. See E-mails from Matthew Green, Morris & Morris, P.C., to Alan Neurick & Lisa Walters, Saunders & Schmieler, P.C. (dated Oct. 7, 8, 9, and 13, 2010), collectively attached as Ex. F. To date, Great Northern has not provided any dates.

## ARGUMENT

### I. Great Northern's Request that McGuireWoods not be Permitted to Conduct the Depositions as Noticed is Moot.

Great Northern requests that the Court enter a Protective Order prohibiting McGuireWoods from conducting the depositions it noticed for October 6 and 7, 2010, because McGuireWoods failed to provide reasonable notice of the depositions, the depositions are unduly burdensome, and Olson, Sonlin, and Harrington cannot be required to travel to Richmond for depositions. (Br. in Supp. 4-8.) As the noticed dates for these depositions have passed, this request has been rendered moot. It should be noted, however, that McGuireWoods only made the decision to unilaterally schedule these depositions after it waited over one month for Great Northern to provide available dates. Because the discovery deadline is drawing near, McGuireWoods was required to schedule the depositions without delay to ensure that there

3

would be time to conduct any further discovery that may come to light after these depositions were taken.

Additionally, at the time McGuireWoods noticed the depositions, it was not aware that Olson, Sonlin, and Harrington resided, were employed, or regularly transacted business in person, more than 100 miles from Richmond.  (See Br. in Supp. 8.)  Although McGuireWoods requested that Great Northern provide present, or last known, home and business addresses for all persons identified in response to Interrogatories, Great Northern failed to provide this information for Olson, Sonlin, and Harrington until October 1, 2010.  (See Pl. McGuireWoods LLP's Mem. in Supp. of Mot. to Compel Discovery 10-11 (Docket No. 42) (hereinafter "Mem. in Supp. of Mot. to Compel"); Great Northern Ins. Co.'s First Supp. Answers to McGuireWoods, LLP's First Set of Interrogs. (hereinafter "First Supp. Answers to First Set of Interrogs."), attached as Ex. G .)  Indeed, Great Northern still has not provided this basic, standard information regarding the witnesses identified by it.

Furthermore, McGuireWoods did not know that Olson, Sonlin, and Harrington were not employees of Great Northern Insurance Company at the time it noticed their depositions, as Great Northern failed to provide this information (although it was requested) in response to Interrogatories.  (See Br. in Supp. 7 n.3; Mem in Supp. of Mot. to Compel 10-11.)  Again, Great Northern did not provide this information until October 1, 2010.  (See First Supp. Answers to First Set of Interrogs.)  McGuireWoods disagrees with Great Northern's position that Olson, Sonlin, and Harrington are not parties to this action and that it is required to issue a subpoena to compel their attendance.  (Br. in Supp. 7.)  Olson signed the verification for Great Northern's Answers to Interrogatories and Supplemental Answers to Interrogatories, stating under oath that he is the representative of Great Northern.  (See Great Northern Ins. Co.'s Objections & Answers

4

to McGuireWoods, LLP's First Set of Interrogs. 21, attached as Ex. E to Mem. in Supp. of Mot. to Compel; First Supp. Answers to First Set of Interrogs. 3.)

All of Great Northern's complaints with respect to McGuireWoods' noticing of depositions for October 6 and 7, 2010, arise out of its own dilatory conduct and refusal to comply with proper discovery requests. Therefore, Great Northern's Motion for Protective Order should be denied.

### II. McGuireWoods' Notice of Deposition Addresses Relevant Topics and Topics Reasonably Calculated to Lead to the Discovery of Admissible Evidence

The remainder of Great Northern's brief is devoted to challenging McGuireWoods' Notice of Deposition of Great Northern's corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. (See Br. in Supp. 8-17.) That rule provides, in relevant part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.

Fed. R. Civ. P. 30(b)(6). Great Northern argues that paragraphs 1-6, 9(b), 9(e), 9(f), and 10, are "not relevant to the claims or defenses of any party in this action, and do not appear to be reasonably calculated to [sic] the discovery of admissible evidence." (Br. in Supp. 9.) Great Northern could not be more wrong.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if

the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

### A. Matters relevant to McGuireWoods' claim of bad faith.

Great Northern is correct that this is a breach of contract action in which McGuireWoods asserts that Great Northern had a duty to defend it, several of its partners, and an employee in three underlying defamation lawsuits filed against them by Christopher Spencer. (Br. in Supp. 12; Compl. ¶¶ 32-40.) However, Great Northern overlooks the fact that McGuireWoods has requested that it "be awarded all costs, attorney's fees, and other expenses . . . incurred in enforcing its rights to insurance in this insurance coverage action, including all costs, attorney's fees, and other expenses awardable under Va. Code § 38.2-209." (Compl. at 8.) Section 38.2-209 provides, in relevant part:

> [I]n any civil case in which an insured individual sues his insurer to determine what coverage, if any exists under his present policy . . . the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

Va. Code § 38.2-209(A). Under Virginia law, in determining whether to award an insured attorneys' fees and costs based on an insurer's failure to act in good faith, courts consider the following issues:

    (1)    whether reasonable minds could differ in interpretation of policy provisions defining coverage and exclusions;

    (2)    whether insurer has made reasonable investigation of facts and circumstances underlying insured's claim;

6

    (3)    whether evidence discovered reasonably supports denial of liability;

    (4)    whether it appears that insurer's refusal to pay was used merely as a tool in settlement negotiations; and,

    (5)    whether defense that insurer asserts at trial raises issues of first impression or reasonably debatable question of law or fact.

Tiger Fibers, LLC v. Aspen Specialty Ins. Co., 594 F. Supp. 2d 630, 654 (E.D. Va. 2009).

Thus, McGuireWoods is entitled to conduct discovery regarding Great Northern's alleged bad faith, as such information is relevant to McGuireWoods' claim for damages. Paragraphs 5-6 and 9(b), 9(e), and 9(f) of McGuireWoods' Notice of Deposition of Great Northern's corporate representative are relevant to McGuireWoods' bad faith claim and are reasonably calculated to lead to the discovery of admissible evidence on that subject.

    5.    Since 2000, Great Northern's acceptance or denial of insurance coverage for any claims (such as those asserted by McGuireWoods) involving alleged personal injury based on defamation and/or malicious prosecution, made against any of its insureds other than McGuireWoods, including:

        (a)    the name of the insured;

        (b)    the date of the claim for coverage;

        (c)    the control number for the claim, if any;

        (d)    the nature of the claim;

        (e)    if any formal legal action was initiated, the date of the initiation (and termination, if applicable), and the court, docket number, and parties involved;

        (f)    the present status of the claim;

        (g)    the precise legal and factual basis for accepting or denying the claim.

    6.    The individuals who have been, is or will be responsible for making claims decisions or for determining on behalf of Great Northern how the Insurance Policies sold to McGuireWoods apply, the process used by them

    to make these decisions and determinations, each individuals role in the process, their supervisor, and all related documents.

9. Great Northern's contention that under the Insurance Policies at issue in this litigation McGuireWoods and its partners and employee are not entitled to coverage for the underlying claims and suits of Christopher Spencer, Esq., including but not limited to:

  (b) the investigation performed by Great Northern of the underlying facts and circumstances of the claims of lawsuits brought by Christopher Spencer before denying coverage;

  (e) all settlement offers and efforts made by Great Northern to settle the instances coverage dispute with McGuireWoods;

  (f) all communications with third parties including but not limited to excess carriers and reinsurers concerning the underlying claims and lawsuits brought by Christopher Spencer and McGuireWoods request for coverage regarding these claims and lawsuits.

(Notice of Dep. at Ex. A, ¶¶ 1-6, 9(b), 9(e), 9(f), attached as Ex. 1 to Br. in Supp.)  As these requests specifically address the factors courts use to determine whether to award attorneys' fees and costs, they are relevant to McGuireWoods' claims and are reasonably calculated to lead to the discovery of admissible evidence.

    **B.** **Matters relevant to McGuireWoods' claims of ambiguity and applicability of policy exclusions.**

  While courts are to interpret insurance policies as a matter of law, "[c]ourts interpret insurance policies, like other contracts, by determining the parties' intent from the words they have used in the document."  Va. Farm Bureau Mut. Ins. Co. v. Williams, 278 Va. 75, 80, 677 S.E.2d 299, 302 (2009).  Unambiguous terms in an insurance policy are given their plain meaning and ambiguous policy language is construed in favor of coverage and against the insurer.  Id. at 81, 677 S.E.2d at 302.

When language in an insurance policy is ambiguous, parol evidence concerning the parties' intent and understanding at the time they entered into the contract is admissible. See Westmoreland-LG & E Partners v. VEPCO, 254 Va. 1, 12, 486 S.E.2d 289, 295 (1997).

> [T]he rule excluding parol evidence has no application where the writing on its face is ambiguous, vague, or indefinite. In such a case, the proper construction of a contract is an issue for the trier of fact, and the court should receive extrinsic evidence to ascertain the intention of the parties and to establish the real contract between them.

Cascades N. Venture Ltd. P'ship v. PRC Inc., 249 Va. 574, 579, 457 S.E.2d 370, 373 (1995).

> An ambiguity exists when language is of doubtful import, admits of being understood in more than one way, admits of two or more meanings, or refers to two or more things at the same time. Ambiguity is crated by the doubtfulness or doubtfulness of meaning of an expression used in a written instrument.

Id. (internal quotations and citations omitted).

McGuireWoods has alleged that various provisions and exclusions of the Great Northern Policy are ambiguous. (See e.g., Pl. McGuireWoods LLP's Reply Br. in Supp. of its Mot. for J. of Liability on the Pleadings 3-4, 7-9, 12.) Because this Court has not yet determined whether the Policy is ambiguous, McGuireWoods is entitled to discovery relevant to its claims of ambiguity. In the event that the Court determines the Policy (or portions thereof) are ambiguous, McGuireWoods and Great Northern will be permitted to introduce parol evidence regarding the parties' intent at the time of contracting. Paragraphs 1-4 of McGuireWoods' Notice of Deposition of Great Northern's corporate representative, regarding the drafting history of the policies at issue, are relevant to McGuireWoods' claims of ambiguity and applicability of policy exclusions and are reasonably calculated to lead to the discovery of admissible parol evidence.

> 1. The Insurance Policies at issue in this litigation, including whether any of the Key Policy Terms consist of or were drafted in whole or in part by reference to Form Language. For each such Key Term, Great Northern's knowledge of:

9

  (a) any name commonly used to describe such Form language (e.g., a form number);

  (b) the period during which such Form Language was used and, if no longer used, when such use ceased;

  (c) the individual(s) how [sic] participated in the process by which such Form Language was drafted or developed;

  (d) the organization or entities that participated in the process by which the Form Language was drafted or developed (including, without limitation, syndicates, companies, Managing Agents, brokers, and industry organizations or associations such as ISO or others);

  (e) the process by which the Form Language was drafted or developed;

  (f) the process by which the Form Language was accepted or adopted for use;

  (g) whether the Form Language was ever submitted to any insurance authority in the United States for review or approval including those of the Commonwealth of Virginia; if so, describe in detail each such submission with respect to each such Form Language and identify all decisions, statements, regulations, rate approvals and other actions taken by any state insurance commissioner, department, agency or bureau including those of the Commonwealth of Virginia concerning such submission.

2. The Insurance Policies at issue in this litigation, including whether one or more portions of the policy consist of Non-Form Language, and for each such policy term, Great Northern's knowledge of:

  (a) the individuals who participated in the drafting of the Non-Form language;

  (b) any organizations or entities that participated in the drafting of the Non-Form language;

  (c) the process by which the Non-Form language was drafted;

  (d) the reason that the policy includes Non-Form language;

  (e) any policy form, model, specimen or other sources language upon which the Non-Form language was modeled or based.

3. The persons, including any insurance agent or broker, and the process involved in negotiating, drafting, formulating, underwriting, or approving the Insurance Policies at issue in this litigation, including the negotiating, drafting, formulating, and approval process.

4. Great Northern's knowledge of each communication in which its representatives participated, were present or involved, and each document in its custody and control (including without limitation, all insurance industry trade documents), concerning or relating to the drafting history, meaning, interpretation, scope or application of any Key Policy Terms of the Insurance Policy. This topic encompasses communications between Great Northern and any other insurance carrier regarding claims similar to those asserted by McGuireWoods under insurance policies that include the same or virtually identical language to that in the policy you sold McGuireWoods.

(Notice of Dep. at Ex. A, ¶¶ 1-4, attached as Ex. 1 to Br. in Supp.)

In insurance coverage cases, courts permit discovery of the drafting history of relevant policy provisions, particularly with regard to the policy exclusions upon which the insurer relied to deny coverage. Taco, Inc. v. Fed. Ins. Co., No. 07-27S, 2007 WL 4269180, at *2 (D.R.I. Nov. 30, 2007). Because Virginia law construes exclusionary language strictly against the insurer, construes it so as to afford coverage unless clear and unambiguous, and places the burden of proof on the insurer, see State Farm Mut. Ins. Co. v. Gandy, 238 Va. 258, 261, 383 S.E.2d 717, 719 (1989); Johnson v. Ins. Co. of N. Am., 232 Va. 340, 345, 350 S.E.2d 616, 619 (1996), the drafting history is particularly relevant to show whether Great Northern's proposed application of the exclusions is as they were intended.

    **C.**    **Matters relevant to damages.**

Paragraph 10 of McGuireWoods' Notice of Deposition of Great Northern's corporate representative seeks information relevant to McGuireWoods' damages claim. Specifically, McGuireWoods has requested that Great Northern identify a corporate representative to testify as to:

> All instances since 2000, that Great Northern or Chubb or any subsidiary or parent of Great Northern or Chubb has retained the law firm of O'Melveny & Meyers, LLP, Tremblay & Smith, LLP, Williams Mullen, McEachin & Gee, PC, and/or Morris & Morris, PC, either directly or on behalf of an insured, including but not limited to:
>
>> (a)   the name of the client for which the law firm(s) was retained;
>>
>> (b)   the date the law firm(s) was retained;
>>
>> (c)   a description of the legal matter for which the law firm(s) was retained;
>>
>> (d)   if any formal legal action was initiated, the date of the initiation (and termination, if applicable), and the court, docket number, and parties involved;
>>
>> (e)   the present status of the legal matter;
>>
>> (f)   the total legal fees and costs billed by law firm(s) that was retained:
>>
>> (g)   the total fees and costs paid by Great Northern or Chubb or any subsidiary or parent of Great Northern or Chubb;
>>
>> (h)   all attorneys and paralegals who billed time in such a legal matter including their titles and billing rates; and,
>>
>> (i)   all related documents.

(Notice of Dep. at Ex. A, ¶ 10, attached as Ex. 1 to Br. in Supp.)  This information is relevant and admissible to rebut and/or impeach Great Northern's claims that the incurred damages are unreasonable.

For example, Great Northern has designated Bernard DiMuro as an expert with respect to the reasonableness of McGuireWoods' damages.  (Docket No. 58.)  Mr. DiMuro has opined that the hourly rates charged by the defense attorneys in the Spencer litigation were unreasonable and that insurance carriers often negotiate much lower rates.  Whether or not Great Northern has previously retained the firms involved in the defense of the Spencer litigation, and the rates and

fees it paid those firms, is relevant to rebut and/or impeach this testimony. McGuireWoods is thus entitled to discovery relevant to Great Northern's defense.

## CONCLUSION

For the foregoing reasons, McGuireWoods, LLP, respectfully requests that the Court deny Great Northern's Motion for Protective Order Regarding Plaintiff McGuireWoods LLP's Notices of Deposition.

                      McGUIREWOODS LLP

                      /s/ James W. Morris, III
                      James W. Morris, III
                      Virginia State Bar No. 05740
                      Matthew D. Green
                      Virginia State Bar No. 46913
                      Melissa Y. York
                      Virginia State Bar No. 77493
                      Attorneys for McGuireWoods LLP
                      Morris & Morris, P.C.
                      Post Office Box 30
                      Richmond, Virginia 23218-0030
                      (804) 344-8300 Telephone
                      (804) 344-8359 Facsimile
                      jmorris@morrismorris.com
                      mgreen@morrismorris.com
                      myork@morrismorris.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 18th day of October, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send a notification of such filing (NEF) to the following:

Jeffrey R. Schmieler
Virginia State Bar No.: 32175
Alan B. Neurick *(Pro hac vice)*
Lisa N. Walters
Virginia State Bar No.: 72291
Samuel T. Wolf (*Pro hac vice*)
Saunders & Schmieler, P.C.
The Montgomery Center
8630 Fenton Street, Suite 1202
Silver Spring, Maryland 20910
Email: schmielerj@sslawfirm.com
Email: neuricka@sslawfirm.com
Email: waltersl@sslawfirm.com
Email: wolfs@sslawfirm.com
Telephone: (301) 588-7717
Facsimile: (301) 588-5073
*Counsel for Defendant*

                                      /s/ James W. Morris, III_____
                                      James W. Morris, III
                                      Virginia State Bar No. 05740
                                      Matthew D. Green
                                      Virginia State Bar No. 46913
                                      Melissa Y. York
                                      Virginia State Bar No. 77493
                                      Attorneys for McGuireWoods LLP
                                      Morris & Morris, P.C.
                                      Post Office Box 30
                                      Richmond, Virginia  23218-0030
                                      (804) 344-8300 Telephone
                                      (804) 344-8359 Facsimile
                                      jmorris@morrismorris.com
                                      mgreen@morrismorris.com
                                      myork@morrismorris.com